## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| EMILY JACKSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:07cv315-MEF |
| | ) | |
| EASTER SEALS CENTRAL | ) | |
| ALABAMA, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S BRIEF IN SUPPORT OF ITS
## MOTION FOR SUMMARY JUDGMENT

Defendant, Easter Seals Central Alabama ("Easter Seals" or "Defendant"), hereby submits the following brief in support of its Motion for Summary Judgment, which is being filed contemporaneously herewith. Based upon the undisputed material facts and for the reasons stated below, Easter Seals is clearly entitled to judgment as a matter of law.[1]

## I.     INTRODUCTION

In her Complaint, Plaintiff alleges that Easter Seals discriminated against her on the basis of her race and sex by not offering her a six-month, full-time position that became available after Plaintiff's last day of work. Contrary to Plaintiff's

---

[1] Defendant accepts Plaintiff's version of the relevant facts in this matter for summary judgment purposes only and specifically reserves its right to present contrary evidence if this matter should proceed to trial.

allegations, there is absolutely no evidence that Easter Seals' Administrator, Debbie Lynn, had any reason to believe that Plaintiff was interested in or willing to fill the newly vacant position in question because Plaintiff never expressed any interest in the open position or in continuing with the Easter Seals Program on a full-time basis.

## II.    UNDISPUTED FACTS

**Parties.**

Easter Seals is a non-profit agency that provides assistance to individuals (and their families) with disabilities and special needs. (Declaration of Debbie Lynn ("Lynn Decl.") at ¶ 2). Specifically, Easter Seals provides various services designed to meet the needs of such individuals in twelve central Alabama counties. (*Id.*).

Prior to March 2007, one of the programs offered was a Micro-Enterprises Program, which was designed to assist individuals with disabilities in starting their own businesses. (*Id.* at ¶ 3). The funding for the Program was based entirely on grant monies provided by the Department of Labor ("DOL") and administered by the Alabama Department of Economic and Community Affairs ("ADECA").[2] (*Id.*).

---

[2] During the relevant time period, ADECA issued grants to three entities: (1) the Janice Capiluto Center for the Deaf; (2) the Alabama Department of Rehabilitation Services; and (3) Easter Seals Central Alabama. (Lynn Decl.") at ¶ 4). Each grant recipient handled and managed its own program, money and reporting responsibilities. (*Id.*).

The Micro-Enterprise Program grant was originally a five-year grant and provided for one full-time Micro-Enterprise Specialist. (Declaration of Susan McKim ("McKim Decl.") at ¶ 2). In approximately March of 2003, Cassandra Cooper (Black, female) was hired as the Program's Micro-Enterprise Specialist. (*Id.*). Prior to the 2004-2005 fiscal year, and at ADECA's request, Easter Seals broadened its Micro-Enterprises Program throughout the State and also intensified its emphasis in the Talladega area (home of the Alabama Deaf and Blind Institute). (*Id.*). Consequently, on September 14, 2004, Plaintiff was hired as a second full-time Micro-Enterprise Specialist.[3] (*Id.*; Deposition of Emily Jackson ("Jackson Dep.") at p. 144). Easter Seals also contracted with Bill Haynes, an independent contractor located in the Talladega area, for Micro-Enterprise Specialist services in the Talladega area.[4] (McKim Decl. ¶ 3). Mr. Haynes was chosen for the position because of his extensive experience in working with the deaf and blind and their unique business development needs. (*Id.*).

In April 2006, Dr. Susan McKim, Easter Seals Grants Developer, received a letter from ADECA indicating that the DOL had cut funding for the Micro-

---

[3] From the beginning of her employment, Plaintiff knew and understood that the Program was funded entirely by the DOL grant administered by ADECA. (Jackson Dep. at pp. 125, 343-344).

[4] The following fiscal year, ADECA informed Easter Seals that it did not have enough grant money to continue to fund all of the newly extended Program. (McKim Decl. at ¶ 4). Since providing blind individuals with self-employment services was a very labor intensive endeavor, the Program, through Mr. Haynes, was not able to serve more than a few individuals at a time. (*Id.*). Consequently, the Talladega specific component of the Program (primarily focusing on serving the blind) was eliminated. (*Id.*). Nonetheless, Ms. Cooper and Plaintiff retained their positions as full-time Micro-Enterprise Specialists. (*Id.*).

Enterprise grant. (McKim Decl. at ¶ 5). ADECA also told Easter Seals that it was attempting to get a "no-cost" grant extension to fund the Program.[5] (Id.). Upon receiving ADECA's letter, Dr. McKim shared this information with Plaintiff and Ms. Cooper. (Jackson Dep. at pp. 302-303; McKim Decl. at ¶ 6). At that time, ADECA and Easter Seals believed that, if the request for a no-cost extension was granted, the remaining funds would allow the Micro-Enterprises Program to continue for another year. (Id.).

On August 11, 2006, Larry Lewis, Easter Seals' Administrator, received another letter from ADECA indicating that the Micro-Enterprise grant extension has not been approved and that the Program would be ending on September 29, 2006:

> [t]he Customized Employment Contract, which is funded through the Customized Employment Grant from the U.S. Department of Labor (US DOL), Office of Disability Employment Policy, will be ending at the close of business on September 29, 2006. Earlier this year, we requested a twelve-month extension from US DOL so that the grant could continue through September 2007, however, we have not yet received a response to our request for the grant extension. Therefore, we must close the customized employment demonstration programs ...

(McKim Decl. at ¶ 7, Ex. A thereto).

---

[5] A "no-cost extension" is when a grant administrator, such as ADECA, does not receive additional grant money, but is allowed to use and redistribute any remaining, unused grant funds until those monies are exhausted. (Jackson Dep. at pp. 306-307; McKim Decl. at ¶ 5).

After receiving this letter, Mr. Lewis notified Plaintiff and Ms. Cooper that, despite its efforts, ADECA had apparently been unable to secure a no-cost extension. (Jackson Dep. at p. 312; Ex. 6 thereto). Mr. Lewis further noted that, since the grant would not be extended, the Micro-Enterprises Program and Plaintiff's and Ms. Cooper's employment with Easter Seals would officially end September 29, 2006. (*Id.*).

At the very end of August 2006, Dr. McKim was notified by ADECA that a no-cost extension had been approved, but only for a six-month period. (McKim Decl. at ¶ 8). ADECA instructed Easter Seals to design and prepare a proposed budget based on the anticipated amount of remaining grant funds. (*Id.*). Accordingly, Dr. McKim initially prepared a proposed budget which reflected salaries for two full-time Micro-Enterprise Specialists (*i.e.*, Plaintiff and Ms. Cooper). (*Id.*, Ex. B thereto).

On August 21, 2006, Debbie Lynn assumed the position of Administrator for Easter Seals. (Lynn Decl. at ¶ 5). On September 11, 2006, Plaintiff submitted a letter to Ms. Lynn stating that she had received the August 11 memo from Mr. Lewis explaining that September 29, 2006 would be the end of the Program and her employment with Easter Seals. (Jackson Dep. at p. 323; Ex. 7 thereto). In this letter, Plaintiff expressed her "appreciation and gratitude to Easter Seals for implementing the ACE Micro-Enterprises Program and for hiring [her] as a Micro-

Enterprise Specialist." (*Id.*) Additionally, Plaintiff's letter explained that she needed "time to transition to a new career" and, therefore, was requesting leave from September 26-29 – making her last day at work September 25. (*Id.*) Plaintiff also used this letter to praise and congratulate Ms. Lynn as follows:

> "Congratulations on your new position as Easter Seals Central Alabama Administrator. My prayers and thoughts will be with you as you take on new challenges ahead. Also, I admire your courage and your autonomous leadership style, and I wish I could have had the opportunity to work with you. Take care and God Bless."

(*Id.*)

The following day, September 12, Ms. Lynn met with Plaintiff and Ms. Cooper and informed them that a six-month no-cost grant extension had been approved. (Jackson Dep. at pp. 352-353). During this meeting, Ms. Cooper confirmed that she wanted to stay with the Program in a full-time capacity for the extension period. (Deposition of Cassandra Cooper ("Cooper Dep.) at pp. 51, 54, 58-59). Plaintiff, on the other hand, informed Ms. Lynn that she had started her own personal consulting business and that she would only be interested in working part-time during the six-month extension (*i.e.*, ½ day, 2-3 times a week).[6] (Jackson

---

[6] Plaintiff testified as follows:

Q: And during this [the September 12] meeting, you told Ms. Lynn that you would be interested in working part time if the Program was extended—since the Program was being extended, right?
A: Right.
   . . .
Q: And that was the proposal you put to her; is that correct?
A: That's what I asked, if I could work part time.
Q: Did you ask anything about working full time?

Dep. at pp. 353-354). According to Plaintiff, Ms. Lynn stated she would have to check on Plaintiff's part-time request and get back with her. (*Id.* at pp. 354-355). Ms. Lynn told both Ms. Cooper and Plaintiff that, if she could be of any help to them with their future pursuits, they should let her know.[7] (Jackson Dep. at p. 341). At no time during this meeting did Plaintiff ever suggest to Ms. Lynn that she was interested in remaining with the Program as a full-time employee for the six-month extension period. (Jackson Dep. at p. 354; Cooper Dep. at p. 122; Lynn Decl. at ¶ 8).

Plaintiff testified that on September 18, 2006, she had another brief meeting with Ms. Lynn during which Ms. Lynn informed her that her request to work part-time could not be accommodated and that the grant only allowed for one full-time Micro-Enterprise Specialist. (Jackson Dep. at pp. 363-364). At this time, Ms. Lynn provided Plaintiff a letter stating that Easter Seals had accepted her resignation of the full-time position. (*Id.* at p. 364). Plaintiff told Ms. Lynn that she had not resigned, but that her position had been eliminated. (*Id.*). Plaintiff further explained to Ms. Lynn that if her paperwork reflected that she resigned she would not be able to collect on the private unemployment insurance policy which

---

A: No.

(Jackson Dep. at pp. 353-354).

[7] During this meeting, Ms. Lynn also expressed concern about the possible conflict of interest that exists when an Easter Seals employees provides the same services as a private consultant that Easter Seals pays him/her to provide to its clients. (Jackson Dep. at pp. 373, 380; Cooper Dep. at pp. 40-42, 54, 56-57).

she had purchased a month earlier. (*Id.* at p. 365).  In an effort to assist Plaintiff, Ms. Lynn retyped the letter to reflect that Plaintiff's position had been eliminated due to funding cuts. (*Id.*).

At a staff meeting later that day, Ms. Lynn announced that: (1) the Micro-Enterprises Program was being extended for six months, (2) Ms. Cooper would being staying on with the Program, and (3) Plaintiff would be leaving Easter Seals and a going-away party would be held for her. (Jackson Dep. at pp. 375-378).

Plaintiff conceded that, some time prior to September 25, Ms. Cooper told Plaintiff that she had changed her mind and was going to resign the full-time Micro-Enterprise Specialist position with Easter Seals because of the potential conflict with the private consulting business she (like Plaintiff) had started.  (*Id.* at pp. 379, 381).  Thereafter, on September 25 (Plaintiff's last actual day of work), Ms. Cooper formally resigned her position. (*Id.* at p. 379).

After Ms. Cooper's abrupt resignation, Easter Seals had less than four days to either find a qualified Micro-Enterprise Specialist with immediate availability and the ability to devote full-time attention, if necessary, to the Program and its clients or to forfeit the grant extension. (Lynn Decl. at ¶ 9).  During (and even before) this time, Plaintiff clearly knew that the grant extension provided for at least one Micro-Enterprise Specialist and that Ms. Cooper had resigned that position:

Q:   You knew prior to Ms. Cooper submitting her resignation that she was
     likely going to resign her position, right?

A:   Correct.

Q:   And you don't know what time it happened on the 25th, but you know
     that she submitted her resignation on the 25th, right?

A:   Correct.

Q:   And that was your last day of work, right?

A:   Correct.

Q:   And so from the day she submitted it on the 25th, you knew that, <u>one</u>,
     the Program had been extended for six months?

A:   Correct.

Q:   <u>Two</u>, there was funding for at least one Micro-Enterprise position?

A:   Correct.

Q:   And, <u>three</u>, the person who had the position was no longer going to
     fill it, right?

A:   Correct.

(Jackson Dep. at pp. 387-388)(emphasis added).

Plaintiff even returned to Easter Seals on September 29 requesting that Ms.
Lynn sign an unemployment insurance claim form for the policy that she had
recently purchased. (Jackson Dep. at pp. 389-390).  Per Plaintiff's request, Ms.
Lynn signed the form otherwise completed entirely by Plaintiff. (*Id.* at p. 390).
Despite being at the office, knowing that Ms. Cooper had resigned and knowing

that the extension provided for a full-time Micro-Enterprise Specialist position,

Plaintiff never expressed any interest to Ms. Lynn (or anyone in management)

regarding the vacant position:

> Q:  Now, on the 25th forward, did you ever contact Debbie Lynn about filling that position as a full-time Micro-Enterprise Specialist?
>
> A:  No.
>
> Q:  When you got to Easter Seals to pick up your paycheck on the 29th and Eileen Bennett told you Cassandra Cooper resigned, you already knew that, right?
>
> A:  Right.
>
>      . . .
>
> Q:  Did you ever ask to talk to Ms. Lynn when you were there?
>
> A:  No.

(Jackson Dep. at pp. 388-389; Lynn Decl. at ¶ 9).

Entirely unaware that Plaintiff had any interest in a full-time position for the

six-month extension,[8] Ms. Lynn contacted Bill Haynes to see if he had an interest

in and the availability to work with the Program for the six-month extension.

(Lynn Decl. at ¶ 11).  Mr. Haynes responded that he was both willing and able to

provide his services as an independent contractor to the Program through the end

---

[8] Based on her conversations with Plaintiff, Ms. Lynn believed that Plaintiff was only interested in part-time work with the Program due to her desire to focus on her personal consulting business. (Lynn Decl. at ¶ 10; Jackson Dep. at pp. 354, 368-369, 370, 372, 388).  Plaintiff admits that she has no information or evidence as to what the decision-maker understood the facts to be when the decision was made to contract with Mr. Haynes, or what went into the decision.  (Jackson Dep. at pp. 390-392, 394-395).

of March 2007. (*Id.*). Thereafter, Mr. Haynes presented Easter Seals with a six-month contract for his services, which Easter Seals accepted. (*Id.*).

Despite the fact that she knew of the vacancy created by Ms. Cooper's departure and never expressed any interest in it, after learning that Mr. Haynes was working with the Program, Plaintiff filed a charge of discrimination with the EEOC alleging that she was discriminated against on the basis of her race and gender in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") because Easter Seals had not contacted her regarding the open position. (Jackson Dep. at p. 261, Ex. 2 thereto). On February 13, 2007, finding no evidence of discrimination, the EEOC dismissed Plaintiff's claims and issued a right to sue letter. (*Id.*). Plaintiff initiated this action on March 30, 2007. (*Id.*).

As confirmed by the Court at its January 14, 2008 hearing, the only issue remaining in this matter is whether Easter Seals' decision to contract with an independent contractor for the six-month extension was motivated by Plaintiff's race or gender in violation of Title VII.

### III. ARGUMENT

**A.    Plaintiff Cannot Establish a *Prima Facie* Case of Discrimination**

To establish a *prima facie* case of Title VII race or gender discrimination in this setting, plaintiff must demonstrate that (1) she is a member of a protected minority; (2) she was qualified <u>and</u> applied for the position; and (3) she was

rejected despite these qualifications. *Summerlin v. M&H Valve Co.,* 167 Fed. Appx. 93, 2006 WL 93131 (11th Cir. 2006); *Walker v. Mortham,* 158 F.3d 1177, 1185-87 (11th Cir. 1998). If a plaintiff establishes a *prima facie* case, then the employer must produce evidence that the negative employment action was motivated by a legitimate, nondiscriminatory reason. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506 (1993). To avoid summary judgment, a plaintiff must then present evidence which would allow a reasonable fact-finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision. *See Combs v. Plantation Patterns,* 106 F.3d 1519, 1528 (11th Cir. 1997); *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 143 (2000). "The result of this three step dance is that the burden is always on plaintiff to show that defendant's action is discriminatory." *Wilson v. Walgreen Co., Inc.,* 2006 U.S.Dist. LEXIS 44470, *10 (M.D.Ala. June 28, 2006) quoting *Morris v. Emory Clinic, Inc.,* 402 F.3d 1076, 1081 (11th Cir. 2005)(per curiam).

In this case, Plaintiff's claim fails because she cannot establish the second element of her *prima facie* case as she admittedly did not apply for or express interest in the position in question which she clearly knew was available. The law plainly requires that a plaintiff who knows of a vacant position "must make every reasonable attempt to convey his or her interest in the job to the employer before he or she may prevail in a discrimination claim." *Lockridge v. Board of Trustees of*

*Univ. of Ark.,* 315 F.3d 1005, 1011 (8th Cir. 2003); *Smith v. J. Smith Lanier & Co.,* 352 F.3d 1342, 1345 (11th Cir. 2003)(per curiam)("a general interest in being rehired without submitting an application is not enough to establish a *prima facie* case of [] discrimination."). **"The 'application' requirement is designed to prevent imposition of civil rights liability on an employer for lacking sufficient clairvoyance and omniscience to divine an employee's unarticulated desire for a vacant job."** *Garrison v. Travel Centers of America,* 2005 U.S.Dist. LEXIS 41371, *45 (emphasis added) (S.D.Ala. July 20, 2005)(there is "no authority for the proposition that a civil rights plaintiff may sit on her hands and be excused from seeking out" a position of which she has notice).  Title VII simply does not require an employer to approach or "attempt to persuade, wheedle or cajole" a plaintiff who is aware of a vacant position to apply for or otherwise express interest in being considered for said position. *Id.* at *48.

Here, Plaintiff admittedly knew (even before Easter Seals knew) that Ms. Cooper was going to resign her position.[9]  (Jackson Dep. at p. 387).  Moreover,

---

[9] With no evidence that Plaintiff applied for or even expressed interest in the position, Easter Seals simply cannot be found liable under Title VII for its business decision to contract with Mr. Haynes for the services needed for the remainder of the Program. It is well established in the Eleventh Circuit that a Court's "role is to prevent unlawful [employment] practices, not to act as a super personnel department that second-guesses employers' business judgments." *Lee v. GTE Florida, Inc.,* 226 F.3d 1249, 1254 (11th Cir. 2000) citing *Simms v. Okla. Ex. rel. Dept. of Mental Health,* 165 F.3d 1321, 1330 (10th Cir. 1999); *see also Rowell v. BellSouth Corp.,* 433 F.3d 794, 798-99 (11th Cir. 2005)("[i]t by now is axiomatic that we cannot second-guess the business decisions of an employer"); *Damon v. Fleming Supermarkets of Fla.,* 196 F.3d 1354, 1361 (11th Cir. 199)(courts "are not in the business of adjudging whether unlawful discriminatory animus motivates a challenged employment decision."); *Elrod v. Sears, Roebuck & Co.,*

prior to Easter Seals' decision to contract with Mr. Haynes, Plaintiff knew that Ms. Cooper had resigned, leaving a six-month full-time position vacant. (Jackson Dep. at pp. 387-388). Despite this knowledge, Plaintiff admits she never said a word to Ms. Lynn, or anyone else in management, about being interested in or considered for the vacant full-time position.[10] As courts have noted in cases such as this,"[t]he onus was on [Plaintiff] to apply, not on [Easter Seals] to guess that she might be interested and lobby her to do so." *Garrison,* 2005 U.S.Dist. LEXIS 41371, *45. Plaintiff's failure to apply for or otherwise express any interest in the full-time Micro-Enterprise Specialist position which she knew with absolute certainty was vacant precludes her as a matter of law from establishing a *prima facie* case of discrimination.[11] *Freeman v. Walgreen Co., Inc.,* 2006 U.S.Dist. LEXIS 6125, *4

---

939 F.2d 1466, 1470 (11th Cir. 1991)("Title VII is not designed to make federal courts sit as a super-personnel department that reexamines an entity's business decisions.").

[10] Plaintiff alleges that during her September 29 visit to Easter Seals' office to get her unemployment insurance claim form signed by Ms. Lynn, she asked the office secretary if the Program would continue since Ms. Cooper resigned and the secretary (allegedly) told her that it would not. (Jackson Dep. at p. 388). Any attempt by Plaintiff to argue that this conversation excuses her from the application or expression of interest requirement of a *prima facie* case would be meritless. Although this alleged conversation may explain why Plaintiff failed to express interest in the position to Ms. Lynn (or any other member of management), it does not change the fact that Plaintiff never applied for or expressed an interest in the position. Quite simply, Easter Seals could not have intentionally discriminated against Plaintiff on the basis of her race or sex in filling the position, if it had no idea she was even interested in being considered for the opening. As such, Plaintiff's claim necessarily fails as a matter of law.

[11] Since it is undisputed that Plaintiff was aware of the vacancy created by Ms. Cooper's resignation, the exception to the "applied for" element of the *prima facie* case does not apply here. *See Carmichael v. Birmingham Saw Works,* 738 F.2d 1126 (11th Cir. 1984)(holding that if the employer does not use a formal posting system to advertise a position and the plaintiff does not have notice of the opening, the plaintiff must merely demonstrate that "the employer had some reason or duty to consider her for the post."). Moreover, even *if* this exception applied (which it does not), there is absolutely no evidence in this case that Easter Seals had any reason to consider Plaintiff for the vacant full-time position since Plaintiff had indicated an interest only in working part-time (1/2 days, 2-3 days per week).

(M.D.Ala. 2006)(holding that plaintiff's awareness of openings at a new store and her failure to apply precluded her from establishing a *prima facie* case of discrimination); *Wilson,* 2006 U.S.Dist. LEXIS 44470, *23 (holding because plaintiff knew about the position, but failed to submit an application or otherwise express an interest to management about the position, her Title VII discrimination failed as a matter of law).[12]

## B.    No Evidence Of Pretext

Even assuming that Plaintiff could establish a *prima facie* case of discrimination (which she cannot), her claim still fails because there is <u>no</u> evidence that Easter Seals' legitimate business reason for contracting with Mr. Haynes was pretext for unlawful discrimination. Here, Easter Seals' legitimate business reason for contacting Mr. Haynes was Ms. Lynn's understanding and belief that Plaintiff was not interested in filling this full-time position. The fact that Plaintiff later claims to have wanted that position is entirely irrelevant, especially in light of her utter failure to make those desires known to Easter Seals once Ms. Cooper resigned. Courts have uniformly held that if, based on the employer's understanding of the facts at the time the decision was made, the employer in good faith believed the reason(s) it relied on in making the challenged decision, then as a

---

[12] Additionally, the undisputed evidence establishes that Plaintiff not only had notice of the position at issue, but she also had opportunities to apply for or express interest in the position. *See* Jackson Dep. at 389-390; *Wilson,* 2006 U.S.Dist. 44470, *21 (granting Defendant's motion for summary judgment, in part, because evidence established that plaintiff had both notice and opportunity to apply for position).

matter of law, the plaintiff's later attempts to refute the reason(s) are irrelevant. *See, e.g., footnote 9; see also, Roge v. NYP Holdings, Inc.*, 257 F. 3d 164, 169 (2nd Cir. 2001) (affirming summary judgment for the employer after looking at the record that was before the employer at the time the decision was made and not at plaintiff's after-the-fact allegations); *Valles-Hall v. Ctr. for Nonprofit Advancement*, 2007 U.S. Dist. LEXIS 22046 (Dist. Ct. D.C., March 12, 2007) (employer is entitled to rely on its own perception of the facts known at the time); *Droutman v. New York Blood Center*, 2005 U.S. Dist. LEXIS 42951 at * 27-*28 (E.D.N.Y. 2005) (what is relevant is the perception of employer, even if erroneous or mistaken); *Andy v. UPS,* 2003 U.S. Dist. LEXIS 25193 (E.D. Pa., Oct. 24, 2003) (where plaintiff failed to refute the employer's evidence before the time the decision in question was made, he could not attempt to do so after the fact; employer's perception at the time is what matters).

In this case, it is entirely undisputed that, based on Plaintiff's previous expression of interest in part-time work only, Ms. Lynn did not believe Plaintiff was interested in the newly vacant full-time position (and that Plaintiff never expressed interest in the position) at the time Ms. Lynn contacted Mr. Haynes. *Elrod v. Sears Roebuck Company*, 939 F.2d 1466, 1470 (11th Cir. 1991)("no matter how mistaken the [] managers...our inquiry is limited to whether the employer gave an honest explanation of its behavior"). Moreover, had Ms. Lynn

understood that Plaintiff was interested in the position, she would have definitely offered it to Plaintiff - thus solving the Program's staffing crisis and eliminating the need to find someone else qualified and available on short notice. (Lynn Decl. at ¶ 12). Since Easter Seals has presented undisputed evidence supporting its good faith belief that Plaintiff was not interested in the position and based its decision to contact Mr. Haynes on that belief, even assuming *arguendo* that that belief was mistaken, it cannot constitute pretext.

Moreover, there is absolutely no evidence in this case that the decision-maker, Ms. Lynn, held any racial or gender-based animus towards Plaintiff (or any other employee).[13] In fact, Plaintiff concedes that she never heard Ms. Lynn (or anyone at Easter Seals) make any type of derogatory remark regarding African-Americans or females. (Jackson Dep. at p. 402). Further, Plaintiff admits that she has never seen any evidence of racial or gender bias or prejudice on Ms. Lynn's part. (*Id.*). Likewise, Plaintiff conceded that she has never had any type of concerns or complaints regarding Ms. Lynn:

> Q:    Prior to learning Easter Seals had contracted with Bill Haynes for the period of the extension, did you have any complaints or concerns with Debbie Lynn?
>
> A:    No. I've never had any complaints with Debbie Lynn.

---

[13] In addition to Plaintiff having no evidence of discrimination, her claims of race and gender discrimination are completely undermined by the fact that Ms. Cooper, the person initially selected for the six month position was, like Plaintiff, both African-American and female.

(Jackson Dep. at pp. 402-403).

Even more telling is the letter Plaintiff wrote to Ms. Lynn complimenting on her leadership style, thanking her for the opportunities she had been given at Easter Seals, and wishing her the best in the future. (Jackson Dep. at pp. 323-324; Ex. 7 thereto).

Essentially, Plaintiff's claim is that, since Easter Seals did not contact her about the full-time position that Plaintiff admittedly knew was open and available, and contracted with an independent contractor (who, in addition to being qualified for the position, familiar with the Program and available, also happened to be a white, male), Ms. Lynn must have unlawfully discriminated against her.[14]  The mere belief that, simply because Plaintiff is an African-American female, Ms. Lynn was in some way obligated to contact her about a vacancy (which Plaintiff knew about and Ms. Lynn had no reason to believe she was interested in) is legally erroneous and entirely insufficient to demonstrate racial or gender animus.[15]  In

---

[14] As explained by Plaintiff, "I'm claiming discrimination because he's a white male and I'm a black female." (Jackson Dep. at p. 265).

[15] Plaintiff's own testimony further solidifies the fact that she has no evidence supporting her claims:

Q: As we sit here today, do you know why Easter Seals hired Bill Haynes to provide [services] to the Micro-Enterprise Program after Cassandra Cooper resigned?
A: No, I don't.
Q: Did you ever call or attempt to speak with anyone at Easter Seals at any time after you left regarding their decision to contract with Bill Haynes?
A: No, I didn't.
Q: Did you ever file a grievance with the personnel committee as provided for in the employee handbook with regard to your separation from Easter Seals?
A: No, I didn't.

sum, there is absolutely no evidence suggesting that race or gender was a factor in filling the Micro-Enterprise Specialist position vacated by Ms. Cooper.

Lacking any evidence that the decision to contract with an independent contractor for the purpose of allowing the Micro-Enterprises Program to continue for six months was in any way based on Plaintiff's race or sex, Plaintiff is essentially asking this Court to <u>assume</u> that her race and/or sex were the reasons for the decision and to second-guess Easter Seals' employment and business decisions, which is not the Court's role or responsibility. *See Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991). Since Plaintiff has entirely failed to demonstrate that Easter Seals' reasons for contracting with Mr. Haynes were pretexts for race or sex discrimination, her claims fail as a matter of law.

## CONCLUSION

For these reasons, Plaintiff's claims fail as a matter of law and Easter Seals' Motion for Summary Judgment is due to be granted.

Respectfully submitted,

*/s/ Robin A. Adams*
Stephen E. Brown
Robin A. Adams
Attorneys for Defendant

OF COUNSEL:
Maynard, Cooper & Gale, PC

---

(Jackson Dep. at pp. 394-395; *see also* pp. 400-401).

2400 Regions/Harbert Plaza
1901 Sixth Avenue North
Birmingham, AL 35203
(205) 254-1000
(205) 254-1999 (Fax)

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been furnished by electronic filing and by U.S. Mail, postage prepaid and properly addressed, on this 29th day of February, 2008, to:

Emily C. Jackson
605 Wesley Drive
Montgomery, Al. 36111

/s/ Robin A. Adams
OF COUNSEL