IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RECEIVED

2008 MAR 19 A 9: 31

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | | |
|---|---|---|
| EMILY C. JACKSON, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:07cv315-MEF |
| | ) | |
| EASTER SEALS OF | ) | |
| CENTRAL ALABAMA, | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S AFFIDAVIT IN OPPOSITION TO DEFENDANT'S MOTION FOR COMPLETE SUMMARY JUDGMENT

COMES NOW, Emily C. Jackson, the plaintiff, in the above-captioned case, pursuant to Rule 56(e), Federal Rules of Civil Procedure, and moves this Honorable Court to enter final judgment in favor of the plaintiff's opposition to the defendant's motion for complete summary judgment:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided for in this rule, must set forth specific facts showing that there is a genuine issue for trial.

I, the undersigned, Emily C. Jackson, herby affirm that the following is true and correct based on my personal knowledge. My name is Emily C. Jackson. I am over the age of twenty-one, I am of sound mind, and I am qualified to make this affidavit. I understand that this affidavit is being submitted in connection with a lawsuit that I, Emily C. Jackson, ("Plaintiff"), filed against Easter Seals of Central Alabama ("Defendant" or "Easter Seals"). Moreover, I affirm that this affidavit sets forth specific facts which illustrate that there is a genuine issue of material fact for trial in the above civil case:

**Introduction**

1. Easter Seals' decision to contract with an independent contractor who worked part-time hours for the six-month extension period, for the Alabama Customized Employment (ACE) Grant, was motivated by the plaintiff's race and gender in violation of Title VII of the Civil Rights Act of 1964.  Moreover, Emily C. Jackson has pled sufficient evidence to support claims of wrongful termination and disparate treatment against Easter Seals based on race and gender discrimination.  (Doc. Nos. 84 & 85.)

2. Easter Seals is not entitled to a summary judgment because the plaintiff has fully satisfied the *prima facie* case for discrimination based on race and gender.  Since the plaintiff was already working as a full-time micro enterprise specialist when defendant initially sought a "no cost extension" for the ACE Grant, she was not required to reapply for her position under the ACE Grant Extension.  Hence, excluding the job application requirement, plaintiff has fully established a *prima facie* case for discrimination based on race and gender. (Doc. No. 84, *Section III. Plaintiff's Burden Of Proof*, ¶ 14 & 15.)

3. Easter Seals is not entitled to summary judgment because plaintiff has submitted substantial evidence and has used the same test that the U.S. Supreme Court used in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) to prove that Easter Seals' reasons for terminating her and hiring an independent contractor, who worked part-time hours for the six-month extension period of the ACE Grant, were illegal and pretexual based on race and gender discrimination.

4. I, Emily C. Jackson, Plaintiff, support my Objection To Defendant's Motion For

2

Complete Summary Judgment with the following specific facts showing a genuine issue for trial:

    a.   Defendant's violation of plaintiff's civil rights pursuant to *Title VII of the Civil Rights Act of 1964*, *Case Law*, *Statutory Law*, and *Regulatory Law*. Plaintiff's sufficient facts and substantial evidence filed with the Court.

    b.   Plaintiff's *prima facie* case for wrongful termination and disparate treatment based on race and gender discrimination, excluding the application step which was not prerequisite for employment retention under the ACE Grant Extension.

    c.   *The U.S. Supreme Court's Test* that eliminates normal reasons why an employer would terminate an employee, and concludes that race and gender were the only possible reasons remaining that answer why defendant terminated its employee.

    d.   Defendant's violation of its *Mission Statement And Values*.

    e.   Defendant's deviation from its *Normal Business Practice of Posting Job Vacancies* on a bulletin board outside of Administrative Assistant's Office.

    f.   Defendant's violation of the *Implied Covenant of Good Faith and Fair Dealing*, its *Employment-At-Will Policy*, and its *Communication Policy*.

    g.   Plaintiff's Opposition To Defendant's Brief In Support Of Its Motion For Summary Judgment.

    h.   Excerpts of Emily C. Jackson's Deposition and consistent statements; (Doc. No. 88-2.)

i. Excerpts of Cassandra Cooper's Deposition and consistent statements; (Doc. No. 88-4.)

j. Excerpts of Debbie Lynn's Declaration, inconsistent statements, and omissions; (Doc. No. 88-5.)

k. Excerpts of Susan McKim's Declaration, inconsistent statements, and omissions. (Doc. No. 88-6.)

## SPECIFIC FACTS SHOWING A GENUINE ISSUE FOR TRIAL

1. Easter Seals Central Alabama ("Defendant") discriminated against Emily C. Jackson ("Plaintiff"), a Black, African-American, female, when it intentionally denied her an opportunity for employment in its Micro Enterprise Program by terminating her on September 29, 2006, and hiring William D. Haynes, a White, Caucasian, male, on October 1, 2006, as an independent contractor working part-time hours. As a result, defendant violated my civil rights under Title VII of the Civil Rights Act of 1964, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), *Civil Rights Act of 1964, 42 U. S. C. 1981, Nondiscrimination In Federally Assisted Programs of the Department of Labor, 29 CFR 31, Guidelines On Discrimination Because Of Sex, 29 CFR 1604.1-9, Employee Selection Procedures 29 CFR 1607.* Additionally, I have pled sufficient facts to support my claim that defendant violated my civil rights, and that my claims of wrongful termination and disparate treatment against the defendant based on race and gender discrimination are substantiated by my evidence. (Doc. No. 10, Ex. Nos. H-1 thru P-4; Doc. No. 84, Ex. Nos. 1-53; Doc. No. 85, Ex. Nos. 1 thru 13.)

2. On May 30, 2007, the Court ruled that "the plaintiff pled sufficient facts to

4

support her wrongful termination claim." (Doc. Nos. 12 & 21.)  Defendant

discriminated against me by wrongfully terminating me on September 29, 2006

when my position was originally intended for the six-month "no cost extension"

of the Alabama Customized Employment (ACE) Grant.  In determining my claim

of wrongful termination based on race and gender discrimination, I pled

substantial evidence and facts in my Motion To Submit Evidence.  (Doc. Nos.10,

12, & 21.)  I also satisfied all four elements of the *prima facie case* for race and

gender discrimination, excluding the job application requirement which was not a

condition of the six-month "no cost extension" for the (ACE) Grant. (Doc. No.

84, *Section III. Plaintiff's Burden Of Proof*, ¶ 14 & 15.)  Also, Debbie Lynn did

not state that I was required to reapply for my job as a condition of the ACE Grant

Extension (Declaration of Debbie Lynn ("Lynn's Decl.") at pp. 2-3, ¶ 7).  Prior to

Mrs. Lynn's sworn Declaration, she never stated that reapplying for my job as a

micro enterprise specialist was a condition of the ACE Grant Extension.  (Doc.

Nos. 7, 19, 59, 60.)  Similarly, Susan McKim did not state that I was required to

reapply for my job as a condition for the ACE Grant Extension (Declaration of

Susan McKim ("McKim's Decl.") at pp. 2-3, ¶ 5, 6, & 8).  Moreover, when

defendant initially made a decision to retain Cassandra Cooper under the ACE

Grant Extension, defendant did not state that she was required to reapply for her

position as a micro enterprise specialist; and, she did not reapply for her position.

She simply remained in her position until she submitted her letter of resignation

on September 25, 2006.  (Lynn's Decl. at pp. 7-8, ¶ 7).  Therefore, reapplying for

the micro enterprise specialist position was not a condition of the ACE Grant

5

Extension. Therefore, applying for the micro enterprise specialist position is not applicable to establish the *prima facie case for race and gender discrimination,* in my discrimination case. Based on my evidence and my establishment of the *prima facie case* for race and gender discrimination, defendant wrongfully terminated when it terminated me on September 29, 2006, and when it hired William D. Haynes as an independent contractor for the six-month ACE Grant Extension on October 1, 2006, *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), *Pollis v. New School For Social Research, 132 F. 3d 115 (2nd Cir. 1997), Goodstein & McCauley v. Bombardier Capital Inc., Lortie, Murphy, Odon, & Felder,* 2:94cv110 (1995).

3. On June 11, 2007, the Court granted my Motion To Amend Complaint, allowing me to add disparate treatment to my claims against the defendant. (Doc. No. 13.) I have shown how defendant intentionally discriminated against me when it treated me differently than William D. Haynes; therefore my claim for disparate treatment is legitimate. In my Motion For Summary Judgment, I pled sufficient evidence and facts to support my claim of disparate treatment against the defendant based on race and gender. My pleadings included 22 pages of the Main Documents and 53 pages of Exhibits. I also pled thorough explanations showing how my evidence supported my claim of disparate treatment. (Doc. No. 84.) Additionally, I satisfied all four elements of the *prima facie case* for race and gender discrimination, excluding the job application requirement which was not a condition of the six-month "no cost extension" for the Alabama Customized Employment (ACE) Grant. (Doc. No. 84, *Section III. Plaintiff's Burden Of Proof,*

6

¶ 14 & 15.)  Furthermore, defendant treated me differently than Mr. Haynes in the following employment decisions:

> **a)** offering him an independent contract after terminating me, and not offering this option to me;
>
> **b)** paying him an hourly salary almost three times as much as my salary;
>
> **c)** paying him travel expenses to drive 200 miles roundtrip to and from work when it could have eliminated this expense by allowing me to travel only 2.62 miles to and from work; and
>
> **d)** offering him part-time work hours after adamantly denying my request for part-time work hours.

In my Supplement To Motion For Summary Judgment which included 7 Pages of the Main Document and 13 Pages of Exhibits, I provided additional factual evidence to support my claim of disparate treatment.  Specific evidence included a copy of the Personal Services Agreement Between Easter Seals Central Alabama And William D. Haynes, Mr. Haynes' Pay Invoices and Travel Expense Report, and my first and last pay stubs.  (Doc. No. 85, Ex. Nos. 1-13.)  I have also filed additional pay invoices along with weekly time sheets for Mr. Haynes to show that he was paid more than me and that he worked part-time hours for the Micro Enterprise Program.  **(Plaintiff's Exhibit Nos. 1-11)**  Based on my evidence, my establishment of the *prima facie case* for race and gender discrimination, and my explanations of the differences that defendant made between William D. Haynes and me, defendant intentionally discriminated against, thereby my claim of disparate treatment is substantiated, *McDonnell*

*Douglas Corp. v. Green*, 411 U.S. 792 (1973), *Pollis v. New School For Social Research, 132 F. 3d 115 (2ⁿᵈ Cir. 1997), Goodstein & McCauley v. Bombardier Capital Inc., Lortie, Murphy, Odon, & Felder,* 2:94cv110 (1995).

4.  In determining that the defendant's decision to hire an independent contractor was illegal and pretexual based on my race and gender, I used *the U. S. Supreme Court's Test* on terminating an employee.  In this test, the U.S. Supreme Court eliminated the normal reasons why an employer would terminate an employee, and concluded that the only possible reasons left would be the employees' membership in a protected group, i.e., race, color, gender, national origin, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

    **a)** Similarly, I eliminated the same normal reasons why Easter Seals would terminate an employee.  They would be qualifications, availability, performance, complaints, discipline, insubordination, and safety violations. Defendant could not use any of these reasons to terminate me because I was qualified, available, already working, and performing very well in the position of micro enterprise specialist.  Furthermore, I never had any complaints filed against me, I was never disciplined, I always respected authority, and I never violated any safety practices or regulations.  (Doc. No. 85, Ex. Nos. 31-41.)  In fact, in Mrs. Lynn's Declaration she said,  **"Had I known, prior to contracting with Mr. Haynes, that Ms. Jackson was interested in the vacant six month, full-time Micro-Enterprise Specialist position, I would have definitely offered her that position-i.e., she was qualified and experienced in that position and would**

**have been the obvious solution to the staffing problem."** (Lynn's Decl. at p. 4, ¶ 12).

      b) Mrs. Lynn also emphasized **"full-time"** in her sworn declaration and in her Brief In Support Of Its Motion For Summary Judgment. (Doc. No. 87 & 88-5.) The problem with Mrs. Lynn emphasizing **"full-time"** is that she allowed Mr. Haynes to work part-time. Therefore, the six-month "no cost extension" for the Alabama Customized Employment (ACE) Grant did not require "full-time" since she hired Mr. Haynes to work part-time as confirmed in the Personal Services Agreement Between Easter Seals Central Alabama And William D. Haynes, Haynes' Pay Invoices, and Time Sheets. (Doc. No. 85, Ex. Nos. 1 thru 4.) I have also attached additional pay invoices of Mr. Haynes which verify that he worked part-time hours for the defendant as a micro enterprise specialist **(Plaintiff's Exhibit Nos. 1-11)**. <u>Another very important issue is that I never stated that I would not work full-time for the defendant.</u> In fact, I was already working as a full-time micro enterprise specialist when Mrs. Lynn called me into her office to tell me that there was a problem funding the full-time micro enterprise specialist's positions. Prior to this meeting, I had never told management that I did not want to work full-time. I only offered to work part-time as an alternative to the defendant telling me that there was a problem funding the full-time micro enterprise specialist's positions. Also, Cassandra Cooper's sworn testimony is consistent with my sworn testimony about working part-time. (Deposition of Cassandra Cooper ("Cooper's Dep.") at. pp. 121-122; Deposition of Emily Jackson ("Jackson's Dep.") at. p. 341). <u>Conversely, in Mrs. Lynn's sworn</u>

declaration she stated that she believed that I only wanted to work part-time. This statement is inconsistent with Defendant's Amended Answer where she denied that I even asked to work part-time. (Lynn's Decl. at p. 3, ¶ 10; Doc. No. 19, ¶ 5.) (**Plaintiff's Exhibit No. 12**) Nonetheless, **"full-time"** employment status was not a business necessity, according to the defendant hiring William D. Haynes as an independent contractor and allowing him to work **"part-time"** hours. Therefore defendant's allegation that I only wanted to work "part-time" is not a defense, is inconsistent with Mrs. Lynn's Response in the Defendant's Amended Answer, and is not true. (Doc. No. 19, ¶ 5; Lynn's Decl. at pp. 2-3, ¶ 7, 8, 9, 10, & 11.)

c) Furthermore, when Mrs. Lynn stated that there was a problem with funding the full-time micro enterprise specialists, this was not an issue with the ACE Grant because the "no cost extension" for the ACE Grant covered the salary expense for two full-time micro enterprise specialist positions. (Doc. No. 84, Ex. No. 5, 16, 20; McKim's Decl. at p. 3, ¶ 8, Ex. B at p. 9).

d) There is also circumstantial evidence surrounding defendant's reason for hiring an independent contractor. The Alabama Department Of Rehabilitation Services (ADRS) was defendant's major client referral company. According to the Monthly Summary Report prepared by William D. Haynes, ADRS management and counselors had credibility concerns about the Micro Enterprise Program under the contract and leadership of Mr. Haynes. (Doc. No. 84, Ex. Nos., 42 & 43.) However, defendant retained Mr. Haynes even after being notified that the credibility of the Micro Enterprise Program under Mr. Haynes' contract was a concern of ADRS management and counsels, its major client

10

referral base.  Moreover, if Mr. Haynes was not meeting the performance

satisfaction level for the Micro Enterprise Program as Cassandra Cooper and I

did, I don't understand why the defendant retained Mr. Haynes when his

performance as an independent contractor was a known concern and issue for

ADRS management and counselors.

In retrospect, Easter Seals decision to hire an independent contractor was illegal

and pretextual because the normal reasons why an employer would terminate an

employee have been eliminated, just as they were in *McDonnell Douglas Corp. v.*

*Green*, 411 U.S. 792 (1973).  Also, the requirement of full-time work hours for

the ACE Grant Extension was not a business necessity because defendant allowed

Mr. Haynes to work part-time hours.  Additionally, the salary expense was not an

issue because the "no cost extension" for the ACE Grant covered the salary of two

full-time micro enterprise specialists.  Therefore, it can be concluded that Easter

Seals' reason for deciding to hire an independent contractor was based on the only

possible reasons remaining, my membership in two protected groups, race and

gender.

5.  In determining that the defendant violated its Mission Statement And Values,

I provided a copy of its Mission Statement And Values from its website address,

www.easterseals.ca.org.  In my Motion For Summary Judgment, I also provided

copies of letters that I wrote to Dr. Susan McKim, former Administrator, and

Larry F. Lewis, former Interim Administrator, and informed them about several

Federal Grant Opportunities for Easter Seals: *New Access Points In Programs,*

*Disability Rehabilitation Research, Health Behavior Change In People With*

*Disorders, Muscular Dystrophy, and Self-Employment For Adults and Youth with Disabilities Research and Technical Assistance Grant, SGA 06/07 Federal Grant.* (Doc. No. 84, Ex. Nos. 22 thru 30.) My evidence proves that I made written requests to defendant's managers attempting to assist them with obtaining Federal Funds for its Programs, and defendant would not acknowledge my information or offers of assistance. In fact, on January 8, 2007 at 09:20 a.m., when I contacted Cassandra Mitchell at the U.S. Department of Labor, Procurement Services Center, she stated that she maintains the Applications For Federal Assistance Grants, Form SF-424, and that she did not have an application for Easter Seals Central Alabama for the SGA 06/07 Self-Employment Research And Technical Assistance Grant. Therefore, defendant never applied for the Federal Grants that it was eligible for. Had defendant applied for this Grant and/or the other Grants above, my job as a micro enterprise specialist would have been sustained for at least 36 months after the end of the ACE Grant, and new jobs for other employees would have been created. Most importantly, these grants would have provided employment opportunities and services for people with disabilities, which is the mission and purpose of the defendant's non-profit business.

6. Defendant deviated from its *Normal Business Practices of Posting Job Vacancies* when it did not post the full-time micro enterprise specialist position after Ms. Cooper resigned on September 25, 2006 and defendant violated its own *Channel of Communication Policy*. Although Defendant did not have a written policy on job posting, posting job vacancies was a normal recruiting and hiring procedure that defendant carried out. Specifically, defendant posted its job vacancy

announcements on a bulletin board outside of Eileen Bennett's, the

Administrative Assistant's, Office during the two years that I was employed with

Easter Seals. I affirm that I observed job vacancy announcements posted on this

bulletin board when the following positions were open: Computer Technology

Instructor, CNA Nurses Instructor, Maintenance, Job Placement Specialist,

Accounts Payable/ Receivable Billing Clerk, Director Business And Finance

Office, and Administrator. Defendant also sent mass email messages to its

employees whenever there were job vacancies to allow its employees to have first

opportunities in applying for these jobs. Since defendant did not post the full-

time Micro Enterprise Specialist position on its bulletin board and/or send a mass

email message to its employees, as it had previously done during my two-year

employment when jobs were vacant, I had no way of knowing that the full-time

Micro Enterprise Specialist position was open. Also, it was the defendants'

managers' responsibilities to clearly communicate with its employees about job

vacancies. Moreover, it was management's responsibility to clearly articulate this

information to me about the full-time Micro Enterprise Specialist Job Vacancy

since this had been an issue since March/April 2006. Because the defendants'

managers did not clearly communicate this information to me, they violated their

own *Channel of Communication Policy*, Easter Seals' Employee Handbook.

7. In determining whether defendant violated the *Implied Covenant of Good Faith*

   *and Fair Dealing, its Employment-At-Will Policy, and its Communication Policy*,

   I will describe how Easter Seals' managers breached promises and misled its

   employees in the following:

a) I recall from the March/April 2006 meeting with Larry F. Lewis, former Interim Administrator, Dr. Susan McKim, former Administrator, and Cassandra Cooper, former micro enterprise specialist. Defendant's managers stated that there were budget cuts at the Office Of Disability Employment Policy (ODEP) and that the Micro Enterprise Program would continue if ADECA's request for a six-month "no cost extension would be approved. (Doc. No. 84, Ex. Nos. 1, 4, 5, 10-11, 14-16, 18- 19, 20; Doc. No. 85, Ex. Nos. 2-A, 10-11)   When management explained that the "no cost extension" would extend the Micro Enterprise Program for another year, I understood this to mean that I would have a job for at least until the end of the ACE Grant Extension. Also, at no time did Mr. Lewis and/or Dr. McKim state that it was required that we reapplied for our positions as micro enterprise specialists as a condition of the ACE Grant Extension. At no time in Debbie Lynn's Declaration did she state that we were required to reapply for our positions. (Lynn's Decl. at pp. 2-3, ¶ 7) The foregoing is true because Cassandra Cooper never reapplied for her position as a micro enterprise specialist when the defendant decided to retain her in the Micro Enterprise Program after receiving notification that the "no cost extension" for the ACE Grant was approved for six months. (Doc. No. 85, Ex. No. 2-A.) During our Meeting on September 12, 2006, Mrs. Lynn did not explain any requirements for Ms. Cooper to reapply for the micro enterprise specialist position. (Lynn's Decl. at p. 2-3, ¶ 7.) Similarly, at no time did Dr. McKim state that Cassandra Cooper and I had to reapply for our positions as part of the ACE Grant Extension. (McKim's Decl. at pp. 2-3, ¶ 5, 6 & 8, Ex. B.)

**b)** Specifically, defendant breached the implied covenant of good faith and fair dealing when Debbie Lynn, Administrator, misled Cassandra Cooper and I during a meeting on September 12, 2006 about the availability of Federal Funds for the Micro Enterprise Specialist position. Mrs. Lynn violated this implied contract a second time during a private meeting with me on September 18, 2006. (Jackson's Dep. at p. 369) Then Mrs. Lynn breached the implied contract a third time, during a meeting with Easter Seals' staff on September 18, 2006. Mrs. Lynn breached the implied covenant of good faith and fair dealing when she misled Easter Seals employees, Cassandra Cooper, and me with inconsistent statements regarding the availability of Federal Funds for the salaries of two full-time micro enterprise specialists who were currently working in its Micro Enterprise Program. (Doc. No. 84, Ex. Nos. 4-5, 10, 11, 14- 20.) Also, my sworn testimony is consistent with Cassandra Cooper's sworn testimony about our September 12, 2006 meeting and the September 18, 2006 Staff meeting (Jackson's Dep. at p. 341; Cooper's Dep. at pp. 50-55). Moreover, defendant's former managers Larry F. Lewis and Susan McKim made statements and promises to me that if the "no cost" extension for the ACE Grant was approved; I would have a job for at least until the end of the Grant Extension. As in the case of *Torosyan v. Boehringer Ingelheim Pharmaceuticals, Inc. 662 A.2d 89 (Conn 1995)*, the employer also made statements to the plaintiff about its employment policy, which regulated the plaintiff's job, and the plaintiff's job security. As a result, defendant violated its *Employment-At-Will Policy* when it made promises to its employee, and when it did not state **"just cause"** in its written Policy as a

reason for terminating its employees; it only stated **"cause."**  Similarly, Easter

Seals violated its *Employment-At-Will Policy* when it breached the *Implied*

*Covenant of Good Faith and Fair Dealing*, and when it did not state **"just cause"**

as a reason for terminating its employees in its written Policy; it only states **"the**

**Center is free to conclude employment with any employee at will <u>with or</u>**

**<u>without cause.</u>"**  Consequently, the defendants' breach of the *Implied Covenant*

*of Good Faith and Fair Dealing* is an exception to and a violation of its

*Employment-At-Will Policy, Torosyan v. Boehringer Ingelheim Pharmaceuticals,*

*Inc. 662 A.2d 89 (Conn 1995)*.  Defendant also violated its *Channel of*

*Communication Policy* when it did not accurately communicate information to its

employees, Cassandra Cooper, and me about the availability of Federal Funds for

the salary of two full-time Micro Enterprise Specialist positions.  Since there were

at least three modifications of the ACE Grant Extension Budget, I have filed each

budget that I received from my subpoena to the Alabama Department Of

Economic And Community Affairs (ADECA).  **(Plaintiff's Exhibit Nos. 13-36)**

### <u>PLAINTIFF'S OPPOSITION TO DEFENDANT'S BRIEF IN</u>
### <u>SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT</u>

I, Emily C. Jackson, the plaintiff, oppose the defendant's claim that it is clearly entitled to

a judgment as a matter of law because the defendant violated *the Law* and my rights

pursuant to *Title VII of the Civil Rights Act of 1964*.  I Emily C. Jackson, a Black,

African-American, female, was employed with the defendant as a full-time micro

enterprise specialist, and was terminated on September 29, 2006.  Mr. Haynes, a White,

Caucasian, male, was hired as an independent contractor, part-time, on October 1, 2006.

Based on the defendant's violations of *the Law* which covers *Case Law*, *Statutory Law*, and *Regulatory Law*, and based on my overwhelming evidence and substantial facts in my pleadings, Easter Seals Central Alabama is not entitled to judgment as a matter of law. **(See Plaintiff's Response To Specific Facts Showing A Genuine Issue For Trial Nos. 1, 2, and 3)**.

<u>**OPPOSITION TO DEFENDANT'S INTRODUCTION**</u>

1. Defendant claimed that "there is no evidence that Easter Seals' Administrator, Debbie Lynn, had any reason to believe that Plaintiff was interested in or willing to fill the newly vacant position in question because Plaintiff never expressed any interest in the open position or in continuing with the Easter Seals' Program on a full-time basis."

2. I started working at Easter Seals Central Alabama on September 14, 2004 as a full-time micro enterprise specialist in its Micro Enterprise Program which was funded by the Alabama Customized Employment (ACE) Grant. Therefore, I was already working in my position when management notified me on three occasions that there was a problem with funding my position. Defendant notified me in March/April 2006 when Larry F. Lewis, former Interim Administrator, and Dr. Susan McKim, former Administrator, called a meeting with Cassandra Cooper, former micro enterprise specialist, and me. (Doc. No. 84, Ex. No. 1.) Dr. McKim also asked Cassandra Cooper and me to provide statistical information so that she could give to ADECA to show that the Micro Enterprise Program was successful, in an effort to support the request for a "no cost extension. Also, before this meeting, I had never told management that I was not interested in my job as a

17

full-time micro enterprise specialist because I enjoyed my job and I enjoyed

working at Easter Seals. In fact, I searched for Federal Grants to sustain the

Micro Enterprise Program and other programs at Easter Seals approximately five

months prior to being notified that there was a problem with funding my job. In

my search, I found four Federal Grants for Easter Seals' Programs and submitted

a letter, along with copies of written information about those grants, to Dr. Susan

McKim. (Doc. No. 84, Ex. No. 23.) Furthermore, when Mr. Lewis held a staff

meeting and asked for recommendations on how he could improve the Center, I

offered information on improving Easter Seals. I also offered information on

Federal Grants for Easter Seals and my assistance with the Grant Application

Process. (Doc. No. 84, Ex. No. 24.) Based on my efforts in providing statistical

information to support the "no cost extension" and my previous efforts to search

for Federal Grant opportunities for the defendant, I proved that I was definitely

interested in continuing my employment with the defendant as a full-time micro

enterprise specialist. Lastly, Debbie Lynn was only the Administrator at Easter

Seals for 39 days, August 21,-September 29, 2006, prior to defendant terminating

me. Therefore, as a new administrator, she really didn't know me or Easter Seals'

past employment decision practices. What she could have done when Cassandra

Cooper submitted a cursory letter of resignation was to contact me and offer the

micro enterprise specialist job to me since this was an abrupt resignation. Then,

she would have ensured that she had done everything possible as a newly

assigned administrator to legally resolve the staffing problem for the ACE Grant

Extension, and to help me, as she claimed in our September 12, 2006 meeting.

18

**OPPOSITION IN PART TO DEFENDANT'S UNDISPUTED FACTS**

1. I agree with the defendant's description of Easter Seals' legal structure as a non-profit organization and with its explanation of its targeted client base as people with disabilities. (Doc. No. 87, p. 2, ¶ 1.)  However, defendant omitted explaining its 501(c)3 Eligibility Status and the reason why non-profit organizations obtain this status.  Non-profit agencies apply for this Eligibility Status in order to obtain Federal Financial Assistance for its Programs. Unquestionably, fund raising and philanthropy are the nature of a non-profit organization's business and the means by which they obtain financial assets/ resources.  Therefore implementing the Micro Enterprise Program was an opportunity for Easter Seals to obtain Federal Funding under its 501(c)3 Eligibility Status and to generate assets.  However, defendant is describing the funding to the Micro Enterprise Program as if it were a special privilege awarded to Cassandra Cooper and me.  Therefore, the defendant's response in its emphasis on my knowledge, at the inception of my employment, about the Micro Enterprise Program being funding "entirely" by the "DOL" is totally irrelevant to the case. It is also not a defense for terminating me on September 29, 2006.  Neither does it justify my termination by alluding to the Program being funded "entirely" by the "DOL," a benefit to nonprofit agencies with 501(c)3 Eligibility Status.  (Doc. No. 87, pp. 2-3, ¶ 2-3.)

2. Defendant referenced Mr. Haynes' job working with blind clients as "very labor intensive," and stated that this was the reason why he "was not able to serve more than a few individuals at a time."  (Doc. No. 87, p. 3; McKim Decl. at p. 2, ¶ 3).

19

For the sake of clarity, on the Micro Enterprise Program statistic reports to ADECA, the disability classification or label, for clients who have visual disabilities, was reported as "visual impairment." Cassandra Cooper and I provided services to clients with diverse physical and mental disabilities including visual impairments, mental illness, learning disability, multiple sclerosis, etc. Under these disabilities where the clients experienced challenging limitations, we worked more closely with them and provided more assistance in the development of their business plans. Therefore, to isolate Mr. Haynes' job and imply that his job was more difficult than our job is not an undisputed fact as the defendant has noted.

3. In defendant's response regarding Dr. Susan McKim sharing information about ADECA seeking a "no cost extension" for the Micro Enterprise Program, defendant did not state that reapplying for my position as a full-time micro enterprise specialist was a condition of the "no cost extension." (Doc. No. 87, pp. 3-4). Also, Dr. McKim did not state in her sworn declaration that I was required to re-apply for my position as a full-time micro enterprise specialist as a condition of the "no cost extension". (Doc. No 87, pp. 3-4; McKim Decl. at pp. 2-3, ¶ 5-7). Additionally, in the March 23, 2006 letter from ADECA to Dr. McKim, there were no requirements for the micro enterprise specialists to reapply for their positions once the "no cost extension" was approved. (Doc. No. 84, Ex. No. 1)

4. I agree with defendant's response about Larry Lewis' receipt of a letter from ADECA dated August 11, 2004. (Doc. No. 87, p. 4-5) I also agree with defendant's reply that Mr. Lewis notified Ms. Cooper and me that ADECA's

efforts to obtain an extension were unsuccessful and that our employment would
end on September 29, 2006. I further agree with defendant's response that
ADECA notified Dr. McKim about the approval of the "no cost extension" at the
end of August, specifically, on August 31, 2006. (Doc. No. 85, Ex. No. 2-A; Doc.
No. 87, p. 5, McKim's Decl. at p. 3, ¶ 8). However, in Dr. McKim's Declaration,
where she defined a "no-cost extension," she did not mention that the micro
enterprise specialists were required to reapply for their positions as a condition of
the "no-cost extension." Neither I nor Cassandra Cooper was required to reapply
for our positions as micro enterprise specialists in order to be retained in the
Micro Enterprise Program after the "no-cost extension" was approved. (McKim's
Decl. at pp. 2-3, ¶ 5-8) Therefore, the application requirement is not required to
establish the first element of the *prima facie* case for race and gender
discrimination.

5. Defendant also responded that Dr. Susan McKim prepared a budget for two full-
time micro enterprise specialists after receiving notice that the "no cost extension"
for the ACE Grant was approved. (Doc. No. 87, p. 5, ¶ 2; McKim's Decl. at p. 3,
¶ 8). This response confirms my claim that there was enough money in the new
ACE Grant Extension for my salary for an additional six months. This also
confirms that the initial intent of the "no cost extension" for the ACE Grant was
to retain and pay salary expenses for the two full-time micro enterprise specialists
currently working in the Micro Enterprise Program. (Doc. No. 84, ¶ 3-5). As I
stated previously, I received copies of the ACE Budget from ADECA, however, I
did not file each page of the Budget because I was not certain if I could file these

21

documents with the Court. Also, there were at least three modifications of the
ACE Budget, September 11, 2006 Email and ACE Budget, October 9, 2006
Email and ACE Budget, and March 23, 2007 ACE Budget. **(Plaintiff's Exhibit
Nos. 13-36)**

6.  I disagree with defendant's explanation of my letter dated September 11, 2006
    and insinuating that it was a letter of resignation. (Doc. No. 87, p. 5, ¶ 3-4).
    Defendant has repeatedly misquoted me by omitting the beginning phrase in
    Paragraph 4 of my letter where I clearly stated that "Since I have not been notified
    that there are any employment opportunities for me here at Easter Seals, I will
    need time to transition to a new career." (Doc. No. 84, Ex. No. 6, ¶ 4) By the
    defendant omitting the beginning phrase, it changes the meaning of my sentence
    and my intentions. I wrote this letter to Mrs. Lynn after she joined Easter Seals as
    the New Administrator. I also wrote my letter to open communications with Mrs.
    Lynn because she had just taken on the Administrator position and I wanted to be
    friendly, and to open dialogue with her about my employment status. I also
    wanted to take annual leave for the four days remaining prior to my last day of
    work, which in my August 15, 2006 termination letter from Mr. Lewis noted it as
    September 29, 2006. I only agree with the defendant's statement that I expressed
    my congratulations to Mrs. Lynn on her new position. My expressions were
    simply those of kindness and politeness to the New administrator, and they
    exemplify my attitude and character as a person and as a team player on the job.

7.  I disagree with the defendant's statement that I "would only be interested in
    working part-time during the six-month extension." (Doc. No. 87, p. 6) In fact, I

only offered to work part-time, during our September 12, 2006 meeting, when

Mrs. Lynn told me that there was a problem funding the full-time micro enterprise

specialist's positions. As an alternative to the funding problem that Mrs. Lynn

told me about, I offered to work Monday, Wednesday, and Friday, and four

hours-a-day. (Jackson's Dep. at p. 341). Thereafter, Mrs. Lynn said that she

would have to check with Susan McKim to see if the Grant would allow me to

work part-time. Also, Cassandra Cooper's sworn testimony is consistent with my

sworn testimony about the September 12, 2006 meeting that we had with Mrs.

Lynn. (Cooper's Dep. at pp. 121). Moreover, Mrs. Lynn asked Ms. Cooper and

me what we were going to do because she had only received email messages

about the Grant extension and that she hadn't received anything official.

(Jackson's Dep. at pp. 341-344). The reason why this is true is because our

meeting was held on September 12, 2006 and Mrs. Lynn did not sign off on the

official Signature/Certification Sheet for the ACE Grant Extension until October

18, 2006. (Doc. No. 84, Ex. No. 14).

8. During my September 18, 2006 private meeting that I had with Mrs. Lynn, she

insinuated that my letter of September 11, 2006 was a resignation by stating that

she had received and accepted my letter of resignation. (Doc. No. 87, p.7) After

Mrs. Lynn said this to me, I immediately stated that I had not resigned and that

my letter was not a letter of resignation; and she agreed. Then, she called Eileen

Bennett into the office and told her to retype my letter because my position had

been eliminated and that I had not resigned. (Jackson's dep. at pp. 363-369; Doc.

No. 87, p. 7.) While Mrs. Lynn was assisting Mrs. Bennett with retyping my

letter, I told her that I had purchased unemployment insurance on one of my loans, and, that if my records showed that I had resigned, which defendant had incorrectly written in my termination letter, then my insurance would not pay my loan. Therefore, Mrs. Lynn did not retype my letter to assist me in any way that she could to obtain unemployment benefits. She retyped my letter because it incorrectly stated that I had resigned. She also had previously told me in the September 12, 2006 meeting that there was a problem funding the full-time micro enterprise specialist's positions, and that is why she wrote that my position was eliminated due to budget cuts from ADECA. (EEOC Charge Of Discrimination at p. 2, ¶ 5; Doc. No. 84, p. 5, ¶ 5, Ex. No. 3; Cooper's Dep. at p. 121-122).

9. In defendant's statement about the staff meeting on September 18, 2006, it omitted the statement that Mrs. Lynn made about budget cuts from ADECA and that there was only enough money for one full-time micro enterprise specialist. (Doc. No. 84, p. 8, ¶ 7; Doc. No. 87, p. 8; Jackson's Dep. at p. 376-377)

10. In defendant's statement about Cassandra Cooper's resignation on September 25, 2006, this was my last day at work, and I was on annual leave, thereafter. Also, I did not see Ms. Cooper turn in her resignation. I know that she mentioned to me that she was going to resign, but I did not see her when she turned in her resignation to Mrs. Lynn. (Jackson's Dep. at pp. 379-384) Furthermore, the issue of a conflict of interest in Ms. Cooper's private consulting business was not an issue with me in my consulting business because I was not going to be servicing the same clients as the defendant, people with disabilities. Therefore, there was no conflict of interest for me. Only Ms. Cooper had the conflict of interest issue

with Mrs. Lynn because Ms. Cooper wanted to provide services to people with

disabilities. (Jackson's Dep. at pp. 381-384; Cooper's Dep. at pp. 39-44).

11. On September 29, 2006, when I picked up my paycheck, Eileen Bennett informed

me that Cassandra Cooper had resigned. At this point, I asked Mrs. Bennett if the

Program was going to continue since Ms. Cooper had resigned, and Mrs. Bennett

told me that the Program was going to end. (Doc. No. 84, p. 9, ¶ 9). So, the

defendant's statement that I knew "that the extension provided for a full-time

Micro-Enterprise Specialist position," and, that I "never expressed any interest to

Ms. Lynn (or anyone in management) regarding the vacant position" are not true.

(Doc. No. 87, p. 9-10, ¶ 1). On September 29, 2006, when I picked up my

paycheck, Mrs. Bennett told me that Cassandra Cooper had resigned, and when I

asked her if the Program was going to continue, she told me that the Program was

going to end. Based on what Mrs. Bennett had told me, I believed that the

Program was not going to be extended. Also, Mrs. Bennett was the

Administrative Assistant and a member of management at Easter Seals, therefore,

the defendant's statement that I never expressed any interest in the vacancy to

anyone in management is not true. (Doc. No. 84, p. 9, ¶ 9).

12. As I stated above, I did not know that there was a vacancy because Mrs. Bennett,

a member of management at Easter Seals, told me that the Program was going to

end. When I called Easter Seals in October 2006 and spoke with the receptionist,

she informed me that Mr. Haynes was working in the Micro Enterprise Program.

13. When I found out that management had misinformed me about the Grant

Extension since its first notification about the extension approval on August 31,

2006, I was hurt because I had worked so hard to perform well in my job and I couldn't believe that management had deceived me. <u>I was also hurt and emotionally distraught because I was once a client of Easter Seals Central Alabama</u>. Therefore, I know all too well about physical and mental challenges in employment as well as throughout life because I have medical disabilities, where disability is defined as "a physical or mental condition which substantially limits one or more life activities." Moreover, my disabilities are documented with the U.S. Social Security Administration (SSA), the Office Of Personnel Management (OPM), the Alabama Department Of Rehabilitation Services (ADRS), and Easter Seals Central Alabama. As mentioned above, I was a client/consumer of Easter Seals Central Alabama prior to becoming a micro enterprise specialist. Also, Don Stephens, ADRS, Vocational Rehabilitation Counselor, assisted me with job placement by: **1)** recommending me for the micro enterprise specialist position, **2)** referring me to Ed Collier, Easter Seals Central Alabama, Program Coordinator, and Job Placement Supervisor, and **3)** applying my SSA Ticket-To-Work towards this job **(Plaintiff's Exhibit Nos. 37-44)**. Therefore, I am not far removed from the clients that the defendant serves, and I fully understand the challenges, disappointments, and struggles that people with disabilities face. When management deceived me about the ACE Grant extension and terminated me, thereafter, I was astonished. The reason why is that I experienced, first-hand, how Easter Seals (a non-profit organization with a 40+ year history of helping people with disabilities) discriminated against one of its own clients/consumers. After making a final attempt on September 29, 2006 to obtain clarity about the

26

Micro Enterprise Program, I was ultimately denied an opportunity for employment by being misinformed that the Program was going to end.

14. Furthermore, I had a total of twelve verbal and/or written communications with management at Easter Seals about my employment, Federal Grant opportunities, and/or the ACE Grant Extension: **1)** November 10, 2005 letter to Dr. Susan McKim with information on Federal Grant opportunities; **2)** December 14, 2005 letter to Larry Lewis with information on Federal Grant opportunities; **3)** March/ April 2006 meeting with Larry F. Lewis, Susan McKim, and Cassandra Cooper; **4)** June 15-16, 2006 email message with Larry F. Lewis about the SGA 06/07 Grant for the Micro Enterprise Program; **5)** August 15, 2006 termination letter from Larry F. Lewis; **6)** September 11, 2006 letter to Debbie Lynn; **7)** September 12, 2006 meeting with Debbie Lynn and Cassandra Cooper with the submission of my resume and business card to Mrs. Lynn; **8)** Brief and informal discussions with Ed Collier, Program Coordinator, about my employment and a request for a letter of recommendation; **9)** September 18, 2006 private meeting with and termination letter from Debbie Lynn; **10)** September 18, 2006 staff meeting; **11)** September 25, 2006 letter of recommendation from Ed Collier; and **12)** September 29, 2006 conversation with Eileen Bennett in the Business Office about the ACE Grant Extension.  (Doc. No. 84, Ex. Nos. 23, 24, 1, 25-30, 2, 6, 3, 40.)  With the vast number of communications that I had with management, and with the information that I offered to assist the defendant in obtaining Federal Grants for its Programs, I clearly expressed and demonstrated more than an interest in remaining an employee at Easter Seals Central Alabama.  Based on my

repeated communications with management, I am rebutting and refuting the

defendant's statement that I am somehow imposing liability on Easter Seals' **"for**

**lacking sufficient clairvoyance and omniscience to divine an employee's**

**unarticulated desire for a vacant job."** (Doc. No. 87, pp. 12-13, ¶ 2)

15. In my EEOC Dismissal And Notice Of Rights, it stated that "Based upon its

investigation, the EEOC is unable to conclude that the information obtained

establishes violations of the statues."  It further stated that, "this does not certify

that the respondent is in compliance with the statues."  As I mentioned before,

EEOC never received the evidence that I submitted to my first attorney, David

Arendall, when I retained him on a contingency basis; only my 2-Page

Discrimination Charge was filed.  Consequently, EEOC did not have the evidence

and facts which supported my charges of race and gender discrimination against

Easter Seals Central Alabama.  (Doc. No. 1; Doc. No. 87, p.11, ¶ 1.)

16.  Thereafter, my attorney expressed time, money, and a jury trial.  Because I did

not have the financial resources to pay him, and because it would have cost him a

lot of his time and money to continue representing me on a contingency basis, I

had no other alternative but to represent myself.  My finances, the defendant's

violations against me, and the daunting task of representing my self without legal

guidance caused me to have migraine headaches, nightmares, and sleep disorder.

Initially, I tried to handle my problems without assistance, but I realized that I

needed some help, so I sought professional counseling to help me cope with my

health and legal issues.  **(Plaintiff's Exhibit Nos. 45-55)**.

17. I have provided substantial evidence and explanations that Easter Seals' decision

to contract with an independent contractor for the six-month extension was
motivated by my race and my gender which are violations of Title VII of the Civil
Rights Act of 1964. Based on my evidence, pleadings, and testimonies, I have
fully satisfied my burden of proof that Easter Seals Central Alabama,
("Defendant"), violated my civil rights under Title VII of the Civil Rights Act of
1964 when it violated the law by wrongfully terminating me on September 29,
2006 and when it hired William D. Haynes as an independent contractor on a
part-time work schedule on October 1, 2006. Also, defendant's violations against
me were intentional when it deceived me about the Federal Funding available for
my salary under the "no cost extension" for the ACE Grant, and when it treated
me differently than Mr. Haynes (disparate treatment). (Doc. Nos. 10, 84, 85)

### Opposition To Defendant's Arguments

Defendant makes two arguments 1) I cannot establish a prima facie case of
discrimination and 2) I have no evidence of pretext that management's decision to hire
William D. Haynes as an independent contractor was motivated by my race and gender.
(Doc. No. 87, pp. 11-19).

My rebuttal on defendant's first argument is that I have fully satisfied the prima
facie case for race and gender discrimination, excluding the application requirement.
**"The facts necessarily will vary in Title VII cases, and the specification above of the
prima facie proof required from respondent is not necessarily applicable in every
respect to differing factual situations,"** *McDonnell Douglas Corp. v. Green*, 411 U.S.
792 (1973). (Doc. Nos. 84 & 85.) I have also requested that the Court consider the racial

make-up at Easter Seals Central Alabama. **"The District Court may, for example,
determine after reasonable discovery that the (racial) composition of defendant's
labor force is itself reflective of restrictive or exclusionary practices,"** *McDonnell
Douglas Corp. v. Green*, 411 U.S. 792 (1973). (Doc. Nos. 84 & 85.)

My rebuttal on defendant's second argument, claiming that I had no evidence of
pretext, is my burden of proof for my claim of disparate treatment against Easter Seals
where I showed four specific ways that the defendant treated me differently than Mr.
Haynes including contractual opportunity, hourly pay, travel expense, and part-time work
hours. **"Other evidence that may be relevant to any showing of pretext includes
facts as to the petitioner's treatment of respondent during his prior term of
employment,"** *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). (Doc. No. 85.)

Another example relevant to pretext is Easter Seals' treatment towards me while I
was employed with defendant when management breached the implied covenant of good
faith and fair dealing. In this situation, they misinformed me about the salary expense for
two full-time micro enterprise specialist's positions that was available upon the approval
of the ACE Grant Extension on August 31, 2006. (Doc. No. 84.) Further evidence
showing pretext is the defendant's treatment toward me when I wrote letters to
management about Federal Grant opportunities and when I offered my assistance to help
them obtain grants. In this instance, they never acknowledge or responded to my letters.
(Doc. No. 84, Ex. Nos. 23 & 24).

Based on the above reasons, my written responses in this pleading, and the
substantial facts that I have pled to the Court, I have rebutted defendant's arguments that
I did not establish a prima facie case of discrimination and that I did not have evidence of

pretext for race and gender discrimination.

Moreover, I have satisfied my burden of proof that the defendant violated *the Law* and my civil rights pursuant to *Title VII of the Civil Rights Act of 1964*, which are violations pursuant to *Case Law*, *Statutory Law*, and *Regulatory Law*. (Doc Nos. 10, 84, 85)  More importantly, my evidence, pleadings, and statements to the Court clearly identify specific facts showing a genuine issue for trial **(See Plaintiff's Response To Specific Facts Showing A Genuine Issue For Trial, Nos. 1-7; Plaintiff's Opposition To Defendant's Brief In Support Of Its Motion For Summary Judgment).**

## Summary

Easter Seals Central Alabama ("Defendant") has violated the law and my civil rights pursuant to Title VII of the Civil Rights Act of 1964 by wrongfully terminating me on September 29, 2006.  I, Emily C. Jackson, ("Plaintiff"), have fully established a prima facie case for discrimination based on race and gender.  I have also pled evidence of pretext to show that Easter Seals' decision to contract with an independent contractor on October 1, 2006 was based on race and gender discrimination.  Furthermore, I have satisfied my burden of proof for disparate treatment and wrongful termination. Additionally, I have used the U.S. Supreme Court's Termination Test to show that defendant violated my civil rights based on race and gender discrimination.  Moreover, I have shown that defendant violated its own mission statement and values, and that it deviated from its normal business practice of posting job vacancies.  Additionally, I have shown that Easter Seals violated the implied covenant of good faith and fair dealing, thereby violating its Employment-At-Will and Channel Of Communication Policies.

Lastly, I have provided medical and financial documentation to show that Easter Seals'

violations against me caused me to suffer mental anguish, emotional stress, and financial

losses.

      In Easter Seals' Motion For Complete Summary Judgment, defendant has argued

that it is entitled to summary judgment as a matter of law; that the plaintiff never

expressed an interest in full-time employment; that she only wanted part-time

employment; that she could not establish a prima facie case of discrimination; and that

she did not have any evidence of pretext for unlawful discrimination against the

defendant.  On the contrary, I, Emily C. Jackson, ("Plaintiff), have opposed and rebutted

each argument that the defendant has made, in support of its motion for complete

summary judgment.  Moreover, I have supported my opposition to defendant's motion

with sufficient facts, mass evidence, and satisfaction of my burden of proof.

### Closing

      Undoubtedly, **the Sole Intention of the "no cost extension"** for the

Alabama Customized Employment (ACE) Grant which funded the Micro Enterprise

Program at Easter Seals Central Alabama **was to continue the Program and the Micro**

**Enterprise Specialists' positions who were currently working full-time at the time**

**that the request for the extension was made**.  Since I, Emily C. Jackson, was working

as a full-time micro enterprise specialist at the time that the request for the extension was

made, **the sole purpose of the extension was to continue my employment throughout**

**the end of the ACE Grant Extension, which, after approval, was March 31, 2007**.

      Based on Easter Seals Central Alabama's ("Defendant") violations of all three

categories of the Law, its violations of the plaintiff's civil rights pursuant to Title VII of

the Civil Rights Act of 1964, and its violations of its own Company Policies, defendant is

not entitled to a complete summary judgment as a matter of law. Furthermore, the

plaintiff has pled specific facts showing that there is a genuine issue of material fact for

trial including her satisfaction of the *prima facie case* of discrimination and her evidence

of illegal and pretextual discrimination based on race and gender. Therefore, the

defendant's motion for complete summary judgment should not be granted.

For these reasons, I, Emily C. Jackson, ("Plaintiff"), move that this Honorable

Court enter a judgment in favor of the Plaintiff's Opposition To Defendant's Motion For

Complete Summary Judgment. I further move that this Honorable Court enter a

judgment in favor of the Plaintiff's Motion For Summary Judgment.

I affirm under penalty of perjury the foregoing to be true and correct.

Dated this 19<u>th</u> day of March, 2008.

Emily C. Jackson, Pro Se

Enclosure:
55 Exhibits Attached To This Affidavit

Emily C. Jackson

605 Wesley Drive

Montgomery, AL 36111

(334) 288-4675

# Certification of Service

I, Emily C. Jackson, do hereby certify on this <u>19</u>th day of March 2008 that the

information contained in the foregoing is accurate and true to the best of my abilities, and

that I have submitted a copy of this document by the United States Postal Service Priority

Mail to the following:

Robin A. Adams, Esq.
Maynard, Cooper & Gale PC
1901 Sixth Avenue North
2400 AmSouth/Harbert Plaza
Birmingham, Alabama 35203

Stephen E. Brown, Esq.
Maynard, Cooper & Gale PC
1901 Sixth Avenue North
2400 AmSouth/Harbert Plaza
Birmingham, Alabama 35203

*Emily C. Jackson*

Emily C. Jackson, Pro Se

34



**HMS Co**
*Professional Business Services*
William D. Haynes dba HMS Co          Fed Tax #

Munford, Alabama 36268

Phone: (256) -          cfax: (425)
email:

**Bill To:**
Easter Seals Central Alabama
2125 East south Boulevard
Montgomery, Alabama 36116
Phone: (334) - 288 - 0240

**PLAINTIFF'S EXHIBIT**
*1*
PENGAD 800-631-6989

**INVOICE**

DATE:    November 3, 2006

| Invoice No. | 63311 |
|---|---|
| For:    Micro Enterprise | |

| Date | Description | Hours | Rate | Amount |
|---|---|---|---|---|
| 11/6/2006 | Worked ESCA Micro enterprise | 2.00 $ | 40.00 | $   80.00 |
| 11/7/2006 | Worked ESCA Micro enterprise | 2.50 $ | 40.00 | 100.00 |
| 11/19/2006 | Worked ESCA Micro enterprise | 2.0 $ | 40.00 | 80.00 |
| | Total Fees | 6.50 | | |
| | Travel Reimbursements (Attached Expense Report) | | | |
| | Total | | | |

*Thank you for your business*

William Whittington          Date 11/27/2006

pc: William A. Meachem CPA

Jackson/ESCA
0042



PLAINTIFF'S
EXHIBIT
2
FBMCO/000-531-6889

**H M S Co**

William D. Haynes dba HMS Co

Munford, Alabama 36268

## Weekly Time Sheet With Breaks

Fed Tax # _____

Week starting: 10/15/2006

|  | | Sunday | | Monday | | Tuesday | | Wednesday | | Thursday | | Friday | | Saturday | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
|  | | 10/15/2006 | | 10/16/2006 | | 10/17/2006 | | 10/18/2006 | | 10/19/2006 | | 10/20/2006 | | 10/21/2006 | |
| Time In | | | Total | 10:00 AM | Total | 10:00 AM | Total | | Total | | Total | | Total | | Total |
| Time Out | | | 0.00 | 12:00 PM | 2.00 | 12:00 PM | 2.00 | | 0.00 | | 0.00 | | 0.00 | | 0.00 |
| Time In | | | Total | 1:00 PM | Total | 1:00 PM | Total | | Total | | Total | | Total | | Total |
| Time Out | | | 0.00 | 4:00 PM | 3.00 | 4:00 PM | 3.00 | | 0.00 | | 0.00 | | 0.00 | Total Hours | 0.00 |
| Total | | 0.00 | | 5.00 | | 5.00 | | 0.00 | | 0.00 | | 0.00 | | 0.00 | 10.00 |

Signature _William D. Haynes_   Date _11/06/06_   Date _____

PLAINTIFF'S
EXHIBIT
3
PENGAD 800-831-6989

**H M S Co**

William D. Haynes dba HMS Co

Munford, Alabama 36268

# Weekly Time Sheet With Breaks

Fed Tax # _____

Week starting: 10/22/2006

| | | Sunday 10/22/2006 | | Monday 10/23/2006 | | Tuesday 10/24/2006 | | Wednesday 10/25/2006 | | Thursday 10/26/2006 | | Friday 10/27/2006 | | Saturday 10/28/2006 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Time In | | | Total | 10:00 AM | Total | 10:00 AM | Total | | Total | | Total | | Total | | Total |
| Time Out | | | 0.00 | 12:00 PM | 2.00 | 12:00 PM | 2.00 | | 0.00 | | 0.00 | | 0.00 | | 0.00 |
| Meal Break | | | | | | | | | | | | | | | |
| Time In | | | Total | 1:00 PM | Total | 1:00 PM | Total | | Total | | Total | | Total | | Total Hours |
| Time Out | | | 0.00 | 4:00 PM | 3.00 | 4:00 PM | 3.00 | | 0.00 | | 0.00 | | 0.00 | | |
| Total | | | 0.00 | | 5.00 | | 5.00 | | 0.00 | | 0.00 | | 0.00 | | 10.00 |

Signature: _William H. Haynes_      Date: 11/06/06

Date: _____

Jacks... /ESCA

**PLAINTIFF'S EXHIBIT**
4

## H M S Co

### Weekly Time Sheet With Breaks

William D. Haynes dba HMS Co

Munford, Alabama 36268

Fed Tax # _____

Week starting: 10/29/2006

| | | Sunday | | Monday | | Tuesday | | Wednesday | | Thursday | | Friday | | Saturday |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 10/29/2006 | | 10/30/2006 | | 10/31/2006 | | 11/1/2006 | | 11/2/2006 | | 11/3/2006 | | 11/4/2006 |
| Time In | | | Total | 10:00 AM | Total | 10:00 AM | Total | | Total | | Total | | Total | | Total |
| Time Out | | | 0.00 | 12:00 PM | 2.00 | 12:00 PM | 2.00 | | 0.00 | | 0.00 | | 0.00 | | 0.00 |
| Meal Break | | | | | | | | | | | | | | | |
| Time In | | | Total | 1:00 PM | Total | 1:00 PM | Total | | Total | | Total | | Total | | Total |
| Time Out | | | 0.00 | 4:00 PM | 3.00 | 4:00 PM | 3.00 | | 0.00 | | 0.00 | | 0.00 | | 0.00 | Total Hours |
| Total | | | 0.00 | | 5.00 | | 5.00 | | 0.00 | | 0.00 | | 0.00 | | 0.00 | 10.00 |

Signature _William H. Haynes_    Date 11/06/06

Date _____

Jackson/ESCA
^052



H M S Co

**WEEKLY TIME SHEET WITH BREAKS**

PLAINTIFF'S
EXHIBIT
5

William D. Haynes dba HMS Co          Fed Tax #

Week Starting          11/5/2006

Munford, Alabama 36268

|  | Sunday 11/5/2006 | Monday 11/6/2006 | Tuesday 11/7/2006 | Wednesday 11/8/2006 | Thursday 11/9/2006 | Friday 11/10/2006 | Saturday 11/11/2006 |  |  |
|---|---|---|---|---|---|---|---|---|---|
| Time In |  | 10:00 AM |  |  |  |  |  |  |  |
| Time Out |  | 12:00 PM |  |  |  |  |  |  |  |
| Meal Breaks |  |  |  |  |  |  |  |  |  |
| Time In |  |  | 3:00 PM |  |  |  |  |  | Total |
| Time Out |  |  | 5:30 PM |  |  |  |  |  | Hours |
| Total Hours |  | 2.00 | 2.50 |  |  |  |  |  | 4.50 |

Page 1 / 2

Jackson SCA
00

H M S Co

## WEEKLY TIME SHEET WITH BREAKS

PLAINTIFF'S
EXHIBIT
6

William D. Haynes dba HMS Co

Fed Tax #

Week Starting          11/19/2006

Munford, Alabama 36268

| | Sunday 11/19/2006 | Monday 11/20/2006 | Tuesday 11/21/2006 | Wednesday 11/22/2006 | Thursday 11/32/2006 | Friday 11/24/2006 | Saturday 11/25/2006 | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Time In | | 11:00 AM | | | | | | | | |
| Time Out | | 12.00 PM | | | | | | | | |
| Meal Breaks | | | | | | | | | | |
| Time In | | 1:00 PM | | | | | | | Total | |
| Time Out | | 2:00 PM | | | | | | | Hours | |
| Total Hours | | 2.00 | | | | | | | 2.00 | wbh |

Page 1 / 2

Jac  √ESCA
45



PENGAD 800-631-6989

PLAINTIFF'S
EXHIBIT

7

**H M S Co**

William D. Haynes dba HMS Co

Munford, Alabama 36268

Fed Tax # (

# Weekly Time Sheet With Breaks

Week starting: 2/4/2007

|  | | Sunday | | Monday | | Tuesday | | Wednesday | | Thursday | | Friday | | Saturday |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
|  | | 2/4/2007 | | 2/5/2007 | | 2/6/2007 | | 2/7/2007 | | 2/8/2007 | | 2/9/2007 | | 2/10/2007 |
| Time In | | Total | 7:30 AM | Total | 8:00 AM | Total | | Total | | Total | 8:00 AM | Total | | Total |
| Time Out | | 0.00 | 10:30 AM | 3.00 | 11:30 AM | 3.50 | | 0.00 | | 0.00 | 11:00 AM | 2.00 | | 0.00 |
| Meal Break | | | | | | | | | | | | | | |
| Time In | | Total | | Total | | Total | | Total | | Total | 1:00 PM | Total | | Total |
| Time Out | | 0.00 | | 0.00 | | 0.00 | | 0.00 | | 0.00 | 4:30 PM | 3.50 | | 0.00 |
| Total | | 0.00 | | 3.00 | | 3.50 | | 0.00 | | 0.00 | | 5.50 | Total Hours | 12.00 |

Signature _William H. Haynes_    Date 2/9/2007

_Ed Collier_    Date 4/12/07

_Bwt_

Jackson/ESCA
0060



PLAINTIFF'S
EXHIBIT
8

## Weekly Time Sheet With Breaks

**H M S Co**

William D. Haynes dba HMS Co

Munford, Alabama 36268

Fed Tax # _____

Week starting: 3/4/2007

| | | Sunday | | Monday | | Tuesday | | Wednesday | | Thursday | | Friday | | Saturday |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 3/4/2007 | | 3/5/2007 | | 3/6/2007 | | 3/7/2007 | | 3/8/2007 | | 3/9/2007 | | 3/10/2007 |
| Time In | Total | | 8:00 AM | Total | 8:00 AM | Total | | Total | | Total | | Total | | Total |
| Time Out | 0.00 | | 12:00 PM | 4.00 | 12:00 PM | 4.00 | | 0.00 | | 0.00 | | 0.00 | | 0.00 |
| Meal Break | | | | | | | | | | | | | | |
| Time In | Total | | 1:00 PM | Total | 1:00 PM | Total | 1:30 PM | Total | | Total | | Total | | Total |
| Time Out | 0.00 | | 4:30 PM | 3.50 | 4:30 PM | 3.50 | 4:30 PM | 3.00 | | 0.00 | | 0.00 | | 0.00 | Total Hours |
| Total | 0.00 | | 7.50 | | 7.50 | | 3.00 | | 0.00 | | 0.00 | | 0.00 | 18.00 |

Signature _William H. Hays_   Date _3/9/2007_

Ed Collier 4/12/07   /Date

DWS

Jackson/ESCA
0064



PLAINTIFF'S
EXHIBIT
9

# Weekly Time Sheet With Breaks

**H M S Co**

William D. Haynes dba HMS Co

Munford, Alabama 36268

Fed Tax # _____

Week starting: 3/11/2007

| | | Sunday | Monday | | Tuesday | | Wednesday | | Thursday | | Friday | | Saturday | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 3/11/2007 | 3/12/2007 | | 3/13/2007 | | 3/14/2007 | | 3/15/2007 | | 3/16/2007 | | 3/17/2007 | |
| Time In | | Total | 7:30 AM | Total | 8:00 AM | Total | | Total | | Total | | Total | | Total |
| Time Out | | 0.00 | 11:30 AM | 4.00 | 11:30 AM | 3.50 | | 0.00 | | 0.00 | | 0.00 | | 0.00 |
| Meal Break | | | | | | | | | | | | | | |
| Time In | | Total | 1:00 PM | Total | 1:00 PM | Total | 1:30 AM | Total | | Total | | Total | | Total | Total Hours |
| Time Out | | 0.00 | 4:00 PM | 3.00 | 4:00 PM | 3.00 | 4:30 AM | 3.00 | | 0.00 | | 0.00 | | 0.00 | |
| Total | | 0.00 | | 7.00 | | 6.50 | | 3.00 | | 0.00 | | 0.00 | | 0.00 | 16.50 |

William D. Haynes (Hay)    3/16/2007          Ed Collier  4/12/07
Signature          Date                    Date

DWf



PENGAD 800-831-6989

PLAINTIFF'S
EXHIBIT

10

# Weekly Time Sheet With Breaks

H M S Co

William D. Haynes dba HMS Co

Munford, Alabama 36268

Fed Tax #

Week starting: 3/18//2007

| | | Sunday 3/18/2007 | | Monday 3/19/2007 | | Tuesday 3/20/2007 | | Wednesday 2/21/2007 | | Thursday 3/22/2007 | | Friday 3/23/2007 | | Saturday 3/24/2007 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Time In | | | Total | 8:00 AM | Total | 8:00 AM | Total | 8:00 AM | Total | | Total | | Total | | Total |
| Time Out | | 0.00 | | 11:30 AM | 3.50 | 11:30 AM | 3.50 | 11:30 AM | 3.50 | 0.00 | | 0.00 | | 0.00 | |
| Meal Break | | | | | | | | | | | | | | | |
| Time In | | | Total | 1:00 PM | Total | 1:00 PM | Total | 1:00 PM | Total | | Total | | Total | | Total |
| Time Out | | 0.00 | | 4:00 PM | 3.00 | 4:00 PM | 3.00 | 4:00 PM | 3.00 | 0.00 | | 0.00 | | 0.00 | Total Hours |
| Total | | 0.00 | | 6.50 | | 6.50 | | 6.50 | | 0.00 | | 0.00 | | 0.00 | 19.50 |

_William A. Haynes_ 3/23/2007
Signature                Date

_Ed Collier_ 4/12/07
                         Date

Jackson/ESCA
0066

TOTAL P.29

PLAINTIFF'S
EXHIBIT
11
PENGAD 800-631-6989

H M S Co

William D. Haynes dba HMS Co

Munford, Alabama 36288

Fed Tax #

# Weekly Time Sheet With Breaks

Week starting: 3/25/2007

| | Sunday | | Monday | | Tuesday | | Wednesday | | Thursday | | Friday | | Saturday | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 3/25/2007 | | 3/26/2007 | | 3/27/2007 | | 3/28/2007 | | 3/29/2007 | | 3/30/2007 | | 3/31/2007 | |
| Time In | | Total | 8:00 AM | Total | 8:00 AM | Total | 8:00 AM | Total | 8:00 AM | Total | | Total | | Total |
| Time Out | | 0.00 | 12:00 PM | 4.00 | 12:00 PM | 4.00 | 12:00 PM | 4.00 | 12:00 PM | 4.00 | | 0.00 | | 0.00 |
| Meal Break | | | | | | | | | | | | | | |
| Time In | | Total | 1:30 PM | Total | 1:30 PM | Total | 1:30 PM | Total | 1:30 PM | Total | | Total | | Total |
| Time Out | | 0.00 | 4:30 PM | 3.00 | 4:00 PM | 2.50 | 4:30 PM | 3.00 | 4:30 PM | 3.00 | | 0.00 | | 0.00 |
| Total | 0.00 | | 7.00 | | 6.50 | | 7.00 | | 7.00 | | 0.00 | | 0.00 | |

Total Hours: 27.50

Signature: _William H. Haynes_    Date: 3/30/2007

_Ed Collier_ 4/12/07    Date

DWJ

Jackson/ESCA
0067



PLAINTIFF'S
EXHIBIT
12

**Defendant admits the allegations contained in paragraph 3 of Plaintiff's Complaint.**

4.    On August 15, 2006, while I was out on funeral leave, Mr. Lewis left a letter on my desk that said that my position would be ending on September 29, 2006 and that efforts to extend the program has failed.

**Defendant admits the allegations contained in paragraph 4 of Plaintiff's Complaint.**

5.    On September 12, 2006, Ms. Debbie Lynn, Administrator, called a meeting with me and Ms. Cooper and said the program was going to be extended for six months, but there was a problem with funding the full time positions. I asked to work part-time.

**Defendant admits that on or about September 12, 2006, Debbie Lynn, Defendant's**

**Administrator, met with Plaintiff and Ms. Cooper and informed them that a six month**

**extension had been secured for the ACE Microenterprises Program. Defendant further**

**admits that, because the program was extended for only six months (and not the entire year**

**as first requested), the Defendant was required to submit a revised budget for the Program.**

**Defendant denies the remaining allegations contained paragraph 5 of Plaintiff's Complaint.**

6.    On September 18, 2006, Ms. Lynn told me that while the program was going to be extended for six more months, that my position had been eliminated and that the grant would only allow for one full time Micro Enterprise Specialist so that Ms. Cooper would be retained.

**Defendant denies the allegations contained in paragraph 6 of Plaintiff's Complaint.**

7.    On Monday, September 25, 2006, Ms. Cooper submitted her letter of resignation, the same day as my last day at work. I used four vacation days; therefore, my last day was officially September 29, 2006. On this day, when I picked up my paycheck, I asked the Administrative Assistant, Eileen Bennett, if the program was going to continue since Ms. Cooper was leaving, and she told me that the program was going to end.

**Defendant admits that Ms. Cooper resigned on September 25, 2006. Defendant further**

**admits that Plaintiff's last day at work was September 25, 2006. Defendant admits that**

**Plaintiff used a combination of vacation time and unpaid leave between September 25 and**

**September 29. Defendant is currently without sufficient information to admit or deny the**

3

**Farmer, Tammy**

| | |
|---|---|
| **From:** | Susan McKim [smckim@eastersealsca.org] |
| **Sent:** | Monday, September 11, 2006 9:06 AM |
| **To:** | Farmer, Tammy |
| **Subject:** | ACE budget |
| | |
| **Attachments:** | 2006-2007 6 month ACE budget.xls |





2006-2007 6 month
ACE budget.x...

Tammy,

In looking over this budget, we realized that some health insurance costs had been
included by mistake.  So, I have made the changes and it reduces the overall budget by a
small amount.  I hope this does not mess anything up for you.

Susan

EXHIBIT-3X

1

**Customized Employment Budget**
Subrecipient's Name/Address:

Agreement/Project No:_____
Modification No.:_____
Federal ID No:_____
Contact Person:   Susan McKim
Telephone No.:    334-288-0240
Agreement Period:  09/39/2006-03/31/2007
Date:_____

County Code(s) for this activity            101
House District(s) for this activity          73
Senate District(s) for this activity         25



PLAINTIFF'S
EXHIBIT
14

| B. | Program Costs (Items 1-14) | AMOUNT APPROVED | INCREASE | DECREASE | REVISED AMOUNT |
|---|---|---|---|---|---|
| B.1. | Staff Salaries (Itemize/Show %) | | | | |
| | Microenterprise Spec(2) | 31,720.56 | | | 31,720.56 |
| | Program Support Personel | 7,599.19 | | | 7,599.19 |
| | (See Breakdown) | | | | - |
| | | | | | - |
| | | | | | - |
| | | | | | - |
| | | | | | - |
| | | | | | - |
| | | | | | - |
| | TOTAL SALARIES: | $   39,319.75 | $        - | $        - | 39,319.75 |
| B.2. | Total Staff Fringe Benefits | | | | |
| | | $   11,759.14 | $ | $ | 11,759.14 |
| B.3. | Staff Travel (Itemize on backup) | | | | - |
| | In-State | 3,500.00 | - | | 3,500.00 |
| | Out-of-State | | - | | |
| | | - | | | |
| | TOTAL TRAVEL | $    3,500.00 | $        - | $        - | 3,500.00 |
| B.4. | Facilities (Include rent, utilities, maint. for rental space and show cost per square ft. on backup) | $    6,588.75 | $ | $ | 6,588.75 |
| | | | | | - |
| B.5. | Communications (telephone, internet,etc.) | $    1,750.00 | $ | $ | 1,750.00 |
| | | | | | - |
| B.6. | Office Supplies (include postage, software, desktop supplies, etc.) | $    4,300.00 | $        - | $ | 4,300.00 |
| B.7. | Books & Training/Teaching Aids | $    1,500.00 | $        - | $ | 1,500.00 |
| B.8. | Equipment (Itemize on backup) | $ | $        - | $ | - |
| | | | | | - |
| B.9. | Other: Specify | $ | $ | $ | |
| | Copier Service, Lease, Connection & Repairs | 2,000.00 | | | 2,000.00 |
| | Audit(Yellow Book and Single) | 3,385.18 | - | | 3,385.18 |
| | Evaluations | 7,500.00 | | | 7,500.00 |

WDD 6/00

EXHIBIT-3

| | | | | | | |
|---|---|---|---|---|---|---|
| Business Insurance | 1,400.00 | | - | | | 1,400.00 |
| Program Evaluation Assessment | 4,500.00 | | | | | 4,500.00 |
| | $ | $ | | $ | # | - |
| | | | | | | - |
| | | | $ | | | - |
| | | $ | | $ | | - |
| **Total Other** | **21,035.18** | | **-** | | **-** # | **21,035.18** |
| B.10. Payment of ITA's | $ | $ | | $ | | - |
| B.11. | $ | $ | | $ | | - |
| B.12. | $ | $ | | $ | | - |
| B.13. | $ | $ | | $ | | - |
| B.14. | - | | | | | - |
| | $ | $ | | $ | | |
| | $ | $ | | $ | | |
| | $ | $ | | $ | | - |
| | $ | $ | | $ | | |
| | $ | $ | | $ | | |
| **Total** | $ - | $ | - | $ | - | |
| **TOTAL    Program (1-14)** | $ **89,752.82** # | | **-** # | | **-** # | **89,752.82** |
| **Rapid Response (1-14)** | | | | | | |
| **Other (1-14)** | | | | | | |



PLAINTIFF'S
EXHIBIT

5

PENGAD 800-631-6989

EXHIBIT- 4

WDD 6/00

**Farmer, Tammy**

| | |
|---|---|
| **From:** | Susan McKim [smckim@eastersealsca.org] |
| **Sent:** | Monday, October 09, 2006 1:44 PM |
| **To:** | Farmer, Tammy |
| **Subject:** | ACE budget |
| **Attachments:** | 2006-2007 6 month ACE budget.xls |

Tammy,
I have attached the new budget for microenterprise.
Susan

PLAINTIFF'S
EXHIBIT
16

PENGAD 800-131-6989

EXHIBIT-5

BUDGET BACKUP

Agreement/Project No: _____

Modification No.: _____

COST CATEGORY: Administration _____
               Program Costs        X
               Rapid Response _____

PLAINTIFF'S
EXHIBIT
17

| Line Item No: | B1 | AMOUNT APPROVED | INCREASE | ADJUSTMENT DECREASE | REVISED AMOUNT |
|---|---|---|---|---|---|
| **Microenterprise Specialist** | | | | | |
| William Haynes - contracted | | 26,000.00 | - | | 26,000.00 |
| | | | | - | - |
| **Program Support** | | | | | |
| McKim (2373.47X13X30%) | | 9,256.53 | | - | 9,256.53 |
| Jarrett (1738.58X13X.08) | | 1,808.12 | | | 1,808.12 |
| | | | | | - |
| **Total** | | 37,064.65 | - | - | 37,064.65 |
| | | | | | |
| **Total** | | 37,064.65 | - | - | 37,064.65 |

| Line Item No: | B2 | AMOUNT APPROVED | INCREASE | ADJUSTMENT DECREASE | REVISED AMOUNT |
|---|---|---|---|---|---|
| FICA(7.65%) | | 846.45 | | - | 846.45 |
| SUI(1.5% of 8,000 ea person) | | 135.00 | | | 135.00 |
| Life Ins. Supper Per | | 50.00 | | | 50.00 |
| LTD Support | | 40.00 | | | 40.00 |
| Retirement(7.50% of Salaries only) | | 829.85 | | - | 829.85 |
| Cafeteria Plan | | 100.00 | | | 100.00 |
| Workers Comp(@1.05%) | | 116.18 | | - | 116.18 |
| | | | | | - |
| | | | | | - |
| **Leave Support Personnel** | | | | | |
| McKim(60hr@29.67) | | 1,780.20 | - | | 1,780.20 |
| Jarrett(7hr@24.76) | | 173.32 | | - | 173.32 |
| | | | | | - |
| | | | | | - |
| **Total** | | 4,070.99 | - | - | 4,070.99 |

EXHIBIT-6

Budget Backup

Agreement/Project No:_____
Modification No.: _____

COST CATEGORY: Administration    _____
                Program Costs    X    _____
                Rapid Response    _____

PENGAD 800-631-6989    PLAINTIFF'S EXHIBIT 18

| Line Item No: | B3 | AMOUNT APPROVED | ADJUSTMENT INCREASE | DECREASE | REVISED AMOUNT |
|---|---|---|---|---|---|
| In-State Travel and Conferences | | 4,000.00 | | - | 4,000.00 |
| | | | | | - |
| | | - | | | - |
| Total | | 4,000.00 | - | - | 4,000.00 |

| Line Item No: | B4 | AMOUNT APPROVED | ADJUSTMENT INCREASE | DECREASE | REVISED AMOUNT |
|---|---|---|---|---|---|
| Facilities | | | | | - |
| 1566Sq ft @ 8.25 | | 6,459.75 | | | 6,459.75 |
| | | | | | - |
| | | - | | | - |
| Total | | 6,459.75 | - | | 6,459.75 |

| Line Item No: | B5 | AMOUNT APPROVED | ADJUSTMENT INCREASE | DECREASE | REVISED AMOUNT |
|---|---|---|---|---|---|
| Telephone | | 1,000.00 | | | 1,000.00 |
| Network Support | | 750.00 | | | 750.00 |
| | | | | | - |
| | | | | | - |
| | | - | | | - |
| Total | | 1,750.00 | - | - | 1,750.00 |

EXHIBIT-7

**Budget Backup**

Agreement/Project No:_____

Modification No.:    _____

COST CATEGORY:   Administration   _____

Program Costs   X   _____

Rapid Response   _____

PLAINTIFF'S
EXHIBIT
*19*

| Line Item  No: | B6 | AMOUNT APPROVED | ADJUSTMENT | | REVISED AMOUNT |
|---|---|---|---|---|---|
| | | | INCREASE | DECREASE | |
| Office Supplies | | 1,800.00 | - | | 1,800.00 |
| | | | | | - |
| Copying | | 1,500.00 | | | 1,500.00 |
| Postage | | 1,000.00 | | | 1,000.00 |
| | | | | | - |
| | | - | | | - |
| | | | | | - |
| | | - | | | - |
| | | | | | - |
| | | - | | | - |
| | | | | | - |
| | | - | | | - |
| **Totals** | | 4,300.00 | - | - | 4,300.00 |

| Line Item No: | B7 | AMOUNT APPROVED | ADJUSTMENT | | REVISED AMOUNT |
|---|---|---|---|---|---|
| | | | INCREASE | DECREASE | |
| Books, Software, Training & Supplies | | 500.00 | - | | 500.00 |
| | | | | | - |
| | | | | | - |
| | | | | | - |
| | | | | | - |
| Total | | 500.00 | - | - | 500.00 |

| Equipment Line Item  No: | B8 | AMOUNT APPROVED | ADJUSTMENT | | REVISED AMOUNT |
|---|---|---|---|---|---|
| | | | INCREASE | DECREASE | |
| | | | - | | - |
| | | | - | | - |
| | | | | | - |
| Total | | - | - | - | - |

EXHIBIT-8

**Budget Backup**

Agreement/Project No: _____

Modification No.: _____

COST CATEGORY: Administration    _____
                 Program Costs    X _____
                 Rapid Response    _____

PLAINTIFF'S
EXHIBIT
20
PENGAD 800-631-6989

| Line Item No:   B9 | AMOUNT APPROVED | ADJUSTMENT INCREASE | ADJUSTMENT DECREASE | REVISED AMOUNT |
|---|---|---|---|---|
| Copier Service, Lease, Connection and Repairs | 2,000.00 | | | 2,000.00 |
| Audit(Yellow Book and Single) | 3,385.18 | | | 3,385.18 |
| Evaluations 10@500.00 | 5,000.00 | | | 5,000.00 |
| Area Meeting Expense | 500.00 | - | | 500.00 |
| Professional Membership Dues | 500.00 | - | | 500.00 |
| Staff Development | 500.00 | | | 500.00 |
| Business Insurance | 1,400.00 | | | 1,400.00 |
| Program Evaluation Assessment | 3,500.00 | | | 3,500.00 |
| | | - | | - |
| | | - | | - |
| | | | | - |
| | | | | - |
| | | | | - |
| Total | 16,785.18 | - | - | 16,785.18 |

| Line Item No:   B12 | AMOUNT APPROVED | ADJUSTMENT INCREASE | ADJUSTMENT DECREASE | REVISED AMOUNT |
|---|---|---|---|---|
| | | | | - |
| | | | | - |
| | | | | - |
| | | | | |

| Line Item No:   B13 | AMOUNT APPROVED | ADJUSTMENT INCREASE | ADJUSTMENT DECREASE | REVISED AMOUNT |
|---|---|---|---|---|
| | | | | - |
| | | | | - |
| | | | | - |
| | | | | |

EXHIBIT-9

**Budget Backup**

Agreement/Project No: _____
Modification No.: _____

COST CATEGORY: Administration _____
                Program Costs   X  _____
                Rapid Response   _____

PLAINTIFF'S
EXHIBIT
21
PENGAD 800-631-6989

| Line Item No: | B14 | AMOUNT APPROVED | ADJUSTMENT INCREASE | DECREASE | REVISED AMOUNT |
|---|---|---|---|---|---|
| | | | | | - |
| | | | | | |
| | | | | | - |
| | | | | | |
| | | | | | - |
| | | | | | |
| | | | | | - |
| | | | | | - |
| Total Indirect | | - | - | - | |
| Totals | | 74,930.57 | | | 74,930.57 |

EXHIBIT-10

OFFICE OF THE GOVERNOR

**BOB RILEY**
GOVERNOR



OFFICE OF WORKFORCE DEVELOPMENT

**DR. TIM ALFORD**
DIRECTOR

**STATE OF ALABAMA**

March 23, 2006



PLAINTIFF'S
EXHIBIT
**22**

Ms. Susan McKim, Administrator
Easter Seals Central Alabama
2125 East South Boulevard
Montgomery, Alabama 36116

Dear Ms. McKim:

We recently received a letter (copy attached) from the U.S. Department of Labor concerning the Customized Employment Grant funding. The Office of Disability Employment Policy's (ODEP) funding has been cut for the new fiscal year by approximately $7 million in addition to the drastic funding cuts, approximately $20 million, for the current year's budget. In response to these funding cuts, ODEP had to cut our funding for the Customized Employment Grant for the current year and unfortunately, no funding is available for the next fiscal year. Therefore, the Alabama Customized Employment (ACE) Grant will expire on September 29, 2006 and all programs funded by this grant will close with the final expenditure of funds carried over beyond September 29, 2006.

We have requested a no cost extension from ODEP in order to transition the participants to other workforce programs through our WIA partners and/or the Career Center system and to allow adequate time to complete the paperwork to close the programs. When we receive approval for this extension, we will provide you with the new close out date and procedures.

You and your staff have done an outstanding job serving participants in the Customized Employment program. I want to thank you for your hard work and dedication to this project over the past four years. Should you have any questions or need additional information, please call Mrs. Tammy Farmer at 242-5154.

Sincerely,

Steve Walkley, Division Director
Workforce Development Division

Attachment
SW:tf

c:     Tim Alford
       Ken Hollingsworth
       Sims Dunlap
       Melody Koorangi

401 ADAMS AVENUE • SUITE 590 • P.O. BOX 5690 • MONTGOMERY, ALABAMA 36103-5690 • (334) 353-1490

EXHIBIT-11

# SUBRECIPIENT GRANT AGREEMENT

STATE OF ALABAMA
DEPARTMENT OF ECONOMIC AND COMMUNITY AFFAIRS
Workforce Development Division
CFDA 17.720

Title & Funding
Agreement Number:     **Customized Employment**
Modification No.           **5G200003**
                                      **1**

## SIGNATURE SHEET

This modification applies to and is hereby incorporated in the agreement entered into by the Alabama Department of Economic and Community Affairs, Workforce Development Division, as the Service Deliverer for the Workforce Investment Act, known as the GRANTOR, and

**Easter Seals Central Alabama**
**2125 East South Boulevard**
**Montgomery, Alabama 36116**
(Name and address of Subrecipient)

PLAINTIFF'S
EXHIBIT
23
PENGAD 800-631-6989

hereinafter known as SUBRECIPIENT.

The purpose of this modification is to incorporate the following numbered page changes:

| | | | | |
|---|---|---|---|---|
| A. Signature Sheet | Page Number | **A-1** | through Page Number | **A-1** |
| B. General Provisions | Page Number | **B-1** | through Page Number | |
| C. Performance Standards | Page Number | **C-1** | through Page Number | |
| D. Special Provisions | Page Number | **D-1** | through Page Number | |
| E. Budget Section | Page Number | **E-1** | through Page Number | **E-1** |

The effect of this modification is to:    adjust the various line items to cover routine expenses associated with the operation of this program and extend the ending date through March 31, 2007.  The total amount remains the same.

The foregoing, along with previous serially numbered modifications, constitute(s) the only authorized change(s) in the aforementioned agreement to date.  The GRANTOR and SUBRECIPIENT hereby agree that the purpose, performance, and consideration are as expressed in the agreement as now modified and that no element of this modification shall be retroactive unless expressly stated.  This action changes the value of the original agreement of     **9/30/2005**     (date)     as modified and adds     *****     or subtracts     *****
Total payment permitted under this agreement shall not exceed          **$ 174,401.05** .
This agreement ends     **3/31/2007**     (date).

In witness whereof the parties hereto executed this modification to the latest date appearing below.

Workforce Development Division Statement:
This contract has been reviewed for and is approved as to content.
By: _[signature]_                                Division Director
     Preparer's Initials
**Steve Walkley**
(Typed Name)
Date:     **10-3-06**

Attorney's Statement:
This contract has been reviewed for legal form and complies with all applicable laws, rules, and regulations of the state of Alabama governing these matters.
By: _[signature]_
**Edward E. Davis**
(Typed Name)
Date:     **10-6-06**

SUBRECIPIENT:
                    Certification
In signing and thereby validating this agreement, I also certify that I am authorized by the governing body of the SUBRECIPIENT to legally bind that body in my capacity as its signatory official.
By: _[signature]_
(SUBRECIPIENT'S Signatory Official)
**Debbie Lynn**
(Typed Name)
Title:     **Administrator**
Date:     **10-18-06**

GRANTOR:
By: _[signature]_                                , Acting Director
     Alabama Department of Economic and Community Affairs
                    **Doni Ingram**
                    (Typed name)
Date:     **10-11-06**
By: _[signature]_                                . Director
     Office of Workforce Development
                    **Tim Alford**
Date:     **10-10-06**

A-1

EXHIBIT-12

RS 10/24/06

## AGREEMENT TRANSMITTAL FORM

Agreement # _____ 5G200003 ___ Mod # _____ 1 _____

### PLEASE COMPLETE THIS FORM AND SUBMIT WITH CONTRACT FOR SIGNATURES:

Subrecipient's Legal Name _____ Easter Seals Central Alabama _____

Geographic Location – City/Town/Community: _____ Montgomery ___ County _____ Montgomery _____

MAILING ADDRESSES FOR:

General Correspondence:                                         Payments(if different): 

PLAINTIFF'S EXHIBIT 24

Name    Easter Seals Central Alabama _____
Street No.  2125 East South Boulevard _____
P.O. Box _____
City, State, and Zip    Montgomery, Alabama 36116 _____
Telephone No. ___ (334) 288-0240 _____
Amount of Agreement -Cash ___ $174,401.05 _____        In-Kind _____
Agreement/Subgrant Performance Period ___ 9/30/05 to 3/31/07
Funded by (check one): 100% State Funds _____        Federal Grant ___ X

IF FUNDED BY FEDERAL GRANT, PLEASE COMPLETE:
    Federal Grant Name/Number ___ Customized Employment Grant / E-9-4-2-0096 _____
    Percentage State Funds required to Match Federal Grant _____ 0% _____
    Federal Grant Budget Period ___ 9/30/02 – 3/31/07 _____

I hereby certify that this agreement/grant amount does not make the total obligations exceed the total amount of funds available for this program period.

_____        _____ 10-2-06 _____
Certifying Official                                             Date

                                                SIGNATURE OF DIVISION DIRECTOR
                                                _____ 10/3/06 _____
                                                                        Date

PURPOSE:  This modification adjusts the various line items in order to cover the routine expenses associated with the operation of the program and extends the ending date to March 31, 2007.  The Department of Labor approved our request for a six-month extension of the Customized Employment Grant.  The total amount of the contract remains the same.

EXHIBIT-13

Easter Seals Central Alabama
**2125 East South Blvd**
**Montgomery, Alabama  36116**

| | |
|---|---|
| Contact Person: | Susan McKim or Christy B. Jarrett |
| Telephone No.: | 334-288-0240 |
| Agreement Period: | 9/30/2005 – 3/31/2007 |
| Date: | 10/1/2006 |
| County Code(s) for this activity | 101 |
| House District(s) for this activity | 73 |
| Senate District(s) for this activity | 25 |

PLAINTIFF'S EXHIBIT 25  PENGAD 800-631-6989

| A. | Administration (Items 1-9) | AMOUNT APPROVED | ADJUSTMENT INCREASE | DECREASE | REVISED AMOUNT |
|---|---|---|---|---|---|
| A.1. | TOTAL STAFF SALARIES: | $ _____ | $ _____ | $ _____ | $ ___ - |
| A.2. | Total Staff Fringe Benefits (Indicate the ____% of salaries per itemized list on the backup) | $ _____ | $ _____ | $ _____ | $ ___ - |
| A.3. | Staff Travel (Itemize on backup) In-State | $ _____ | $ _____ | $ _____ | $ ___ - |
| | Out-of-State | $ _____ | $ _____ | $ _____ | $ ___ - |
| | **TOTAL TRAVEL** | $ ___ - | $ ___ - | $ ___ - | $ ___ - |
| A.4. | Facilities (Include rent, utilities, maint. for rental space and show cost per square ft. on backup) | $ _____ | $ _____ | $ _____ | $ ___ - |
| A.5. | Communications (telephone, internet,etc.) | $ _____ | $ _____ | $ _____ | $ ___ - |
| A.6. | Office Supplies (include postage, software, desktop supplies, etc.) | $ _____ | $ _____ | $ _____ | $ ___ - |
| A.7. | Equipment (itemize on backup) | $ _____ | $ _____ | $ _____ | $ ___ - |
| A.8. | Other: (Itemize on backup) | $ _____ | $ _____ | $ _____ | $ ___ - |
| A.9. | **TOTAL DIRECT COSTS (1-8)** | $ ___ - | $ ___ - | $ ___ - | $ ___ - |
| A.10. | **TOTAL INDIRECT COSTS** (Specify approved rate ___% and attach copy of cognizant agency approval) | $ _____ | $ _____ | $ _____ | $ ___ - |
| A.11. | **TOTAL ADMINISTRATION COSTS** | $ ___ - | ___ - | ___ - | ___ - |

EXHIBIT-14

**BUDGET**

Agreement/Project No.: 5G200003 / 5G201903

(Indicate as appropriate)

Program ___X___

Rapid Response _____

Other Cost Category _____

Modification No.: 1
(if applicable)

PLAINTIFF'S EXHIBIT
2 l o

| B. | Program Costs (Items 1-14) | AMOUNT APPROVED | INCREASE | DECREASE | REVISED AMOUNT |
|---|---|---|---|---|---|
| B.1. | **TOTAL SALARIES:** | $ 88,541.01 | $ 7,213.31 | $ 7,213.31 | $ 88,541.01 |
| B.2. | Total Staff Fringe Benefits (Indicate the ___% of salaries per itemized list on the backup) | $ 31,383.61 | $ 3,405.76 | $ 3,655.76 | $ 31,133.61 |
| B.3. | Staff Travel (Itemize on backup) | | | | |
| | In-State | 3,500.00 | 1,250.00 | - | 4,750.00 |
| | Out-of-State | 1,250.00 | - | 1,250.00 | - |
| | **TOTAL TRAVEL** | $ 4,750.00 | $ 1,250.00 | $ 1,250.00 | $ 4,750.00 |
| B.4. | Facilities (Include rent, utilities, maint. for rental space and show cost per square ft. on backup) | $ 8,916.25 | $ - | $ - | $ 8,916.25 |
| B.5. | Communications (telephone, internet,etc.) | $ 2,425.00 | $ 425.00 | $ 425.00 | $ 2,425.00 |
| B.6. | Office Supplies (include postage, software, desktop supplies, etc.) | $ 4,500.00 | $ - | $ - | $ 4,500.00 |
| B.7. | Books & Training/Teaching Aids | $ 1,500.00 | $ - | $ - | $ 1,500.00 |
| B.8. | Equipment (Itemize on backup) | $ | $ | $ | $ - |
| B.9. | Other: (Itemize on backup) | $ 32,385.18 | $ 1,250.00 | $ 1,000.00 | $ 32,635.18 |
| B.10. | Payment of ITA's | $ | $ | $ | $ |
| B.11. | On-the-Job Training (Only) | $ | $ | $ | $ |
| B.12. | Work Experience Wages | $ | $ | $ | $ |
| B.13. | Work Experience FICA | $ | $ | $ | $ |
| B.14. | TOTAL SUPPORTIVE SERVICES (Itemize on backup)) | $ | $ | $ | $ |
| B.15. | **TOTAL DIRECT COSTS** | $ 174,401.05 | $ 13,544.07 | $ 13,544.07 | $ 174,401.05 |
| B.16. | **TOTAL INDIRECT COSTS** | $ | $ | $ | $ - |
| B.17. | **TOTAL COSTS** | $ 174,401.05 | $ 13,544.07 | $ 13,544.07 | $ 174,401.05 |

WDD 6/00

EXHIBIT-15

**BUDGET BACKUP**

Agreement/Project No:  5G200003 / 5G201903
Modification No.: 1

COST CATEGORY: Administration _____
                Program Costs  X _____
                Rapid Response _____

PLAINTIFF'S EXHIBIT 27

| Line Item No:    B1 | AMOUNT APPROVED | ADJUSTMENT INCREASE | ADJUSTMENT DECREASE | REVISED AMOUNT |
|---|---|---|---|---|
| **Microenterprise Spec(2)** | | | | |
| 1,242.56X26X100%(Cassandra Cooper) | 32,306.70 | | - | 32,306.70 |
| 1,197.77X26X100%(Jackson) | 31,134.38 | | - | 31,134.38 |
| **Program Support** | | | | - |
| McKim (Admin) (2423.07X26X20%) | 12,599.96 | | 7,213.31 | 5,386.65 |
| McKim (Pr. Mgr.) (2423.07X26X20%) | 0.00 | 7,213.31 | | 7,213.31 |
| Jarrett (1923.070X26X25%) | 11,604.42 | | | 11,604.42 |
| Flowers (1923.07X26X25%) | 895.55 | | | 895.55 |
| **Total** | 88,541.01 | 7,213.31 | 7,213.31 | 88,541.01 |

| Line Item No:    B2 | AMOUNT APPROVED | ADJUSTMENT INCREASE | ADJUSTMENT DECREASE | REVISED AMOUNT |
|---|---|---|---|---|
| FICA(7.65%) | 6,773.39 | 490.35 | | 7,263.74 |
| Medicare | 1,283.84 | | 1,283.84 | - |
| Health Ins. Spec(Single 214.62MO, | 7,218.60 | | | 7,218.60 |
| Family 386.93per mo) | | | | |
| Health Ins. Support Personnel | 643.86 | - | 475.00 | 168.86 |
| SUI(1.05% of 8,000 ea person) | 363.78 | | - | 363.78 |
| Life Ins.-Micr. Ent Spec. | 425.00 | | - | 425.00 |
| Life Ins. Suppor Per | 175.00 | | | 175.00 |
| LTD Spec. | 370.00 | - | - | 370.00 |
| LTD Support | 150.00 | | | 150.00 |
| Retirement(7.50% of Salaries only) | 6,640.58 | | - | 6,640.58 |
| Workers Comp(@1.05%) | 929.68 | | - | 929.68 |
| **Leave** | | | | - |
| Cooper (100 hr @ 15.53per hr) | 1,553.00 | 1,850.00 | - | 3,403.00 |
| Jackson (60 hr. @ 14.96 per hr.) | 897.60 | 1,065.41 | - | 1,963.01 |
| **Leave Support Personnel** | | | | - |
| McKim(60hr@28.26) | 1,695.60 | - | | 1,695.60 |
| Jarrett(96hr@23.58) | 1,939.20 | | 1,675.52 | 263.68 |
| Flowers | 324.48 | - | 221.40 | 103.08 |
| **Total** | 31,383.61 | 3,405.76 | 3,655.76 | 31,133.61 |

| Line Item No:    B3 | AMOUNT APPROVED | ADJUSTMENT INCREASE | ADJUSTMENT DECREASE | REVISED AMOUNT |
|---|---|---|---|---|
| In-State Travel(Montgomery) | 3,500.00 | 1,250.00 | | 4,750.00 |
| Out-State Travel(Montgomery) | 1,250.00 | | 1,250.00 | - |
| | | | | - |
| **Total** | 4,750.00 | 1,250.00 | 1,250.00 | 4,750.00 |

EXHIBIT-16X

**Budget Backup**

Agreement/Project No: 5G200003 / 5G201903

Modification No.: 1

PLAINTIFF'S EXHIBIT 28

**COST CATEGORY:** Administration _____
Program Costs  X _____
Rapid Response _____

| Line Item No: | B4 | AMOUNT APPROVED | ADJUSTMENT INCREASE | DECREASE | REVISED AMOUNT |
|---|---|---|---|---|---|
| Facilities | | | | | - |
| 1019Sq ft @ 8.75(montgomery) | | 8,916.25 | | | 8,916.25 |
| | | - | | | - |
| **Total** | | **8,916.25** | **-** | | **8,916.25** |

| Line Item No: | B5 | AMOUNT APPROVED | ADJUSTMENT INCREASE | DECREASE | REVISED AMOUNT |
|---|---|---|---|---|---|
| Telephone (Montgomery) | | 1,000.00 | 425.00 | | 1,425.00 |
| Server connection to printer | | 1,000.00 | | | 1,000.00 |
| Internet (Montgomery) | | 425.00 | | 425.00 | - |
| | | | | | - |
| **Total** | | **2,425.00** | **425.00** | **425.00** | **2,425.00** |

| Line Item No: | B6 | AMOUNT APPROVED | ADJUSTMENT INCREASE | DECREASE | REVISED AMOUNT |
|---|---|---|---|---|---|
| Office Supplies(Montgomery) | | 2,500.00 | - | | 2,500.00 |
| Copying | | 500.00 | | | 500.00 |
| Postage(Montgomery) | | 1,500.00 | | | 1,500.00 |
| | | | | | - |
| **Totals** | | **4,500.00** | **-** | **-** | **4,500.00** |

| Line Item No: | B7 | AMOUNT APPROVED | ADJUSTMENT INCREASE | DECREASE | REVISED AMOUNT |
|---|---|---|---|---|---|
| Books, Software, Training & Supplies | | 1,500.00 | - | | 1,500.00 |
| | | | | | - |
| **Total** | | **1,500.00** | **-** | **-** | **1,500.00** |

| Line Item No: | B9 | AMOUNT APPROVED | ADJUSTMENT INCREASE | DECREASE | REVISED AMOUNT |
|---|---|---|---|---|---|
| Copier Service and Repairs | | 2,000.00 | | | 2,000.00 |
| Audit(Yellow Book and Single) | | 3,385.18 | | - | 3,385.18 |
| Network Support | | 850.00 | 500.00 | | 1,350.00 |
| Evaluations 30@500.00 | | 15,000.00 | - | | 15,000.00 |
| Area Meeting Expense | | 500.00 | - | - | 500.00 |
| Professional Membership Dues | | 250.00 | 500.00 | | 750.00 |
| Professional Service Fees | | - | | | - |
| Staff Development | | 1,000.00 | - | 1,000.00 | - |
| Business Insurance | | 1,400.00 | | | 1,400.00 |
| Program Evaluation Assessment | | 8,000.00 | | | 8,000.00 |
| Base/Usage Fees - Cafeteria Plan | | - | 250.00 | | 250.00 |
| **Total** | | **32,385.18** | **1,250.00** | **1,000.00** | **32,635.18** |

EXHIBIT-16

**BUDGET SECTION**
**COVER SHEET**

SUBRECIPIENT'S NAME AND ADDRESS:

**Easter Seals Central Alabama**
**2125 East South Blvd**
**Montgomery, Alabama 36116**

NAME/ADDRESS OF FISCAL AGENT (IF DIFFERENT)

AGREEMENT NO:  5G200003 / 5G201903

MODIFICATION NO:                1
(if applicable)
FEDERAL ID NO:

BEGINNING DATE:   **9/30/2005**

ENDING DATE:   **3/31/2007**

MOD. EFFECTIVE DATE:   **9/1/2006**

PLAINTIFF'S
EXHIBIT
**29**

| | Amount Approved | Adjustment | | Revised Amount |
|---|---|---|---|---|
| | | Increase | Decrease | |
| Administration | $ | | | $          - |
| Program | $   174,401.05 | 8,435.21 | 8,435.21 | $   174,401.05 |
| Rapid Response | $ | | | $          - |
| Other: | $ | | | $          - |
| Other: | $ | | | $          - |
| Other: | $ | | | $          - |
| Other: | $ | | | $          - |
| **TOTAL CONTRACT** | **$   174,401.05** | **$   8,435.21** | **$   8,435.21** | **$   174,401.05** |

E-1
EXHIBIT-17

# SUBRECIPIENT GRANT AGREEMENT

STATE OF ALABAMA
DEPARTMENT OF ECONOMIC AND COMMUNITY AFFAIRS
Workforce Development Division
CFDA 17.720

| | |
|---|---|
| Title & Funding | Customized Employment |
| Agreement Number: | 5G200003 |
| Modification No. | 3 |

## SIGNATURE SHEET

This modification applies to and is hereby incorporated in the agreement entered into by the Alabama Department of Economic and Community Affairs, Workforce Development Division, as the Service Deliverer for the Workforce Investment Act, known as the GRANTOR, and

**Easter Seals Central Alabama**
**2125 East South Boulevard**
**Montgomery, Alabama 36116**
(Name and address of Subrecipient)

hereinafter known as SUBRECIPIENT.

PLAINTIFF'S EXHIBIT 30    FENDAG 000-001-6689

The purpose of this modification is to incorporate the following numbered page changes:

| | | | | |
|---|---|---|---|---|
| A. Signature Sheet | Page Number | A-1 | through Page Number | A-1 |
| B. General Provisions | Page Number | B-1 | through Page Number | |
| C. Performance Standards | Page Number | C-1 | through Page Number | |
| D. Special Provisions | Page Number | D-1 | through Page Number | |
| E. Budget Section | Page Number | E-1 | through Page Number | E-1 |

The effect of this modification is to:   adjust the various line items to cover routine expenses associated with the operation of this program. The total amount remains the same.

The foregoing, along with previous serially numbered modifications, constitute(s) the only authorized change(s) in the aforementioned agreement to date. The GRANTOR and SUBRECIPIENT hereby agree that the purpose, performance, and consideration are as expressed in the agreement as now modified and that no element of this modification shall be retroactive unless expressly stated. This action changes the value of the original agreement of  **9/30/2005**  (date)  as modified and adds  *****  or subtracts  *****
Total payment permitted under this agreement shall not exceed   $ 174,401.05 .
This agreement ends  **3/31/2007**  (date).

In witness whereof the parties hereto executed this modification to the latest date appearing below.

**Workforce Development Division Statement:**
This contract has been reviewed for and is approved as to content.
By: _Steve Walkley_ , Division Director
_JZZ_ Preparer's Initials
**Steve Walkley**
(Typed Name)
Date: _3/12/07_

**Attorney's Statement:**
This contract has been reviewed for legal form and complies with all applicable laws, rules, and regulations of the State of Alabama governing these matters.
By: _Edward E. Davis_
**Edward E. Davis**
(Typed Name)
Date: _3/14/07_

**SUBRECIPIENT:**
Certification
In signing and thereby validating this agreement, I also certify that I am authorized by the governing body of the SUBRECIPIENT to legally bind that body in my capacity as its signatory official.
By: _Debbie Lynn_
(SUBRECIPIENT'S Signatory Official)
**Debbie Lynn**
(Typed Name)
Title: _Administrator_
Date: _3/23/07_

**GRANTOR:**
By: _____ , Director
Alabama Department of Economic and Community Affairs
**Bill Johnson**
(Typed name)
Date: _____
By: _____ , Director
Office of Workforce Development
**Tim Alford**
Date: _3-15-07_

A-1

EXHIBIT-18

5G2

## AGREEMENT TRANSMITTAL FORM

PLAINTIFF'S
EXHIBIT
_81_

t # _____ 5G200003 _____ Mod # _____ 3 _____

### PLEASE COMPLETE THIS FORM AND SUBMIT WITH CONTRACT FOR SIGNATURES:

ent's Legal Name     Easter Seals Central Alabama

ic Location - City/Town/Community: _____ Montgomery _____ County _____ Montgomery _____

### MAILING ADDRESSES FOR:

Correspondence:                                              Payments(if different):

Easter Seals Central Alabama                          _____

. 2125 East South Boulevard                           _____

_____                          _____

e, and Zip     Montgomery, Alabama 36116             _____

e No.     (334) 288-0240                              _____

f Agreement -Cash     $174,401.05                     In-Kind     _____

nt/Subgrant Performance Period     9/30/05 to 3/31/07

y (check one): 100% State Funds _____     Federal Grant     X

ED BY FEDERAL GRANT, PLEASE COMPLETE:

Federal Grant Name/Number     Customized Employment Grant / E-9-4-2-0096

Percentage State Funds required to Match Federal Grant _____     0%

Federal Grant Budget Period     9/30/02 - 3/31/07

certify that this agreement/grant amount does not make the total obligations exceed the total amount of funds
for this program period.

_____                 3/12/07
Certifying Official                              Date

                                                 _____
                                                 SIGNATURE OF DIVISION DIRECTOR

                                                 _____
                                                 Date

E: This modification adjusts the various line items in order to cover the routine expenses associated with

tion of the program. The total amount of the contract remains the same.

# EXHIBIT-19

**BUDGET SECTION**
**COVER SHEET**

SUBRECIPIENT'S NAME AND ADDRESS:
Easter Seals Central Alabama
2125 East South Blvd
Montgomery, Alabama 36116

AGREEMENT NO:  5G200003 / 5G201903

MODIFICATION NO:              3
(if applicable)
FEDERAL ID NO:

PLAINTIFF'S
EXHIBIT
32
PENGAD 800-631-6989

NAME/ADDRESS OF FISCAL AGENT (IF DIFFERENT)

BEGINNING DATE:    9/30/2005

ENDING DATE:    3/31/2007

MOD. EFFECTIVE DATE:    10/1/2006

| | Amount Approved | Adjustment Increase | Adjustment Decrease | Revised Amount |
|---|---|---|---|---|
| Administration | $ | | | $ - |
| Program | $  174,401.05 | 19,621.91 | 19,621.91 | $  174,401.05 |
| Rapid Response | $ | | | $ - |
| Other: | $ | | | $ - |
| Other: | $ | | | $ - |
| Other: | $ | | | $ - |
| Other: | $ | | | $ - |
| **TOTAL CONTRACT** | $  174,401.05 | $  19,621.91 | $  19,621.91 | $  174,401.05 |

E-1

EXHIBIT-20

**Easter Seals Central Alabama**
**2125 East South Blvd**
**Montgomery, Alabama 36116**

| | |
|---|---|
| Federal ID No: | |
| Contact Person: | Christy B. Jarrett |
| Telephone No.: | 334-288-0240 |
| Agreement Period: | 9/30/2005 - 3/31/2007 |
| Date: | 10/1/2006 |
| County Code(s) for this activity | 101 |
| House District(s) for this activity | 73 |
| Senate District(s) for this activity | 25 |

PLAINTIFF'S
EXHIBIT
33

| A. | Administration (Items 1-9) | AMOUNT APPROVED | ADJUSTMENT INCREASE | DECREASE | REVISED AMOUNT |
|---|---|---|---|---|---|
| A.1. | TOTAL STAFF SALARIES: | $ | $ | $ | $ - |
| A.2. | Total Staff Fringe Benefits (Indicate the ____% of salaries per itemized list on the backup) | $ | $ | $ | $ - |
| A.3. | Staff Travel (Itemize on backup) In-State | $ | $ | $ | $ - |
| | Out-of-State | $ | $ | $ | $ - |
| | TOTAL TRAVEL | $ - | $ - | $ - | $ - |
| A.4. | Facilities (Include rent, utilities, maint. for rental space and show cost per square ft. on backup) | $ | $ | $ | $ - |
| A.5. | Communications (telephone, internet,etc.) | $ | $ | $ | $ - |
| A.6. | Office Supplies (include postage, software, desktop supplies, etc.) | $ | $ | $ | $ - |
| A.7. | Equipment (Itemize on backup) | $ | $ | $ | $ - |
| A.8. | Other: (Itemize on backup) | $ | $ | $ | $ - |
| A.9. | TOTAL DIRECT COSTS (1-8) | $ - | $ - | $ - | $ - |
| A.10. | TOTAL INDIRECT COSTS (Specify approved rate ___% and attach copy of cognizant agency approval) | $ | $ | $ | $ |
| A.11. | TOTAL ADMINISTRATION COSTS | $ - | - | - | - |

WDD 6/00

EXHIBIT-21

BUDGET                                    Agreement/Project No.: 5G200003 / 5G201903

(Indicate as appropriate)                 Modification No.: _____ 3
          Program ___X___        (if applicable)
       Rapid Response _____
       Other Cost Category _____

PLAINTIFF'S EXHIBIT 34

| B. | Program Costs (Items 1-14) | AMOUNT APPROVED | INCREASE | DECREASE | REVISED AMOUNT |
|---|---|---|---|---|---|
| B.1. | TOTAL SALARIES: | $ 88,163.33 | $ 484.90 | $ 13,910.50 | $ 74,737.73 |
| B.2. | Total Staff Fringe Benefits (Indicate the ____% of salaries per itemized list on the backup) | $ 31,133.61 | $ 1,631.41 | $ 974.41 | $ 31,790.61 |
| B.3. | Staff Travel (Itemize on backup) | | | | |
| | In-State | 5,250.00 | 1,500.00 | - | 6,750.00 |
| | Out-of-State | - | - | - | - |
| | TOTAL TRAVEL | $ 5,250.00 | $ 1,500.00 | $ - | $ 6,750.00 |
| B.4. | Facilities (Include rent, utilities, maint. for rental space and show cost per square ft. on backup) | $ 11,843.93 | $ 500.00 | $ - | $ 12,343.93 |
| B.5. | Communications (telephone, internet, etc.) | $ 2,425.00 | $ 600.00 | $ 1,000.00 | $ 2,025.00 |
| B.6. | Office Supplies (include postage, software, desktop supplies, etc.) | $ 4,500.00 | $ 1,250.00 | $ 250.00 | $ 5,500.00 |
| B.7. | Books & Training/Teaching Aids | $ - | $ - | $ - | $ - |
| B.8. | Equipment (itemize on backup) | $ | $ | $ | $ |
| B.9. | Other: (Itemize on backup) | $ 31,085.18 | $ 13,655.60 | $ 3,487.00 | $ 41,253.78 |
| B.10. | Payment of ITA's | $ | $ | $ | $ |
| B.11. | On-the-Job Training (Only) | $ | $ | $ | $ |
| B.12. | Work Experience Wages | $ | $ | $ | $ |
| B.13. | Work Experience FICA | $ | $ | $ | $ |
| B.14. | TOTAL SUPPORTIVE SERVICES (Itemize on backup)) | $ | $ | $ | $ |
| B.15. | TOTAL DIRECT COSTS | $ 174,401.05 | $ 19,621.91 | $ 19,621.91 | $ 174,401.05 |
| B.16. | TOTAL INDIRECT COSTS | $ | $ | $ | $ - |
| B.17. | TOTAL COSTS | $ 174,401.05 | $ 19,621.91 | $ 19,621.91 | $ 174,401.05 |

WDD 6/00

EXHIBIT-22

**BUDGET BACKUP**

PLAINTIFF'S EXHIBIT 35

Agreement/Project No: 5G200003 / 5G201903

Modification No.: 3

COST CATEGORY: Administration
Program Costs    X
Rapid Response

| Line Item No: B1 | AMOUNT APPROVED | ADJUSTMENT INCREASE | ADJUSTMENT DECREASE | REVISED AMOUNT |
|---|---|---|---|---|
| Microenterprise Spec(2) | | | | |
| 1,242.56X26X100%(Cassandra Cooper) | 28,071.03 | 484.90 | | 28,555.93 |
| 1,197.77X26X100%(Jackson) | 24,463.74 | | | 24,463.74 |
| 1242.56*100% (Bill Haynes) | 12,425.60 | | 12,425.60 | |
| **Program Support** | | | | |
| McKim (Admin) (2423.07X16X20%) | 5,386.65 | | - | 5,386.65 |
| McKim (Prog. Mgr) (2423.07X10X20%) | 5,316.34 | | | 5,316.34 |
| Jarrett (1923.070X26X25%) | 11,604.42 | | 1,484.90 | 10,119.52 |
| Flowers (1923.07X26X25%) | 895.55 | | | 895.55 |
| **Total** | 88,163.33 | 484.90 | 13,910.50 | 74,737.73 |
| Line Item No: B2 | AMOUNT APPROVED | INCREASE | DECREASE | REVISED AMOUNT |
| FICA(7.65%) | 7,263.74 | | 250.00 | 7,013.74 |
| Medicare | - | | | - |
| Health Ins. Spec(Single 214.62MO, | 7,218.60 | | | 7,218.60 |
| Family 386.93per mo) | | | | |
| Health Ins. Support Personnel | 168.86 | - | | 168.86 |
| SUI(1.05% of 8,000 ea person) | 363.78 | | - | 363.78 |
| Life Ins.-Micr. Ent Spec. | 425.00 | | - | 425.00 |
| Life Ins. Suppor Per | 175.00 | | | 175.00 |
| LTD Spec. | 370.00 | - | - | 370.00 |
| LTD Support | 150.00 | | | 150.00 |
| Retirement(7.50% of Salaries only) | 6,640.58 | | - | 6,640.58 |
| Workers Comp(@1.05%) | 929.68 | | - | 929.68 |
| **Leave** | | | | - |
| Cooper (100 hr @ 15.53per hr) | 3,403.00 | 18.50 | | 3,421.50 |
| Jackson (60 hr. @ 14.96 per hr.) | 1,963.01 | 723.91 | | 2,686.92 |
| **Leave Support Personnel** | | | | - |
| McKim(60hr@28.26) | 1,695.60 | - | 724.41 | 971.19 |
| Jarrett(96hr@23.58) | 263.68 | | | 263.68 |
| Flowers | 103.08 | 889.00 | | 992.08 |
| **Total** | 31,133.61 | 1,631.41 | 974.41 | 31,790.61 |
| Line Item No: B3 | AMOUNT APPROVED | INCREASE | DECREASE | REVISED AMOUNT |
| In-State Travel(Montgomery) | 5,250.00 | 1,500.00 | | 6,750.00 |
| Out-State Travel(Montgomery) | - | | | - |
| **Total** | 5,250.00 | 1,500.00 | - | 6,750.00 |

EXHIBIT-23

**Budget Backup**



PLAINTIFF'S
EXHIBIT
36

Agreement/Project No:  5G200003 / 5G201903
Modification No.:  3

**COST CATEGORY:** Administration
Program Costs  X
Rapid Response

| Line Item No:  B4 | AMOUNT APPROVED | ADJUSTMENT INCREASE | DECREASE | REVISED AMOUNT |
|---|---|---|---|---|
| Facilities | | | | |
| 1019Sq ft @ 8.75(montgomery) | 11,843.93 | 500.00 | | 12,343.93 |
| | - | | | - |
| **Total** | **11,843.93** | **500.00** | | **12,343.93** |
| Line Item No:  B5 | AMOUNT APPROVED | ADJUSTMENT INCREASE | DECREASE | REVISED AMOUNT |
| Telephone (Montgomery) | 1,425.00 | 450.00 | | 1,875.00 |
| Server connection to printer | 1,000.00 | | 1,000.00 | - |
| Internet (Montgomery) | - | | | - |
| Telephone (Bill Haynes) | | 150.00 | | 150.00 |
| **Total** | **2,425.00** | **600.00** | **1,000.00** | **2,025.00** |
| Line Item No:  B6 | AMOUNT APPROVED | ADJUSTMENT INCREASE | DECREASE | REVISED AMOUNT |
| Office Supplies(Montgomery) | 2,500.00 | 500.00 | | 3,000.00 |
| Copying | 500.00 | 750.00 | | 1,250.00 |
| Postage(Montgomery) | 1,500.00 | | 250.00 | 1,250.00 |
| | | | | - |
| **Totals** | **4,500.00** | **1,250.00** | **250.00** | **5,500.00** |
| Line Item No:  B7 | AMOUNT APPROVED | ADJUSTMENT INCREASE | DECREASE | REVISED AMOUNT |
| Books, Software, Training & Supplies | - | - | | - |
| | | | | - |
| **Total** | **-** | **-** | **-** | **-** |
| Line Item No:  B9 | AMOUNT APPROVED | ADJUSTMENT INCREASE | DECREASE | REVISED AMOUNT |
| Copier Service and Repairs | 2,000.00 | 100.00 | | 2,100.00 |
| Audit(Yellow Book and Single) | 3,085.18 | 50.00 | | 3,135.18 |
| Network Support | 1,765.00 | 1,250.00 | | 3,015.00 |
| Evaluations 30@500.00 | 13,000.00 | - | 3,037.00 | 9,963.00 |
| Area Meeting Expense | 800.00 | | 650.00 | 150.00 |
| Professional Membership Dues | 485.00 | 200.00 | | 685.00 |
| Base/Usage Fees - Cafeteria Plan | 250.00 | 20.00 | | 270.00 |
| Staff Development | - | 200.00 | | 200.00 |
| Business Insurance | 1,700.00 | 400.00 | | 2,100.00 |
| Program Evaluation Assessment | 8,000.00 | | | 8,000.00 |
| Contract Labor - William D. Haynes | | 11,635.60 | | 11,635.60 |
| **Total** | **31,085.18** | **13,855.60** | **3,687.00** | **41,253.78** |

EXHIBIT-24

Emily C. Jackson                          5
    -0814



### DECISION

Based on the application filed on November 13, 2000, the claimant is entitled to a period of disability commencing October 18, 1999, and to disability insurance benefits under section 216(i) and 223 of the Social Security Act, and the disability has continued at least through the date of this decision.

Frank M. Klinger
Administrative Law Judge

0 7 NOV 2002

_____
Date

/3



United States
# Office of
## Personnel Management    Washington, DC 20415-0001

February 24, 2001



CSA:       03
SSN:      ·0814

Emily Jackson
605 Wesley Drive
Montgomery, AL  36111

Dear Ms. Jackson:

Your application for disability retirement has been approved.

According to information we have received from your agency, you have not been
separated from Government service.  Therefore, we are notifying your agency of the
approval and asking them to separate you.  We are asking them to give us your last day of
pay.  Payment of annuity cannot start until after your last day of pay.  If you have sick
leave remaining, the last day of pay will be the day your sick leave is exhausted.  We are
asking your agency to send us your final separation records so we can establish your final
annuity rate.

We cannot start your annuity payments until we receive confirmation that you have
applied for Social Security disability benefits.  If you have not already done so, you must
now apply for them.  Please send us a copy of the receipt (or notice of allowance or
disallowance) which you receive from the Social Security Administration after you file
the application.

If the Social Security Administration awards you monthly benefits, you must also notify
OPM of the amount of the monthly Social Security benefit and effective date of payment
immediately upon becoming eligible (a photocopy of the award notice or a statement
showing the monthly Social Security benefit and effective date when they determined
your eligibility began would be helpful).  OPM will be conducting periodic checks
against Social Security records to discover unreported awards.  Notification of Social
Security benefits, and the confirmation that you have applied to Social Security should be
sent to:

Office of Personnel Management
Federal Employees Retirement System
Boyers, PA  16017



Alabama Department of
# REHABILITATION SERVICES



**Bob Riley**
GOVERNOR



PLAINTIFF'S
EXHIBIT
39

4/15/04

**Steve Shivers**
COMMISSIONER

re: Ms. Emily Jackson
ssn : 0814

To Whom It May Concern,

This letter is to verify that Ms. Emily Jackson has a disability and is eligible to receive services through the Alabama Department of Rehabilitation Services.

After reviewing her information and meeting with her, it has been determined that, eventhough having a disability, she should be very capable of performing and excelling in her chosen area of employment.

Any consideration and / or assistance that can be extended to Ms. Jackson will be greatly appreciated.

Sincerely,

Don Stephens, M.Ed., CRC
Vocational Rehabilitation Counselor
Alabama Department of Rehabilitation Services

---

## PROVIDING SERVICES TO ALABAMIANS WITH DISABILITIES

2127 East South Boulevard ■ Montgomery, AL 36116-2456 ■ 334-288-0220 ■ 1-800-441-7578
■ Fax: 334-281-1388 ■ www.rehab.state.al.us



MAXIMUS Ticket To Work
PO Box 25105
Alexandria, VA 22313-5105
www.yourtickettowork.com
TDD Toll Free: 866-TDD-2-Work

EMILY C JACKSON
P O BOX 250162
MONTGOMERY, AL 36125-0162

March 22, 2004

Dear EMILY C JACKSON,

     Thank you for requesting information on Employment Networks
and State Vocational Rehabilitation Agencies which have agreed to
serve your area. Enclosed you will find the listing of all the
Employment Networks and State Vocational Rehabilitation Agencies
that offer services in your area. Some of the organizations
serving your area may not be physically located in your area.
Please contact these organizations directly to determine which one
would best suit your particular employment goals. If you would
like additional information or require further assistance, please
call us Monday - Friday, 8:00am - 10:00pm EST. Our goal is to
support your return-to-work efforts.

Sincerely,

MARTHA
Employment Network Coordinator
Phone: (866) 968-7842 Ext. 6659
Fax: (703) 683-3289

EMILY C JACKSON
P O BOX 250162
MONTGOMERY, AL 36125-0162

Alabama Department of Rehabilitation Services

## Individualized Plan for Employment

**Participant:** Jackson, Emily C.                                    **SSN:** 0814

**Caseload:** 42-      Stephens, Don

### 1. General Information

| | |
|---|---|
| Plan Number: | 1 |
| Signature/Start Date: | 07/21/2004 |
| Expected Plan End Date: | 07/01/2005 |
| Plan Type: | Employment |
| Employment Goal: | Marketing, Advertising, And Public Relations Managers |

PLAINTIFF'S
EXHIBIT
41

#### Reason(s) for Selecting Employment Goal

I explored options and feel this is a good choice.

I have done this type of work before.

I have received training in this area.

It matches my interests, abilities and strengths.

The job outlook for this type of work is good.

### 2. Planned Services

| # | Description | Start Date | End Date/Event |
|---|---|---|---|
| 1 | Placement/ Job Development Services | 07/21/2004 | 01/21/2005 |

My Chosen Provider: ESRC, AVRS

Source of Comparable Benefits: Employment Security Office

#### Other Comments

None

| # | Description | Start Date | End Date/Event |
|---|---|---|---|
| 2 | Guidance & Counseling | 07/21/2004 | 07/21/2005 |

My Chosen Provider: AVRS, ESRC

Source of Comparable Benefits: None

#### Other Comments

None

### 3. Participant Responsibilities

[x]  I understand that it is my responsibility to complete this plan and I will inform my counselor of changes or problems affecting my ability to do so.

[x]  I will not quit my program or make any changes without contacting my counselor first.

[x]  I will attend all scheduled meetings and appointments.

Alabama Department of Rehabilitation Services

## Individualized Plan for Employment

**Participant:** Jackson, Emily C.                                    **SSN:** ____ 0814

**Caseload: 42-** ____ Stephens, Don



PLAINTIFF'S
EXHIBIT
42

[x]  I understand the importance of attendance and punctuality.

[x]  I will report any address or telephone number change to my counselor immediately.

[x]  I have a responsibility to return any equipment purchased for me by the agency if I no longer use it as planned.

[x]  I will consistently look for employment.

[x]  I will cooperate with all job placement efforts.

[x]  I will follow my treatment program.

[x]  I will notify counselor upon getting a job.

[x]  I will take my medications as prescribed.

[x]  I will use support services/accomodations.

## 4. Plan Documentation

### A. Criteria for evaluation progress towards my (participant) employment goal:

MONTHLY REPORTS FROM FACILITY STAFF INDICATING MS. JACKSON'S COOPERATION AND FULL PARTICIPATION IN JOB SEARCH ACTIVITIES.

EVENTUL SUCCESSFUL PLACEMENT REPORT AND 90 DAYS SUSTAINED EMPLOYMENT.

### B. Other Comments:

## 5. Terms and Conditions

### Post-Employment Services:

I have been informed of the availability of post-employment services. An assessment of my need for post-employment has been made. It is expected that I (will) (will not) need post-employment services.

### Statement of Mutual Understanding:

This Rehabilitation Plan has been developed with my full participation and is based on the following statements which I agree to and understand:

1.  When circumstances beyond the control of Vocational Rehabilitation occur, this plan is subject to change.

2.  I understand and accept my responsibilities to participate in the plan and make reasonable efforts on my own behalf to carry out the conditions of my plan. If I fail to carry out my responsibilities, or otherwise it appears I no longer have a reasonable likelihood of achieving a vocational goal, I will be declared ineligible for the services called for in my plan.

3.  I will be consulted if it becomes necessary to take action changing my status from eligible to ineligible.

4.  Services in this plan are provided without regard to sex, race, creed, disability, color, or national origin according to Title VI of the Civil Rights Act, and Sect. 504, Rehab Act of 1973 as amended in 1998 and the Americans with Disability Act of 1990.

---

Alabama Department of Rehabilitation Services

## Individualized Plan for Employment

**Participant:** Jackson, Emily C.                                          **SSN:**          0814

**Caseload:** 42-      Stephens, Don

5. It is understood that comparable benefits available to me through other agencies and private resources will be utilized toward my rehabilitation.

6. In case of a liability suit, which results in a favorable settlement for me, I agree to reimburse the State Rehabilitation Agency for services that have been provided under this plan.

7. I understand all personal information relating to me will be treated confidentially and will not be shared without my consent, except to rehabilitation professionals and providers who are part of my rehabilitation plan; when required by Federal or State Law, Judicial Order or when necessary to protect me or someone else's safety.

8. If I am dissatisfied with my action related to the delivery or denial of rehabilitation services, I understand I have the opportunity:

   a. To request an informal administrative review within ten (10) calendar days  the action in question through the Unit Supervisor, at this address:

      Craig Akin, 2127 East South Blvd, Montgomery, AL 36116-2456, (334) 613-2340

   b. If dissatisfied with the decision of the informal administrative review, I may request a formal hearing within fourteen (14) days of the receipt of the decision of the administrative review team by submitting a written request for a hearing, addressed to the Commissioner of the Department of Rehabilitation Services, P.O. Box 11586, Montgomery, AL 36111-0586.

   c. If I choose to forego the right to request an informal administrative review, I may request a formal hearing by submitting a written request for hearing, addressed to the Commissioner, within fourteen (14) days of the action related to the dissatisfaction of delivery or denial of rehabilitation services.

9. I understand, when appropriate, services are available through the Client Assistance Program to facilitate the rehabilitation process and improve communication between the AVR Agency and me; I may contact the Client Assistance Program Representative by calling Toll Free 1-800-228-3231 (Voice/TDD).

10. All rehabilitation services will be provided in the least restrictive and most integrated settings compatible with my interests and abilities.

11. All services are provided by AVRS-approved vendors. All services must be pre-approved and pre-authorized by the AVR counselor. A written authorization for services must be made by the counselor before or at the same time as the purchase of services. Any service I receive without prior approval of the AVR counselor will be my responsibility.

12. I understand that if I am receiving SSI or Social Security Disability, signing my Individual Plan for Employment assigns my ticket to Vocational Rehabilitation Services. _____ (Client's Initials)

Alabama Department of Rehabilitation Services

## Individualized Plan for Employment

**Participant:** Jackson, Emily C.                                    **SSN:**        -0814

**Caseload:** 42-        Stephens, Don

I understand this plan will be reviewed, evaluated and may be changed at any appropriate time. Changes in this plan will be made with my involvement and participation. At the latest, this plan will be reviewed on 7/7005 .

_____          7/21/04          _____
COUNSELOR'S SIGNATURE                    DATE               CLIENT'S SIGNATURE


                                                           _____
                                                           CLIENT'S REPRESENTATIVE

* * * * *

PLAINTIFF'S
EXHIBIT
44

THIS IS NOT A BILL



Federal Employee Program
www.fepblue.org

BLUE CROSS AND BLUE SHIELD OF ALABAMA
P. O. BOX 10401
BIRMINGHAM, AL  35202-0401

PLAINTIFF'S
EXHIBIT
45
PENGAD 800-631-6989

EMILY C JACKSON

MONTGOMERY AL 36111-

```
| _____ |
|       EXPLANATION OF BENEFITS AT A GLANCE             |
| _____|
|                                                       |
|We Sent Check To:   AMERICAN BEHAVIORAL BENEFITS       | ID Number:
|                                                       | Claim Number:            2575
|Patient Name:       EMILY JACKSON                      | Claim Paid On:      10/16/2007
|                                                       | Claim Received On:  10/12/2007
|Dates of Service:   09/17/2007 - 09/17/2007            | Claim Processed On: 10/16/2007
|                                                       |
|You Owe the Provider:     $0.00                        |
| _____|
```

Provider: STUTTS                                    Dates of Service: 09/17/2007 - 09/17/2007
Type:     PREFERRED PROVIDER

| Type of Service | Submitted Charges | Plan Allowance | Remark Codes | Deduct | Coinsurance Or Copay | Medicare/ Other Ins. | What We Paid | You Owe the Provider |
|---|---|---|---|---|---|---|---|---|
| THERAPEUTIC CARE | 195.00 | 137.31 | 303 | | | 109.85 | 27.46 | |
| | | | 310 | | | | | |
| TOTALS: | $195.00 | $137.31 | | $0.00 | $0.00 | $109.85 | $27.46 | $0.00 |

### EXPLANATION OF REMARK CODES

303--YOUR HEALTH CARE PROVIDER HAS AGREED TO ACCEPT ASSIGNMENT OF MEDICARE
    BENEFITS. THIS MEANS YOU ARE NOT RESPONSIBLE FOR THE DIFFERENCE BETWEEN THE
    MEDICARE - APPROVED AMOUNT AND THE ACTUAL CHARGE.

310--YOU ARE ENROLLED IN MEDICARE, WHICH IS PRIMARY.  THIS MEANS MEDICARE PROVIDES
    BENEFITS FIRST AND YOUR SERVICE BENEFIT PLAN PAYS SECOND.  WE HAVE PAID 100%
    OF THE ALLOWABLE CHARGES ON THIS CLAIM AFTER MEDICARE'S PAYMENT. NO
    DEDUCTIBLE OR COINSURANCE/COPAYMENT APPLIES.

Continued On Next Page

OON0020-EMS  (Rev. 1/03)



**THIS IS NOT A BILL**

BlueCross
BlueShield
Federal Employee Program
www.fepblue.org

BLUE CROSS AND BLUE SHIELD OF ALABAMA
P. O. BOX 10401
BIRMINGHAM, AL  35202-0401

PLAINTIFF'S
EXHIBIT
46
PENGAD 800-631-6989

EMILY C JACKSON

MONTGOMERY AL 36111-2519

---

## EXPLANATION OF BENEFITS AT A GLANCE

| | |
|---|---|
| We Sent Check To:   AMERICAN BEHAVIORAL BENEFITS | ID Number: |
| | Claim Number:              _ 1780 |
| Patient Name:       EMILY JACKSON | Claim Paid On:      10/27/2007 |
| | Claim Received On:  10/24/2007 |
| Dates of Service:   09/24/2007 - 09/24/2007 | Claim Processed On: 10/27/2007 |
| You Owe the Provider:     $0.00 | |

---

Provider: STUTTS                                      Dates of Service: 09/24/2007 - 09/24/2007
Type:     PREFERRED PROVIDER

| Type of Service | Submitted Charges | Plan Allowance | Remark Codes | Deduct | Coinsurance Or Copay | Medicare/ Other Ins. | What We Paid | You Owe the Provider |
|---|---|---|---|---|---|---|---|---|
| THERAPEUTIC CARE | 160.00 | 160.00 | 310 | | | 128.00 | 32.00 | |
| TOTALS: | $160.00 | $160.00 | | $0.00 | $0.00 | $128.00 | $32.00 | $0.00 |

### EXPLANATION OF REMARK CODES

310--YOU ARE ENROLLED IN MEDICARE, WHICH IS PRIMARY.  THIS MEANS MEDICARE PROVIDES
BENEFITS FIRST AND YOUR SERVICE BENEFIT PLAN PAYS SECOND.  WE HAVE PAID 100%
OF THE ALLOWABLE CHARGES ON THIS CLAIM AFTER MEDICARE'S PAYMENT.  NO
DEDUCTIBLE OR COINSURANCE/COPAYMENT APPLIES.

Continued On Next Page

OON0020-1S  (Rev. 1/03)

THIS IS NOT A BILL

**BlueShield**

Federal Employee Program
www.fepblue.org

BLUE CROSS AND BLUE SHIELD OF ALABAMA
P. O. BOX 10401
BIRMINGHAM, AL  35202-0401



PLAINTIFF'S
EXHIBIT
47

EMILY C JACKSON

MONTGOMERY AL 36111-

| EXPLANATION OF BENEFITS AT A GLANCE | |
|---|---|
| We Sent Check To:    SOUTHERN ORTHOPAEDIC SURGEONS LLC | ID Number: |
| | Claim Number:                              8101 |
| Patient Name:        EMILY JACKSON | Claim Paid On:        10/31/2007 |
| | Claim Received On:    10/29/2007 |
| Dates of Service:    10/10/2007 - 10/10/2007 | Claim Processed On: 10/31/2007 |
| You Owe the Provider:        $0.00 | |

Provider: HESTER                                                    Dates of Service: 10/10/2007 - 10/10/2007
Type:    PREFERRED PROVIDER

| Type of Service | Submitted Charges | Plan Allowance | Remark Codes | Deduct | Coinsurance Or Copay | Medicare/ Other Ins. | What We Paid | You Owe the Provider |
|---|---|---|---|---|---|---|---|---|
| OFFICE VISIT | 55.00 | 33.33 | 303 | | | 26.66 | 6.67 | |
| | | | 310 | | | | | |
| XRAY | 100.00 | 30.11 | 303 | | | 24.09 | 6.02 | |
| | | | 310 | | | | | |
| TOTALS: | $155.00 | $63.44 | | $0.00 | $0.00 | $50.75 | $12.69 | $0.00 |

### EXPLANATION OF REMARK CODES

303--YOUR HEALTH CARE PROVIDER HAS AGREED TO ACCEPT ASSIGNMENT OF MEDICARE
BENEFITS. THIS MEANS YOU ARE NOT RESPONSIBLE FOR THE DIFFERENCE BETWEEN THE
MEDICARE - APPROVED AMOUNT AND THE ACTUAL CHARGE.

Continued On Next Page

CON0020 1S  (Rev. 1/03)



THIS IS NOT A BILL

**BlueCross BlueShield**
Federal Employee Program
www.fepblue.org

BLUE CROSS AND BLUE SHIELD OF ALABAMA
P. O. BOX 10401
BIRMINGHAM, AL   35202-0401

PLAINTIFF'S EXHIBIT 48   PENGAD 800-631-6989

EMILY C JACKSON

MONTGOMERY AL 36

FOR CUSTOMER SERVICE,
CALL 1-800-492-8872.

### EXPLANATION OF BENEFITS AT A GLANCE

| | |
|---|---|
| We Sent Check To:    AMERICAN BEHAVIORAL BENEFITS | ID Number:         R |
| | Claim Number:              3924 |
| Patient Name:        EMILY JACKSON | Claim Paid On:      03/12/2008 |
| | Claim Received On:  03/10/2008 |
| Dates of Service:    10/15/2007 - 10/15/2007 | Claim Processed On: 03/12/2008 |
| You Owe the Provider:      $0.00 | |

Provider: SMITH                                        Dates of Service: 10/15/2007 - 10/15/2007
Type:      PREFERRED PROVIDER

| Type of Service | Submitted Charges | Plan Allowance | Remark Codes | Deduct | Coinsurance Or Copay | Medicare/ Other Ins. | What We Paid | You Owe the Provider |
|---|---|---|---|---|---|---|---|---|
| THERAPEUTIC CARE | 125.00 | 85.60 | 303 | | | 68.48 | 17.12 | |
| | | | 310 | | | | | |
| TOTALS: | $125.00 | $85.60 | | 0.00 | $0.00 | $68.48 | $17.12 | $0.00 |

### EXPLANATION OF REMARK CODES

303--YOUR HEALTH CARE PROVIDER HAS AGREED TO ACCEPT ASSIGNMENT OF MEDICARE
BENEFITS. THIS MEANS YOU ARE NOT RESPONSIBLE FOR THE DIFFERENCE BETWEEN THE
MEDICARE - APPROVED AMOUNT AND THE ACTUAL CHARGE.

310--YOU ARE ENROLLED IN MEDICARE, WHICH IS PRIMARY.  THIS MEANS MEDICARE PROVIDES
BENEFITS FIRST AND YOUR SERVICE BENEFIT PLAN PAYS SECOND.  WE HAVE PAID 100%
OF THE ALLOWABLE CHARGES ON THIS CLAIM AFTER MEDICARE'S PAYMENT. NO
DEDUCTIBLE OR COINSURANCE/COPAYMENT APPLIES.

Continued On Next Page

CON0020-IS  (Rev. 1/03)

THIS IS NOT A BILL

**BlueCross BlueShield**
Federal Employee Program
www.fepblue.org

BLUE CROSS AND BLUE SHIELD OF ALABAMA
P. O. BOX 10401
BIRMINGHAM, AL  35202-0401

EMILY C JACKSON

MONTGOMERY AL 36111-



PLAINTIFF'S
EXHIBIT
49

```
| EXPLANATION OF BENEFITS AT A GLANCE          |
|                                              |
| We Sent Check To:    HEALTHSOUTH REHAB HOSP-MONTGOMERY | ID Number:
|                                              | Claim Number:              1372
| Patient Name:        EMILY JACKSON           | Claim Paid On:     12/21/2007
|                                              | Claim Received On: 12/19/2007
| Dates of Service:    11/02/2007 - 11/29/2007 | Claim Processed On: 12/21/2007
|                                              |
| You Owe the Provider:     $0.00              |
```

Provider: HEALTHSOUTH REHAB HOSP-MONTGOMERY          Dates of Service: 11/02/2007 - 11/29/2007
Type:     PREFERRED PROVIDER

| Type of Service | Submitted Charges | Plan Allowance | Remark Codes | Deduct | Coinsurance Or Copay | Medicare/ Other Ins. | What We Paid | You Owe the Provider |
|---|---|---|---|---|---|---|---|---|
| PHYSICAL MEDICINE | 1,550.00 | 1,550.00 | 310 | | | 1,398.27 | 151.73 | |
| PHYSICAL MEDICINE | | | 634 | | | | | |
| PHYSICAL MEDICINE | | | 634 | | | | | |
| PHYSICAL MEDICINE | | | 634 | | | | | |
| PHYSICAL MEDICINE | | | 634 | | | | | |
| PHYSICAL MEDICINE | | | 634 | | | | | |
| PHYSICAL MEDICINE | | | 634 | | | | | |
| PHYSICAL MEDICINE | | | 634 | | | | | |
| PHYSICAL MEDICINE | | | 634 | | | | | |
| PHYSICAL MEDICINE | | | 634 | | | | | |
| PHYSICAL MEDICINE | | | 634 | | | | | |
| PHYSICAL MEDICINE | | | 634 | | | | | |
| PHYSICAL MEDICINE | | | 634 | | | | | |
| TOTALS: | $1,550.00 | $1,550.00 | | $0.00 | $0.00 | $1,398.27 | $151.73 | $0.00 |

Continued On Next Page

COM0020-15  (Rev. 1/03)

BlueCross
BlueShield
Federal Employee Program
www.fepblue.org

THIS IS NOT A BILL

BLUE CROSS AND BLUE SHIELD OF ALABAMA
P. O. BOX 10401
BIRMINGHAM, AL  35202-0401



PLAINTIFF'S
EXHIBIT
50

EMILY C JACKSON

MONTGOMERY AL 36111-

## EXPLANATION OF BENEFITS AT A GLANCE

| ID Number: |
| Claim Number:                 5634 |

Patient Name:        EMILY

Dates of Service:    11/12/2007 - 11/12/2007

Claim Received On:  11/28/2007
Claim Processed On: 12/05/2007

Provider: SMITH                                  Dates of Service: 11/12/2007 - 11/12/2007
Type:    PREFERRED PROVIDER

| Type of Service | Submitted Charges | Plan Allowance | Remark Codes | Deduct | Coinsurance Or Copay | Medicare/ Other Ins. | What We Paid | You Owe the Provider |
|---|---|---|---|---|---|---|---|---|
| MEDICAL CARE | 125.00 | | 063 | | | | | 125.00 |
| TOTALS: | 125.00 | | | | | | | 125.00 |

### EXPLANATION OF REMARK CODES

063--WE PROVIDE BENEFITS UNDER YOUR BASIC OPTION COVERAGE FOR PREFERRED PROVIDERS
ONLY.  SINCE THESE SERVICES WERE RENDERED BY NON-PREFERRED PROVIDER AND DO
NOT MEET THE EXCEPTIONS DETAILED IN THE SERVICE BENEFIT PLAN BROCHURE,
BENEFITS ARE NOT AVAILABLE.  YOU ARE RESPONSIBLE FOR CHARGES.

If you have questions, please call a customer service representative at your local BlueCross BlueShield
Plan.  If you disagree with the decision on your claims or request for services, and wish to have the
decision reconsidered, you must notify your Plan in writing within 6 months from the date of this decision,
e.g. 06/05/2008. Your Plan will not accept unauthorized reconsiderations from providers.  See the Disputed
Claims Section of your Service Benefit Plan Brochure.
**Please submit requests for reconsideration to Blue Cross and Blue Shield of Alabama,
P.O. Box 12225, Birmingham, AL 35202-2225.**

CCNB020-1S  (Rev. 1/03)

THIS IS NOT A BILL

**BlueCross BlueShield**

Federal Employee Program
www.fepblue.org

BLUE CROSS AND BLUE SHIELD OF ALABAMA
P. O. BOX 10401
BIRMINGHAM, AL  35202-0401

EMILY C JACKSON

MONTGOMERY AL 36111-


PLAINTIFF'S
EXHIBIT
51

```
|    EXPLANATION OF BENEFITS AT A GLANCE       |
|_____|
|                                              |
|We Sent Check To:    HEALTHSOUTH REHAB HOSP-MONTGOMERY     | ID Number:
|                                              | Claim Number:              7583
|Patient Name:       EMILY JACKSON             | Claim Paid On:      01/03/2008
|                                              | Claim Received On:  12/31/2007
|Dates of Service:   12/03/2007 - 12/13/2007   | Claim Processed On: 01/03/2008
|                                              |
|You Owe the Provider:      $0.00              |
```

Provider: HEALTHSOUTH REHAB HOSP-MONTGOMERY          Dates of Service: 12/03/2007 - 12/13/2007
Type:      PREFERRED PROVIDER

| Type of Service | Submitted Charges | Plan Allowance | Remark Codes | Deduct | Coinsurance Or Copay | Medicare/ Other Ins. | What We Paid | You Owe the Provider |
|---|---|---|---|---|---|---|---|---|
| MEDICAL EQUIP/SUPPLY | | | 634 | | | | | |
| PHYSICAL MEDICINE | 674.00 | 674.00 | 310 | | | 603.80 | 70.20 | |
| PHYSICAL MEDICINE | | | 634 | | | | | |
| PHYSICAL MEDICINE | | | 634 | | | | | |
| PHYSICAL MEDICINE | | | 634 | | | | | |
| PHYSICAL MEDICINE | | | 634 | | | | | |
| PHYSICAL MEDICINE | | | 634 | | | | | |
| TOTALS: | $674.00 | $674.00 | | 0.00 | $0.00 | $603.80 | $70.20 | $0.00 |

Continued On Next Page

CON0020-1S  (Rev. 1/05)

## BlueCross BlueShield
Federal Employee Program
www.fepblue.org

EXPLANATION OF BENEFITS
THIS IS NOT A BILL

BLUE CROSS AND BLUE SHIELD OF ALABAMA
P. O. BOX 10401
BIRMINGHAM, AL  35202-0401



PLAINTIFF'S
EXHIBIT
52

EMILY C JACKSON

MONTGOMERY AL 36

FOR CUSTOMER SERVICE,
CALL 1-800-492-8872.

---

| EXPLANATION OF BENEFITS AT A GLANCE | |
|---|---|
| We Sent Check To:    AMERICAN BEHAVIORAL BENEFITS | ID Number:    R |
| | Claim Number:    6326 |
| Patient Name:    EMILY JACKSON | Claim Paid On:    03/12/2008 |
| | Claim Received On:  03/10/2008 |
| Dates of Service:   12/06/2007 - 12/06/2007 | Claim Processed On: 03/12/2008 |
| You Owe the Provider:    $0.00 | |

---

Provider: SMITH                                    Dates of Service: 12/06/2007 - 12/06/2007
Type:    PREFERRED PROVIDER

| Type of Service | Submitted Charges | Plan Allowance | Remark Codes | Deduct | Coinsurance Or Copay | Medicare/ Other Ins. | What We Paid | You Owe the Provider |
|---|---|---|---|---|---|---|---|---|
| THERAPEUTIC CARE | 125.00 | 85.60 | 303 310 | | | 68.48 | 17.12 | |
| TOTALS: | $125.00 | $85.60 | | 0.00 | $0.00 | $68.48 | $17.12 | $0.00 |

### EXPLANATION OF REMARK CODES

303--YOUR HEALTH CARE PROVIDER HAS AGREED TO ACCEPT ASSIGNMENT OF MEDICARE
     BENEFITS. THIS MEANS YOU ARE NOT RESPONSIBLE FOR THE DIFFERENCE BETWEEN THE
     MEDICARE - APPROVED AMOUNT AND THE ACTUAL CHARGE.

310--YOU ARE ENROLLED IN MEDICARE, WHICH IS PRIMARY. THIS MEANS MEDICARE PROVIDES
     BENEFITS FIRST AND YOUR SERVICE BENEFIT PLAN PAYS SECOND. WE HAVE PAID 100%
     OF THE ALLOWABLE CHARGES ON THIS CLAIM AFTER MEDICARE'S PAYMENT. NO
     DEDUCTIBLE OR COINSURANCE/COPAYMENT APPLIES.

Continued On Next Page

CON6020-1S  (Rev. 1/03)

BlueCross BlueShield
Federal Employee Program
www.fepblue.org

THIS IS NOT A BILL

BLUE CROSS AND BLUE SHIELD OF ALABAMA
P. O. BOX 10401
BIRMINGHAM, AL  35202-0401



EMILY C JACKSON

MONTGOMERY AL 36111-

FOR CUSTOMER SERVICE,
CALL 1-800-492-8872.

### EXPLANATION OF BENEFITS AT A GLANCE

| | |
|---|---|
| We Sent Check To: | AMERICAN BEHAVIORAL BENEFITS |
| Patient Name: | EMILY JACKSON |
| Dates of Service: | 01/10/2008 - 01/10/2008 |
| You Owe the Provider: | $0.00 |

ID Number:
Claim Number:              8945
Claim Paid On:        02/28/2008
Claim Received On:   02/26/2008
Claim Processed On: 02/28/2008

Provider: SMITH                          Dates of Service: 01/10/2008 - 01/10/2008
Type:      PREFERRED PROVIDER

| Type of Service | Submitted Charges | Plan Allowance | Remark Codes | Deduct | Coinsurance Or Copay | Medicare/ Other Ins. | What We Paid | You Owe the Provider |
|---|---|---|---|---|---|---|---|---|
| THERAPEUTIC CARE | 125.00 | 100.70 | 303 310 | | | | 100.70 | |
| TOTALS: | $125.00 | $100.70 | | 0.00 | $0.00 | $0.00 | $100.70 | $0.00 |

### EXPLANATION OF REMARK CODES

303--YOUR HEALTH CARE PROVIDER HAS AGREED TO ACCEPT ASSIGNMENT OF MEDICARE
BENEFITS. THIS MEANS YOU ARE NOT RESPONSIBLE FOR THE DIFFERENCE BETWEEN THE
MEDICARE - APPROVED AMOUNT AND THE ACTUAL CHARGE.

310--YOU ARE ENROLLED IN MEDICARE, WHICH IS PRIMARY.  THIS MEANS MEDICARE PROVIDES
BENEFITS FIRST AND YOUR SERVICE BENEFIT PLAN PAYS SECOND.  WE HAVE PAID 100%
OF THE ALLOWABLE CHARGES ON THIS CLAIM AFTER MEDICARE'S PAYMENT. NO
DEDUCTIBLE OR COINSURANCE/COPAYMENT APPLIES.

Continued On Next Page

CCN00020-1S  (Rev. 1/03)

**BlueCross BlueShield**

Federal Employee Program
www.fepblue.org

THIS IS NOT A BILL

BLUE CROSS AND BLUE SHIELD OF ALABAMA
P. O. BOX 10401
BIRMINGHAM, AL  35202-0401

PLAINTIFF'S
EXHIBIT
54

EMILY C JACKSON

MONTGOMERY AL 36111-

FOR CUSTOMER SERVICE,
CALL 1-800-492-8872.

---

## EXPLANATION OF BENEFITS AT A GLANCE

| | |
|---|---|
| We Sent Check To:  JACKSON HOSPITAL AND CLINIC INC | ID Number: |
| | Claim Number:              0869 |
| Patient Name:     EMILY JACKSON | Claim Paid On:     03/04/2008 |
| | Claim Received On:  02/29/2008 |
| Dates of Service:   02/07/2008 - 02/07/2008 | Claim Processed On: 03/04/2008 |
| You Owe the Provider:     $0.00 | |

---

Provider: CUNNINGHAM                                   Dates of Service: 02/07/2008 - 02/07/2008
Type:     PREFERRED PROVIDER

| Type of Service | Submitted Charges | Plan Allowance | Remark Codes | Deduct | Coinsurance Or Copay | Medicare/ Other Ins. | What We Paid | You Owe the Provider |
|---|---|---|---|---|---|---|---|---|
| OFFICE VISIT | 63.00 | 55.19 | 303 | | | 44.15 | 11.04 | |
| | | | 310 | | | | | |
| TOTALS: | $63.00 | $55.19 | | 0.00 | $0.00 | $44.15 | $11.04 | $0.00 |

### EXPLANATION OF REMARK CODES

303--YOUR HEALTH CARE PROVIDER HAS AGREED TO ACCEPT ASSIGNMENT OF MEDICARE
   BENEFITS. THIS MEANS YOU ARE NOT RESPONSIBLE FOR THE DIFFERENCE BETWEEN THE
   MEDICARE - APPROVED AMOUNT AND THE ACTUAL CHARGE.

310--YOU ARE ENROLLED IN MEDICARE, WHICH IS PRIMARY.  THIS MEANS MEDICARE PROVIDES
   BENEFITS FIRST AND YOUR SERVICE BENEFIT PLAN PAYS SECOND.  WE HAVE PAID 100%
   OF THE ALLOWABLE CHARGES ON THIS CLAIM AFTER MEDICARE'S PAYMENT. NO
   DEDUCTIBLE OR COINSURANCE/COPAYMENT APPLIES.

Continued On Next Page

CON0020-1S  (Rev. 1/03)

THIS IS NOT A BILL

**BlueCross BlueShield**

Federal Employee Program
www.fepblue.org

BLUE CROSS AND BLUE SHIELD OF ALABAMA
P. O. BOX 10401
BIRMINGHAM, AL  35202-0401



PLAINTIFF'S
EXHIBIT
55

EMILY C JACKSON

MONTGOMERY AL 36111-

FOR CUSTOMER SERVICE,
CALL 1-800-492-8872.

---

### EXPLANATION OF BENEFITS AT A GLANCE

| We Sent Check To: | RADIOLOGY GROUP PA | ID Number: | |
|---|---|---|---|
| | | Claim Number: | 6233 |
| Patient Name: | EMILY JACKSON | Claim Paid On: | 03/01/2008 |
| | | Claim Received On: | 02/28/2008 |
| Dates of Service: | 02/07/2008 - 02/07/2008 | Claim Processed On: | 03/01/2008 |
| You Owe the Provider: | $0.00 | | |

---

Provider: GAYDEN JR                                    Dates of Service: 02/07/2008 - 02/07/2008
Type:      PREFERRED PROVIDER

| Type of Service | Submitted Charges | Plan Allowance | Remark Codes | Deduct | Coinsurance Or Copay | Medicare/ Other Ins. | What We Paid | You Owe the Provider |
|---|---|---|---|---|---|---|---|---|
| XRAY | 58.00 | 28.81 | 303 | | | 23.05 | 5.76 | |
| | | | 310 | | | | | |
| TOTALS: | $58.00 | $28.81 | | 0.00 | $0.00 | $23.05 | $5.76 | $0.00 |

### EXPLANATION OF REMARK CODES

303--YOUR HEALTH CARE PROVIDER HAS AGREED TO ACCEPT ASSIGNMENT OF MEDICARE
     BENEFITS. THIS MEANS YOU ARE NOT RESPONSIBLE FOR THE DIFFERENCE BETWEEN THE
     MEDICARE - APPROVED AMOUNT AND THE ACTUAL CHARGE.

310--YOU ARE ENROLLED IN MEDICARE, WHICH IS PRIMARY.  THIS MEANS MEDICARE PROVIDES
     BENEFITS FIRST AND YOUR SERVICE BENEFIT PLAN PAYS SECOND.  WE HAVE PAID 100%
     OF THE ALLOWABLE CHARGES ON THIS CLAIM AFTER MEDICARE'S PAYMENT. NO
     DEDUCTIBLE OR COINSURANCE/COPAYMENT APPLIES.

Continued On Next Page

CCN00020-1S  (Rev. 1/03)