IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| EMILY JACKSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.  2:07cv315-MEF |
| | ) | (WO) |
| EASTER SEALS CENTRAL | ) | |
| ALABAMA, | ) | |
| | ) | |
| Defendant. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.  INTRODUCTION

The pro se plaintiff, Emily Jackson ("Jackson"), a former employee of Easter Seals of Central Alabama ("Easter Seals"), brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"), alleging that she was discriminated against on the basis of her race (African-American) and gender when the defendant failed to extend her contract and replaced her with a subcontractor.  She also asserts a differential treatment claim against the defendant.  She names Easter Seals as the sole defendant in this case. On September 7, 2007, and February 28, 2008, Jackson filed motions for summary judgment.  (Doc. Nos. 29 & 84.)  On February 29, 2008, Easter Seals submitted a motion for summary judgment.  (Doc. No. 86.)

This court has jurisdiction of Jackson's discrimination claims pursuant to the jurisdictional grant in 42 U.S.C. § 2000e-5.  Now pending before the court are the plaintiff's and the defendant's motions for summary judgment.  The court has carefully reviewed the

motions for summary judgment, the briefs filed in support of and in opposition to the motions, and the supporting and opposing evidentiary materials and concludes that the motions for summary judgment filed by Jackson should be denied. The court further concludes that the defendant's motion for summary judgment should be granted with respect to the disparate treatment claim and denied with respect to the wrongful termination claim.

## II. SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." This standard can be met by the movant, in a case in which the ultimate burden of persuasion at trial rests on the nonmovant, either by submitting affirmative evidence negating an essential element of the nonmovant's claim, or by demonstrating that the nonmovant's evidence itself is insufficient to establish an essential element of his or her claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Jeffery v Sarasota White Sox*, 64 F.3d 590, 593 (11th Cir. 1995); *Edwards v. Wallace Cmty Coll.,* 49 F.3d 1517, 1521 (11th Cir. 1995).

The burden then shifts to the nonmovant to make a showing sufficient to establish the existence of an essential element of his claims, and on which he bears the burden of proof at trial. *Id.* To satisfy this burden, the nonmovant cannot rest on the pleadings, but must, by affidavit or other means, set forth specific facts showing that there is a genuine issue for trial. FED. R. CIV. P. 56(e).

The court's function in deciding a motion for summary judgment is to determine

2

whether there exist genuine, material issues of fact to be tried; and if not, whether the movant is entitled to judgment as a matter of law. *See Dominick v. Dixie Nat'l Life Ins. Co.,* 809 F.2d 1559 (11th Cir. 1987). It is substantive law that identifies those facts which are material on motions for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 258 (1986); *See also De Long Equip. Co. v. Washington Mills Abrasive Co.,* 887 F.2d 1499 (11th Cir. 1989).

When the court considers a motion for summary judgment, it must refrain from deciding any material factual issues. All the evidence and the inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmovant. *Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1080 (11th Cir. 1990). *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). The movant bears "the exacting burden of demonstrating that there is no dispute as to any material fact in the case." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung,* 695 F.2d 1294, 1296 (11th Cir. 1983).

### III. FACTS

### A. The Undisputed Facts

Easter Seals is a non-profit agency that provides assistance to individuals with disabilities and special needs. (Def's Ex. 4, Lynn's Dec., p. 1.) The agency provides services in twelve central Alabama counties. (*Id.,* pp. 1-2.) In 2003, the agency implemented the Micro-Enterprises Program, which was designed to assist individuals with disabilities in starting their own businesses. (*Id.*) The funding of the program was based on grant money administered by the Alabama Department of Economic and Community Affairs ("ADECA").

3

(*Id.*)

In March 2003, Cassandra Cooper, an African-American woman, was hired as the program's first micro-enterprise specialist. (Def's Ex. 5, McKim's Dec., p. 1.) Shortly thereafter, Easter Seals broadened the Micro-Enterprises Program throughout the state. Consequently, in September 2004, Easter Seals also hired Jackson to serve as a micro-enterprise specialist. (Def's Ex. 1, Jackson's Dep., p. 144.)

Around this time, Easter Seals also contracted with Bill Haynes ("Haynes"), an independent contractor, to act as a micro-enterprise specialist in the Talladega area.[1] (McKim's Dec., p. 2.) At some point prior to the 2005 fiscal year, ADECA informed Easter Seals that there was not enough grant money to continue the funding of the newly-extended program. (*Id.*) As a result, Easter Seals eliminated the Talladega program.

In April 2006, Dr. Susan McKim, Easter Seals Grant Developer, received a letter from ADECA indicating that the Department of Labor had cut funding for the program. (*Id.*) The letter also advised that ADECA was attempting to get a no-cost grant extension for the program.[2] (*Id.*) On April 26, 2006, Larry Lewis, the Easter Seals Administrator, and Dr. McKim met with Jackson and Cooper. (*Id.*; Jackson's Dep., p. 302.) During the meeting, Dr. McKim explained that, due to budget cuts, the program would end on September 29,

---

[1] The Talladega area is home to the Alabama Deaf and Blind Institute. (McKim's Dec., p. 2.) Haynes was chosen for the position because of his experience working with deaf and blind persons. (*Id.*)

[2] Under a no-cost extension, a grant administrator, such as ADECA, does not receive additional grant money, but is allowed to use and redistribute any remaining unused grant funds until the funding is exhausted. (McKim's Dec., p. 3.)

2006, but that ADECA was seeking a no-cost extension to sustain the grant for another year. (McKim's Dec., p. 3; Jackson's Dep., pp. 303-04.)

On or around August 11, 2006, Lewis received a letter from ADECA, informing him that the agency had not received a response to its request for a no-cost extension from the Department of Labor and therefore the program would close on September 29, 2006. (Attach. to McKim's Dec., Ex. A.) On August 15, 2006, Lewis placed a memorandum on Jackson's desk, advising her that ADECA's efforts to get an extension had failed and that her employment with Easter Seals would end in September 2006. (Attach. to Doc. No. 84.)

Less than a week after Jackson received Lewis' memorandum, Debbie Lynn ("Lynn") assumed the position of Administrator for Easter Seals. (Doc. No. 88, Def's Ex. 4, Lynn's Dec., p. 2.) Toward the end of August 2006, Dr. McKim was notified by ADECA that a no-cost extension of six months had been approved. (Def's Ex. 5, McKim's Dec., p. 3.) ADECA instructed Easter Seals to prepare a proposed budget based on the anticipated amount of remaining grant funds. (*Id*.) Dr. McKim subsequently prepared a proposed budget, including salaries for two full-time Micro-Enterprise Specialists. (*Id*.; Attach. to McKim's Dec., Ex. B.)

On September 11, 2006, Jackson submitted a letter to Lynn, in which she stated the following:

> On Monday, August 21, 2006, upon my return from funeral leave, a letter noted, "Confidential," was left on my desk informing me that the ACE Micro Enterprise Program was ending effective Friday, September 29, 2006, and that efforts to obtain a "no-cost" extension were not granted.

5

First and foremost, I want to express my appreciation and gratitude to Easter Seals for implementing the ACE Micro Enterprise Program and for hiring me as a Micro Enterprise Specialist. During my two-year tenure, I was blessed and honored to help and work with some extraordinary people. I also had the opportunity to build some trustworthy relationships both on and off the job, and nothing could ever replace those relationships.

What was most rewarding was the time that I had working with clients and helping them achieve their self-employment goals. Despite their disabilities, they were willing to learn and to take on the responsibilities of business ownership. The excitement in their eyes, once their business plans were completed, gave me internal satisfaction that is priceless.

Since I have not been notified that there are any new employment opportunities for me here at Easter Seals, I will need time to transition to a new career. Therefore, my last day will be Monday, September 25, 2006. I have enclosed a leave request slip for four hours of annual leave to cover my time from September 26th through September 29th. Therefore, my employment with Easter Seals will officially end, as noted in the letter that I received, on September 29, 2006.

Congratulations on your new position as Easter Seals Central Alabama Administrator. My prayers and thoughts will be with you as you take on new challenges ahead. Also, I admire your courage and your autonomous leadership style, and I wish I could have had the opportunity to work with you.

Take care and God Bless.

(Def's Ex. 4, Ex. A, Attach. to Lynn's Dec.)

The next day, Lynn met with Jackson and Cooper. The plaintiff's and the defendant's

recollection of the facts diverge at this point. Thus, the court will summarize both parties'

version of the facts.

## B. Jackson's Recollection of Meetings with Lynn[3]

During the September 12, 2006, meeting, Lynn advised both Jackson and Cooper that the program would continue for six months, but that she was uncertain whether the grant would allow funding for two full-time micro-enterprise specialists. (Def's Ex. 1, Pl's Dep., pp. 354-55, 375-76; Def's Ex. 3, Cooper's Dep., pp. 49, 51-52.) Jackson asked, "Will the program allow me to work part time? If I can't work full time, will it allow me to work part time?" (Pl's Dep., pp. 341, 375.) Lynn indicated that she would ask Dr. McKim whether the program permitted part-time employment. (Id., p. 341.) After this discussion, Lynn asked both Jackson and Cooper, "What are you going to do . . . [i]f the program does not continue?" (Id., p. 362.) Jackson and Cooper indicated that they planned to start their own consulting businesses. (Jackson's Dep., pp. 341-42; Cooper's Dep., pp. 53-55, 121.)

On the afternoon of September 18, 2006, Lynn advised Jackson that the program only allowed funding for one full-time micro-enterprise specialist and that Jackson's term of employment would end on September 29, 2006. (Pl's Dep., p. 364.) Lynn handed Jackson an envelope and said, "We've accepted your resignation." (Id., p. 364.) Jackson responded that she had not resigned and that her position had been eliminated. (Id.) She also reminded Lynn that her insurance company would only pay unemployment benefits if she lost her job. (Id., p. 365.) Lynn asked her secretary, Eileen Bennett ("Bennett"), to retype the letter with

---

[3] On a motion for summary judgment the court must construe the facts in the light most favorable to the non-movant. *See, e.g. Brown v. Crawford*, 906 F.2d 667 (11th Cir. 1990). Thus, the court will discuss both parties' rendition of the facts.

appropriate wording indicating that Jackson's position was eliminated due to budget cuts. (*Id.*, p. 367.)

Later that day, Lynn conducted a staff meeting with all of her employees and announced that the program would continue for six months, that the grant only allowed for one micro-enterprise specialist, that Cooper would remain in her position, and that Jackson would be leaving Easter Seals. (*Id.*, p. 376.) At some point after this staff meeting, Cooper mentioned to Jackson that she planned to resign. (Jackson's Dep., p. 380.)

### C. Lynn's Recollection of Meetings with Jackson

During the September 12, 2006, meeting, Lynn informed Jackson and Cooper that the program had received a no-cost grant extension for a six-month period and asked them whether they intended to stay with the program during the extension period. (Doc. No. 101, Ex. 2, Lynn's Dec., p. 3.) Cooper indicated that she wished to remain in the program. (*Id.*) Jackson, however, indicated that "she would like the arrangement detailed in her September 11 letter to stand." (*Id.*) Jackson did not mention that she was interested in remaining with the program as a full-time employee. (*Id.*, pp. 3-4) Lynn's understanding was that Jackson was resigning effective September 29, 2006. (*Id.*)

At some point after the meeting, Jackson asked Lynn if she could remain with the program on a part-time basis.[4] (*Id.*) After discussing Jackson's request with Dr. McKim, Lynn determined that an employee in a part-time position would not be able to meet the

---

[4] According to Lynn, Jackson requested to work two half days a week. (Lynn's Supp. Dec., p. 7.)

anticipated schedule and needs of the program. (*Id.*, p. 5.)

On September 18, 2006, Lynn met with Jackson and advised that her part-time proposal was not workable and gave her a letter confirming Easter Seals' acceptance of her resignation. (*Id.*) Jackson reviewed the document and explained that the statement that she had resigned her position would result in her ineligibility to collect on a private unemployment insurance policy that she had recently purchased. (*Id.*) Consequently, Lynn re-wrote the letter to reflect that Jackson's position had been eliminated due to budget cuts. (*Id.*)

During a staff meeting later that day, Lynn informed the employees that the Micro-Enterprises Program would be extended for six months, that Cooper would remain with the program during that time, and that a going-away party had been scheduled for Jackson. (*Id.*) Easter Seals subsequently modified its proposed budget to reflect the need for only one full-time Micro-Enterprise Specialist.

### D.  Jackson's Going-Away Party

The parties do not dispute that Cooper turned in her resignation papers on the day of Jackson's going-away party at Easter Seals on September 25, 2006. Four days later, when Jackson returned with insurance papers and a request for her final paycheck, Bennett told her that Cooper had resigned.[5] (Pl's Dep., p. 385.) Jackson asked Bennett whether the program

---

[5] Jackson testified that she knew beforehand that Cooper had resigned because Cooper had mentioned that she was going to do so. (Pl's Dep., p. 385.) However, Jackson also stated that "[Cooper] had said she was going to resign, but I didn't know that she was going to do it until after she did it." (*Id.*, p. 383.)

would continue and Bennett advised her that the program was ending.[6]  (*Id*., p. 388; Doc., No. 88, Def's Ex. 2.)

Upon receiving Cooper's resignation, Easter Seals contacted Haynes and explained the immediate needs of the program.  (Lynn's Dec., p. 6.)  Haynes responded that he could provide his services through the extension period as an independent contractor and presented a six-month contract for his services.  (*Id*.)  On October 1, 2006, Easter Seals contracted with Haynes, specifically agreeing to pay him $40 per hour up to but not exceeding 650 hours during the six-month extension period.  (Doc. No. 85-2, Pl's Ex. 1.)

At some point in October 2006, Jackson called Easter Seals to say hello to a friend. (Jackson's Dep., p. 392.)  Before transferring the call, the receptionist informed Jackson that Haynes was working in the micro-enterprise program.  (*Id*., p. 392-93.)  Jackson felt hurt and disappointed.  (*Id*., p. 393.)  The following month, she filed a complaint with the Equal Employment Opportunity Commission.  (Doc. No. 88, Def's Ex. 2.)  After receiving a notice-of-right-to-sue letter from the EEOC, Jackson filed this federal lawsuit.  (Doc. No. 1.)

## IV.  DISCUSSION

### A.  The Wrongful Termination Claim

Title VII prohibits discrimination on the basis of race, color, religious, sex, or national origin in a variety of employment practices.  *See Walker v. NationsBank N.A.*, 53 F.3d 1548, 1555 (11th Cir. 1995).  In an employment discrimination case, the plaintiff bears the ultimate

---

[6] Lynn was in a meeting at the time and, therefore, she was unavailable to speak with Jackson.

10

burden of proving intentional discrimination.  *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).  To defeat the defendant's motion for summary judgment, Jackson must establish a prima facie case of discrimination by one of three generally accepted methods: (1) presenting direct evidence of discriminatory intent; (2) presenting evidence to satisfy the four-part circumstantial evidence test set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); or (3) presenting statistical proof.  *Carter v. Miami*, 870 F.2d 578, 581 (11th Cir. 1989).  Jackson has not presented any direct evidence of discrimination nor does she rely on statistical evidence to support her discrimination claims.  Thus, the court will discuss whether Jackson has established circumstantial evidence of discrimination.

The Supreme Court in *McDonnell Douglas Corp., supra*, created the now familiar framework for the burden of production and order of presentation of proof to analyze circumstantial evidence of discrimination. *See Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1184 (11th Cir. 1984).  Jackson asserts that her termination from Easter Seals was motivated by her race and gender.  To establish a prima facie case of wrongful discharge, a plaintiff must prove that (1) she belongs to a protected class; (2) she was discharged; (3) she was replaced by an individual outside the protected class; and (4) she was qualified for the position held.  *Coutu v. Martin County Bd. of County Comm'rs*, 47 F.3d 1068, 1073 (11th Cir. 1995); *Jones v. Gerwens*, 874 F.2d 1534 (11th Cir. 1989).  If Jackson can establish a prima facie case, then the burden shifts to the defendant to produce a legitimate, nondiscriminatory reason for his termination. *McDonnell Douglas Corp.*, 411 U.S. at 802-04.  If the defendant meets his burden of production, then Jackson must present substantial

evidence that the defendant's justification for her termination is pretextual. *Id.*

Easter Seals argues that Jackson's claim that "once Ms. Cooper resigned, Mr. Haynes filled the newly created vacancy, not her" should be construed as a "failure-to-select" claim. The defendant contends that this court should apply the standard applicable to failure-to-select cases, instead of wrongful termination cases, when determining whether Jackson established a prima facie case of discrimination. Specifically, the defendant, citing *Walker v. Mortham*, 158 F.3d 1177, 1185-87 (11th Cir. 1998), and *Summerlin v. M&H Valve Co.*, 167 Fed. Appx. 93, 2006 WL 93131 (11th Cir. 2006), asserts that this court should require Jackson to demonstrate that (1) she is a member of a protected minority; (2) she was qualified and *applied* for the position; and (3) she was rejected despite these qualifications.[7] (Doc. No. 87, pp. 11-12; Doc. No. 101, p. 19.)  The court, however, does not read Jackson's complaint or amendments to include a failure-to-select claim.  Throughout her pleadings, Jackson has consistently complained that, although she expressed an interest in continuing her employment if a grant extension was allowed, the defendant indicated that funding was unavailable for her position, terminated her employment, and subsequently replaced her with a Caucasian man.  The court concludes that Jackson's complaint raises a wrongful

---

[7] The court questions whether *Walker* and *Summerlin* are applicable to the issues in this case.  In *Walker*, the Court held that employees and job applicants bringing a Title VII discrimination action based on a defendant's failure to promote or failure to hire were not required, as part of a prima facie case, to establish that they were equally qualified or more qualified than successful applicants for their coveted positions.  158 F.3d at 1185.  In *Summerlin*, the Court applied the reasoning set forth in *Walker* and held that an employee is not required to show that he was more qualified than a non-minority employee who received a promotion in order to establish a prima facie case of discrimination.  167 Fed.Appx. at 94-95.  Thus, *Walker* and *Summerlin* concern the qualifications of applicants.  There is no dispute that Jackson was qualified for her position.

termination claim.

Consequently, the court will discuss whether Jackson has established a prima facie case of wrongful discharge. Proving a prima facie case is not onerous; it requires only that the plaintiff present sufficient evidence to permit an inference of discrimination. *Burdine*, 450 U.S. at 253-54. Easter Seals concedes that Jackson is an African-American woman. The court properly may conclude that the defendant does not dispute that Jackson was replaced by an individual outside her protected class. In its brief in support of its motion for summary judgment (Doc. No. 87) and response to Jackson's motions for summary judgment (Doc. No. 101), Easter Seals alleges no facts and makes no argument in response to Jackson's assertion that she was replaced by an individual outside her protected class. The burden is on the parties to formulate arguments, and a plaintiff's failure to list an enumerated claim and brief an issue in a memorandum of law in opposition to a defendant's motion for summary judgment is deemed an abandonment of that claim. *See Iraola & CIA, S.A. v. Kimberly-Clark Corp.*, 325 F.3d 1274 (11th Cir. 2003); *Thomas v. Alabama Council on Human Relations, Inc.*, 248 F. Supp. 2d 1105, 1107 n.1 (M.D. Ala. 2003). *Cf. Road Sprinkler Fitters Local Union No. 669 v. Indep. Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir. 1994). Thus, the defendant has effectively abandoned the argument initially raised in its motion to dismiss[8] that Jackson cannot demonstrate that she was replaced because the position of micro-

_____

[8] The defendant initially argued in its motion to dismiss pursuant to FED.R.CIV.P. 12(b)(6) that Jackson cannot demonstrate under the facts of this case that she was replaced by an employee. (Doc. No. 7.) The court determined that Jackson had pled sufficient facts in her complaint to support her wrongful termination claim and denied the motion.

13

enterprise specialist was given to an independent contractor. However, out of an abundance of caution, the court will discuss whether Haynes' contractual relationship with the defendant precludes Jackson from establishing a prima facie case of discrimination.

Several courts have held that an individual's independent contractor status does not preclude a plaintiff from establishing a prima facie case. *See Jessamy v. City of New Rochelle*, 292 F. Supp. 2d 498, 517 n. 22 (S.D.N.Y. 2003) (age discrimination); *Yelverton v. Graebel/Houston Movers, Inc*., 121 F. Supp. 2d 604 (E.D. Tex. 2000) (prima face case where employer reassigned two younger persons to perform employee's work and then hired an independent contractor); *Williams v. 55th Street Theatre Foundation*, No. 93 CIV 3385, 1994 WL 501760, at *5 (S.D.N.Y. Sept. 13, 1994) (employee's duties were taken away and given to a young contractor). *Cf. Muse v. Utili-Comm South, Inc.*, [No. 1:06cv998-SEB-JMS] 2007 WL 3102152, at *5 (S.D. Ind. Oct. 22, 2007) (plaintiff alleging differential treatment unable to establish prima facie case where five comparators were all independent contractor technicians whose employment relationship with company was regulated by a written contract).

The Eleventh Circuit has not specifically addressed whether an employee's replacement by an independent contractor is sufficient to establish a prima facie case of discrimination under Title VII. In *Mitchell v. Worldwide Underwriters Ins. Co.*, 967 F.2d 565 (11th Cir. 1992), however, the Court held that a terminated employee who was subsequently replaced by an independent contractor corporation comprised of several younger employees failed to establish a prima facie case of age discrimination. The court

14

held that, because a company's replacement of a former employee with a corporation does not, in and of itself, make out a prima facie case, a plaintiff "must establish his prima facie case by showing something more than he would otherwise have to show if he were replaced by an employee outside the protected class." *Id.*, 967 F.2d at 567.

Even assuming *arguendo* that an employee's replacement by an independent contractor does not demonstrate a prima facie case of racial or gender discrimination, the court concludes that the defendant has failed to come forward with facts sufficiently demonstrating that Haynes should be considered as an independent contractor.  In *Cobb v. Sun Papers*, *Inc.*, 673 F.2d 337 (11th Cir. 1982), the Court discussed the appropriate test to apply when determining whether an individual is an employee or an independent contractor. Specifically, the Court held that "it is the economic realities of the relationship viewed in the light of the common law principles of agency and the right of the employer to control the employee that are determinative." *Cobb,* 673 F.2d at 341.  The Court also set forth numerous factors, in addition to the right to control, to guide a court's determination: (1) the kind of occupation, specifically whether the work is usually performed under the direction of a supervisor; (2) the skill required to perform the particular occupation; (3) whether the "employer" or the individual furnishes the equipment used and the place of work; (4) the length of time the individual has worked; (5) the method of payment; (6) whether one or both parties have the right to terminate the relationship with or without notice; (7) whether leave or vacation is afforded; (8) whether the work is an integral part of the employer's business; (9) whether the individual accumulates retirement benefits;  (10) whether the employer pays

15

social security taxes; and (11) the intention of the parties. *Id*. at 340. *See also Fronduti v. Trinity Indus*., 928 F. Supp. 1107, 1112 (M.D. Ala. 1996).

There is some evidence which is possibly favorable to a finding that Haynes was an independent contractor. For example, Haynes entered into a "personal services agreement" with Easter Seals, in which he agreed to conduct seminars, prepare case files for clients, and provide program information to an independent evaluator, as well as perform other micro-enterprise consultation duties. (Doc. No. 85-2, Pl's Ex. 1.) The contract states that "the contractor is not entitled to any Easter Seals Central Alabama employee benefits." (*Id*.) Despite the contractual language, the employment status of an individual is not determined by the label used in the contract between the parties. *See Clackamas Gastroenterology Assocs., P.C. v. Wells*, 538 U.S. 440, 450 (2003) ("[T]he mere existence of a document styled 'employment agreement' [should not] lead inexorably to the conclusion that either party is an employee."); *Daughtrey v. Honeywell, Inc.*, 3 F.3d 1488, 1492 (11th Cir. 1993), *citing Spirides v. Reinhardt*, 613 F.2d 826, 832-33 (D.C. Cir. 1979). *See also Fronduti*, 928 F. Supp. at 1112 (noting that, while a contract may evidence that the parties intended the arrangement to be an independent-contractor relationship rather than an employer/employee relationship, the contract itself is not dispositive of the issue). In addition, Haynes' 1099 form indicates that Easter Seals did not withhold federal income tax or provide healthcare payments for Haynes in 2006. (Doc. No. 84-2, Pl's Ex. 12.) The written contract and IRS form, however, do not conclusively establish that Haynes acted as an independent contractor. The answer to whether an individual is an employee or independent contractor depends on

"'all of the incidents of the relationship ... with no one factor being decisive.'" *Clackamas Gastroenterology Assocs.*, 538 U.S. at 451 (quoting *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 324 (1992)). Thus, it is essential to consider the entire relationship between Easter Seals and Haynes during the six-month extension period. *See Patterson v. Wilder Const. Co., Inc. v. U.S.*, 226 F.3d 1269, 1276 (11th Cir. 2000) (discussing the common law of agency and the control test).

Other circumstances lean toward a determination that Haynes was an employee. As previously discussed, Easter Seals has presented no facts concerning the degree of control and supervision exercised over Haynes. Furthermore, the evidentiary materials indicate that Haynes performed essentially the same duties as Jackson, that he held Jackson's former title of micro-enterprise specialist while working for Easter Seals during the six-month extension period, and that Easter Seals began seeking a "qualified individual" to fill the position four days prior to hiring Haynes. (Doc. No. 85-2, Pl's Ex. 1; Doc. No. 101-3, Lynn's Supp. Dec., p. 6.) Given Easter Seals' failure to present any facts concerning the degree of control and supervision exercised over Haynes, this court cannot properly consider Haynes as an independent contractor. *Cf. Daughtrey*, 3 F.3d at 1493 (holding that district court erred by resolving disputed issues of fact concerning degree of control and supervision exercised over individual on summary judgment) (citing *Pitts v. Shell Oil Co.*, 463 F.2d 331, 335-36 (5th Cir. 1972) (reversing determination on summary judgment that hired party was an employee, and not an independent contractor, where evidence as to degree of control and supervision was disputed)).

17

Having concluded that Jackson established a prima facie case of discrimination, the court will address the reasons set forth by Easter Seals. Under the second prong of the *McDonnell Douglas* test, the burden shifts to the defendant to present a legitimate, non-discriminatory reason for an employee's termination. *McDonnell Douglas*, 411 U.S. at 802. The Eleventh Circuit holds that "[t]o satisfy this intermediate burden, the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1527-28 (11th Cir. 1997). "'The defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff.'" *Combs*, 106 F.3d at 1528 (quoting *Burdine*, 450 U.S. at 254-55). This intermediate burden is "exceedingly light." *Turnes v. Amsouth Bank, N.A.*, 36 F.3d 1057, 1061 (11th Cir. 1994).

In her declaration and supplemental declaration, Lynn alleges that Jackson was initially terminated because Lynn was under the impression that Jackson was not interested in continuing to work as a full-time employee during the extension period. Lynn also alleges that Jackson was not hired on a part-time basis because both she and Dr. Mc Kim assessed that an employee working "half-days" twice a week would not be able to meet the anticipated schedule and needs of the program. Lynn further maintains that the reason Jackson was not asked to continue working after Cooper's resignation was because she was under the impression that Jackson intended to pursue her own consulting business and was not

interested in working for Easter Seals during the extension period.

Unquestionably, an employer's good-faith reliance on faulty or mistaken information is a legitimate, nondiscriminatory reason for an adverse employment action. *See Schoenfeld v. Babbitt*, 168 F.3d 1257, 1269 (11th Cir. 1999) ("Missing necessary paperwork, bureaucratic mistakes, and violations of hiring procedures are all sufficient reasons to justify the non-hiring of an applicant."); *Smith v. Papp Clinic, P.A.*, 808 F.2d 1449, 1452-53 (11th Cir. 1987) (jury could find that employer discharged black employee under honest belief that she had violated company policy, despite the employer's belief being mistaken or wrong in fact); *Hegre v. Alberto-Culver USA, Inc.*, 508 F. Supp. 2d 1320, 1336 (S.D. Ga. 2007); *King v. Augusta*, NO. CV 106-148, 2008 WL 268913, at * 7 (S.D. Ga. January 29, 2008); *Thomas v. Troy City Bd. of Educ.*, 302 F. Supp. 2d 1303, 1308 (M.D. Ala. 2004). Therefore, the court concludes that the defendant has offered a legitimate, non-discriminatory reason for Jackson's termination. Consequently, Easter Seals' evidence raises a genuine issue of fact as to whether it discriminated against Jackson. *See Combs*, 106 F.3d at 1528 (citing *Burdine*, 450 U.S. at 254-55).

Having determined that the defendant presented evidence of a legitimate, non-discriminatory reason for Jackson's termination, the court now turns to the third prong of the *McDonnell Douglas* test.   *McDonnell Douglas Corp.*, 411 U.S. at 802.  In evaluating a plaintiff's evidence of pretext, the court is not required to agree with the employer's proffered reasons for discharge.  This Circuit has consistently held that federal courts, in resolving these types of claims, do not review the accuracy of an employer's decision to

terminate a plaintiff's employment. *See e.g., Jones v. Bessemer Carraway Med. Ctr.*, 151 F.3d 1321, 1321 n.16 (11th Cir. 1998), *quoting Nix,* 738 F.2d at 1187 ("Title VII is not a shield against harsh treatment at the workplace. . . The employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason."). Instead, the crucial question is whether the employer was motivated by an improper discriminatory bias. *See, e.g., Standard v. A.B.E.L. Servs.*, 161 F.3d 1318, 1333 (11th Cir. 1998); *Combs*, 106 F.3d at 1538.

In this case, Jackson must establish that the defendant's justification for her termination was a pretext for discrimination based on her race and gender.

> Evidence showing a false factual predicate underlying the employer's proffered reason does not unequivocally prove that the employer did not rely on the reason in making the employment decision. Instead, it may merely indicate that the employer, acting in good faith, made the disputed employment decision on the basis of erroneous information. . . . Thus, establishing pretext is not merely demonstrating that the employer made a mistake, but that the employer did not give an honest account of its behavior.
>
> [*Cooper v. Diversicare Mgmt. Servs. Co.*, 115 F. Supp. 2d 1311, 1319] (internal citations omitted). . . . [T]he employee could establish pretext by "presenting evidence tending to show that the predicate facts underlying the proffered reason were false" *and* that "the proffered reason may involve a disputed fact of a kind that it is improbable that the employer could be mistaken about it." *Walker* [*v. Nations-Bank of Fla.*], 53 F.3d [1548,] 1564 n.7 [(11th Cir. 1995)]; *Cooper*, 115 F. Supp. 2d at 1320.

*Keel v. Roche*, 256 F. Supp. 2d 1269, 1287 (M.D. Ala. 2003).

Therefore, in order to show that the defendant's proffered reasons for the termination

of Jackson's employment were pretextual, Jackson must show that Lynn based her decision on an unreasonable or improbable belief that Jackson did not wish to continue working at Easter Seals or that the proffered reason is false and Lynn knew of its falsity at the time Jackson was terminated. *Id.* Jackson argues that Easter Seal's proffer that Lynn believed, mistakenly or otherwise, that she was not interested in continuing her employment during the extension period is merely a pretext for discrimination. First, Jackson points to her own deposition testimony, in which she testified that she told Lynn that, if the grant would not permit her to work full-time, she would be interested in working part-time. (Pl's Dep., pp. 341, 375.) In addition, Cooper testified that it was her "understanding that [Jackson] leaving Easter Seals was a result of us not having enough funding for another micro enterprise specialist." (Cooper's Dep., p. 121.) As support for her argument that the defendant's reasons are false and improbable, Jackson also points to her September 11, 2006, letter to Lynn, in which she stated her understanding that "efforts to obtain a 'no-cost' extension were not granted" and then requested leave from work "since [she had] not been notified that there are any new employment opportunities for [her] here at Easter Seals." (Def's Ex. 4, Ex. A, Attach to Lynn's Dec.). Jackson further argues that the September 18, 2006, letter, in which Lynn states that, "[d]ue to funding cuts by ADECA, the position of micro-enterprise specialist with Easter Seals Central Alabama has been eliminated" indicates that Lynn's proffer that she was under the impression that Jackson did not wish to continue her employment is not worthy of belief. (Doc. No. 84-2, Pl's Ex. C.) Thus, there is evidence in the record from which a reasonable fact finder could conclude that Easter Seal's proffered

21

reasons for terminating Jackson prior to the extension period were either false and Lynn had knowledge of its falsity or that Easter Seals' proffered reason "involve[s] a disputed fact of a kind that it is improbable that [Easter Seals] could be mistaken about it." *Keel*, *supra*.

The defendant, however, denies that Jackson told Lynn that she was interested in continuing to work during the extension period. Easter Seals also argues that the September 18, 2006, letter was written solely for the purpose of assisting Jackson in acquiring insurance benefits. But these facts merely show that there is a genuine disputed issue of fact concerning Easter Seals' motivation for terminating Jackson's employment. Given there are material issues of disputed fact in this case, the court concludes that both parties' motions for summary judgment with respect to the wrongful termination claim should be denied.

## B. The Differential Treatment Claim

Jackson asserts that Easter Seals subjected her to disparate treatment in violation of Title VII. Specifically, Jackson alleges that management at Easter Seals considered the ideas and recommendations of other employees, but that the defendant did not acknowledge her recommendations. In addition, she alleges that, although the defendant attended memorial services for other employees' family members, management did not attend her grandfather's funeral. She further maintains that the defendant organized birthday parties for other employees, but that Easter Seals did not give her a party.

To establish a prima facie case of disparate treatment under Title VII, Jackson must show that (1) she belongs to a protected class; (2) she was qualified to do her job; (3) she was subjected to an adverse employment action; and (4) her employer treated similarly situated

22

employees outside her classification more favorably. *See Walker v. Mortham*, 158 F.3d 1177, 1193 (11th Cir. 1998); *Holifield v. Reno*, 115 F.3d 1555, 1561 (11th Cir. 1997). As previously discussed, the parties do not dispute that Jackson is an African-American woman. They do disagree, however, as to whether similarly situated persons outside of Jackson's class received more favorable treatment and whether Jackson was subjected to an adverse employment action.

The question of whether the plaintiff is similarly situated with non-minority employees is crucial. *See Marshall v. Western Grain Co.*, 838 F.2d 1165, 1168 (11th Cir. 1988) (citing *Kendall v. Block*, 821 F.2d 1142 (5th Cir. 1987) (holding that Caucasian employees with a different grade level were not similarly situated with the plaintiff).[9] After careful review, the court concludes that Jackson has failed to come forward with any evidence that she was similarly situated to others during her employment at Easter Seals. More importantly,

> Title VII does not make unexplained differences in treatment per se illegal nor does it make inconsistent or irrational employment practices illegal. . . . The law does not require, nor could it ever realistically require, employers to treat all of their employees all of the time in all matters with absolute, antiseptic, hindsight equality. What the law does require is that an employer not discriminate against an employee on the basis of the employee's protected class characteristics.

*EEOC v. Flasher Co., Inc.*, 986 F.2d 1312, 1319 (10th Cir. 1992).

---

[9] *See Bonner v. Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

After careful review, the court concludes that Jackson has failed to demonstrate a prima facie case of discrimination under the disparate treatment theory because she has not demonstrated that she is similarly situated to individuals outside her protected class who were treated more favorably than her. Consequently, the motion for summary judgment with respect to Jackson's disparate treatment claim is due to be granted.

## VI. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge as follows:

1.    The stay of Jackson's September 7, 2007, motion for summary judgment be LIFTED.

2.    The motions for summary judgment filed by Jackson be DENIED. (Doc. Nos. 29 & 84.)

3.    The defendant's motion for summary judgment with respect to Jackson's disparate treatment claim be GRANTED and this claim be dismissed with prejudice. (Doc. No. 86.)

4.    The defendant's motion for summary judgment with respect to Jackson's wrongful termination claim be DENIED. (Doc. No. 86.)

It is further

ORDERED that the parties are DIRECTED to file any objections to the **on or before May 13, 2008**. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not

24

a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a de novo determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 30th day of April, 2008.

_____/s/Charles S. Coody_____
CHARLES S. COODY
CHIEF UNITED STATES MAGISTRATE JUDGE